UNITED STATES DISTRICT COURT    *FILED*
FOR THE DISTRICT OF MASSACHUSETTS *CLERKS OFFICE*

*2004 JAN 29  A 9: 46*

*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

|  |  |  |
|---|---|---|
| BAY STATE SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:03-cv-40273-NMG |
| | ) | |
| BAYSTATE FINANCIAL | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant Baystate Financial Services, LLC ("Baystate Financial") answers the

Complaint of plaintiff Bay State Savings Bank (the "Bank") as follows:

### NATURE AND BASIS OF ACTION

1.      The statements in paragraph 1 purport to describe the nature and basis of this

action and consist of legal argument and conclusions; Baystate Financial is not required to

respond to these assertions.  Baystate Financial denies that its first use of the "Baystate" name

was May 1, 1997, or that its use of that name was limited to Boston prior to that date and

expanded thereafter.  Baystate Financial admits that it acquired the Patriot Group, which is

located in Worcester.

### PARTIES

2.      Baystate Financial admits the allegations in paragraph 2.

3.      Baystate Financial admits that it is a Massachusetts limited liability corporation

with a principal place of business at One Exeter Plaza, Suite 1400, Boston, Massachusetts, and

additional offices located in Worcester, Wellesley, Lynnfield, Marlboro, Canton and other locations. Baystate Financial denies the remaining allegations in paragraph 3.

JURISDICTION

4.      Baystate Financial is not required to respond to the statements in paragraph 4, which consist of legal argument and conclusions.

FACTUAL ALLEGATIONS

The Bank's Corporate and Trademark History

5.      Baystate Financial is not required to respond to the statements in paragraph 5, which consist of legal argument and conclusions. To the extent that paragraph 5 purports to allege facts, Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of those allegations.

6.      Baystate Financial denies that the Bank has used the name "Bay State Savings" for financial services since the Bank was formed in 1895. Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6.

7.      Baystate Financial admits the allegations in the first sentence of paragraph 7. Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 7.

8.      Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9.      Baystate Financial denies that the Bank offered investment or financial services prior to 1999. Baystate Financial is without knowledge or information sufficient to form a belief

2

as to the truth of the remaining allegations in the first and second sentences of paragraph 9. Baystate Financial is not required to respond to the allegations in the last sentence of paragraph 9, which consist of legal argument and conclusions.

10.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11.

12.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

<u>State and Federal Registration by the Bank of "Bay State" and Related Service Marks</u>

17.    Baystate Financial admits that, according to public records, the Bank registered with the Secretary of the Commonwealth of Massachusetts the service mark "Bay State Savings Bank" in International Class 36 on or about July 20, 1999. Baystate Financial further admits that the allegations in paragraph 17 purport to express the terms of that registration, but denies that

the purported expression of those terms is complete or accurate. The registration speaks for itself.

18.    Baystate Financial admits that, on the dates contained in paragraph 18, the Bank registered with the Secretary of the Commonwealth of Massachusetts the respective service marks identified in that paragraph in International Class 36. Baystate Financial further admits that the allegations in paragraph 18 purport to express the terms of the identified registrations, but denies that the purported expression of those terms is complete or accurate. The registrations speak for themselves.

19.    Baystate Financial admits that, on the dates contained in paragraph 19, the Bank registered with the United States Patent and Trademark Office the respective service marks identified in that paragraph in International Class 36. Baystate Financial further admits that the allegations in paragraph 19 purport to express the terms of the identified registrations, but denies that the purported expression of those terms is complete or accurate. The registrations speak for themselves.

20.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

Corporate and Trademark History of
Baystate Financial through 2003

21.    Baystate Financial admits the allegations in paragraph 21.

22.    With respect to the first sentence of paragraph 22, Baystate Financial admits that it owns both Massachusetts Service Mark Registration No. 54344 for Baystate Financial Services, which lists a first use date of May 1, 1997, and Massachusetts Service Mark Registration No. 44104 for Baystate Financial Services, which lists a first use date of January 1,

1983.  With respect to the second sentence of paragraph 22, Baystate Financial admits that its state service mark registrations concern Class 36, which appears to be the same class as the Bank's subsequent state and federal registrations.

23.     Baystate Financial admits the allegations in paragraph 23.

24.     Baystate Financial admits that the services it offers are currently generally similar to those offered by the Bank and that Baystate Financial markets its services through "Bank Affiliates."  Prior to 1999, the Bank was prohibited by law from offering financial services; between 1983 and 1999, the Bank and Baystate Financial did not offer similar investment and financial services.

25.     Baystate Financial admits that, on or about June 29, 1999, it registered the domain name "baystatefinancial.com," and that it used that domain name in furtherance of its business.

Written Notice of Infringement from
the Bank to Baystate Financial

26.     Baystate Financial denies the characterization that it had begun to use the "Baystate Financial Services" name in 2002; in fact, Baystate Financial had been using the name in 1983.  With respect to the remainder of the first three sentences of paragraph 26, Baystate Financial admits that it received a letter purportedly written by Gerry A. Blodgett ("Blodgett") dated December 23, 2002, a copy of which is attached to the Complaint as Exhibit A, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in those sentences.  As for the remaining allegations in paragraph 26, Baystate Financial admits that those allegations purport to express statements contained in Blodgett's December 23, 2002 letter, but denies that the purported expression of those statements is complete or accurate.  The December 23, 2002 letter speaks for itself.

27.     Baystate Financial admits that it responded to Blodgett's December 23, 2002 letter by stating that, due to the Bank's fraudulent misrepresentations in its registration applications, the Bank's marks might be subject to cancellation proceedings. Baystate Financial denies the remaining allegations in paragraph 27.

Continued Use of the Name "Baystate Financial Services"<br>after Receipt of Written Notice of Infringement

28.     Baystate Financial admits that it used the registered mark Baystate Financial Services in media throughout New England, on the Internet and elsewhere, and that Baystate Financial has been recognized as one of the premier financial services organizations in New England in such publications as *Life & Health Advisor*, *The Boston Globe*, *Medical Economics*, and *Worth* magazine. Baystate Financial denies the remaining allegations in paragraph 28.

29.     Baystate Financial admits the allegations in paragraph 29.

30.     Baystate Financial denies the allegations in paragraph 30.

COUNT I<br>(SECTION 43(a) OF THE LANHAM ACT)

31.     Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 30.

32.     Baystate Financial denies the allegations in paragraph 32.

33.     Baystate Financial denies the allegations in paragraph 33.

34.     Baystate Financial denies the allegations in paragraph 34.

35.     Baystate Financial denies the allegations in paragraph 35.

36.     Baystate Financial denies the allegations in paragraph 36.

37.     Baystate Financial denies the allegations in paragraph 37.

COUNT II
(SECTION 43(c) OF THE LANHAM ACT)

38.    Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 37.

39.    Baystate Financial denies the allegations in paragraph 39.

40.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

41.    Baystate Financial denies that it is using the Service Marks as defined in paragraph 19, or that those Service Marks are famous.  Baystate Financial admits that it is using the Internet domain name "baystatefinancial.com."

42.    Baystate Financial denies the allegations in paragraph 42.

43.    Baystate Financial denies the allegations in paragraph 43.

44.    Baystate Financial denies the allegations in paragraph 44.

COUNT III
(SECTION 43(d) OF THE LANHAM ACT)

45.    Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 44.

46.    Baystate Financial denies the allegations in paragraph 46.

47.    Baystate Financial is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.    Baystate Financial denies that it is using the Service Marks as defined in paragraph 19, or that those Service Marks are famous.  Baystate Financial admits that it is using the Internet domain name "baystatefinancial.com."

49.    Baystate Financial admits the allegations in paragraph 49.

50.    Baystate Financial denies the allegations in paragraph 50.

51.    Baystate Financial denies the allegations in paragraph 51.

52.    Baystate Financial denies the allegations in paragraph 52.

## COUNT IV
### (G.L.M. c. 110, § 4)

53.    Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 52.

54.    Baystate Financial denies the allegations in paragraph 54.

## COUNT V
### (G.L.M. c. 110B, § 11, 12 & 13)

55.    Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 54.

56.    Baystate Financial denies the allegations in paragraph 56.

57.    Baystate Financial denies the allegations in paragraph 57.

58.    Baystate Financial denies the allegations in paragraph 58.

## COUNT VI
### (DECLARATORY RELIEF UNDER 28 U.S.C. § 2201)

59.    Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 58.

60.    The statements in paragraph 60 purport to describe the nature of the Bank's claims and consist of legal argument and conclusions; Baystate Financial denies these assertions.

61.    Baystate Financial admits the allegations in paragraph 61.

62.    Baystate Financial admits that an actual case or controversy exists with respect to the rights of the Bank and Baystate Financial, but denies that the allegations in paragraph 62 fully or adequately describe the nature of that case or controversy.

COUNT VII
(G.L.M. c. 93A, § 11)

63.    Baystate Financial restates and incorporates herein by reference the answers contained in paragraphs 1 through 62.

64.    Baystate Financial admits the allegations in paragraph 64.

65.    Baystate Financial denies the allegations in paragraph 65.

66.    Baystate Financial denies the allegations in paragraph 66.

FIRST AFFIRMATIVE DEFENSE

The Bank's Complaint fails to state a claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

The Bank's claims are barred by the doctrines of waiver and estoppel.

THIRD AFFIRMATIVE DEFENSE

The Bank's claims are barred by the doctrines of laches and acquiescence.

FOURTH AFFIRMATIVE DEFENSE

For the reasons set forth in Baystate Financial's Counterclaim below, the Bank's claims are barred by the doctrine of unclean hands.

FIFTH AFFIRMATIVE DEFENSE

For the reasons set forth in Baystate Financial's Counterclaim below, the Bank fraudulently procured its registrations and, thus, those registrations are invalid.

SIXTH AFFIRMATIVE DEFENSE

The Bank's marks lack secondary meaning.

SEVENTH AFFIRMATIVE DEFENSE

Baystate Financial has priority of use over the Bank regarding the marks at issue.

EIGHTH AFFIRMATIVE DEFENSE

As a matter of law, the Bank was prohibited from offering financial services prior to November 1999.

## COUNTERCLAIM

### PARTIES

1.      Defendant/counterclaim-plaintiff Baystate Financial Services, LLC ("Baystate Financial") is a Massachusetts limited liability corporation with a principal place of business at One Exeter Plaza, Suite 1400, Boston, Massachusetts.

2.      Plaintiff/counterclaim-defendant Bay State Savings Bank (the "Bank") is a Massachusetts-chartered mutual savings bank with a principal place of business at 28-32 Franklin Street, Worcester, Massachusetts.

JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Lanham Act, 15 U.S.C. § 1125.  Venue is proper in this Court under 28 U.S.C. §

1391.


FACTUAL ALLEGATIONS

The Baystate Financial Marks

4.      Baystate Financial is one of New England's oldest and largest financial services

firms.  It was originally founded in 1901 and began operating under the name Baystate Financial

Services more than twenty years ago.

5.      Baystate Financial has at all times been engaged in the business of financial

services, including, but not limited to, the sale and service of insurance and investment products,

as well as financial planning.  Baystate Financial has never offered banking services.

6.      On or about January 1, 1983, Baystate Financial's predecessor-in-interest, the

Wilson, Bergstrom & Denton Partnership adopted and began using the service marks

"BAYSTATE," "BAYSTATE FINANCIAL" and "BAYSTATE FINANCIAL SERVICES"

(collectively, the "BAYSTATE Marks") in commerce, and began conducting business under the

trade name "Baystate Financial Services."

7.      On or about April 10, 1990, the Wilson, Bergstrom & Denton Partnership

registered with the Secretary of the Commonwealth of Massachusetts the service mark

"BAYSTATE FINANCIAL SERVICES" (the "First Registration").  The BAYSTATE

FINANCIAL SERVICES mark was for the "sale of insurance products and actuarial services

and financial planning services."  The First Registration included a date of first use of the

BAYSTATE FINANCIAL SERVICES mark of January 1, 1983.

11

8.     The Wilson, Bergstrom & Denton Partnership continuously used the BAYSTATE Marks in commerce and continuously conducted business as Baystate Financial Services until approximately June 29, 1990.

9.     On or about June 29, 1990, the Wilson, Bergstrom & Denton Partnership transferred ownership to its successor, the Wilson & Bergstrom Partnership.  Thereafter, the Wilson & Bergstrom Partnership continuously used the BAYSTATE Marks in commerce and continuously conducted business as Baystate Financial Services until approximately March 1, 1992.

10.     On or about March 1, 1992, the Wilson & Bergstrom Partnership was terminated and its interest in the First Registration, the continuing exclusive right to use the BAYSTATE Marks and the goodwill associated with the BAYSTATE Marks and Baystate Financial Services trade name were assigned to Richard D. Wilson, the former managing partner of the Wilson & Bergstrom Partnership, in his capacity as the sole proprietor of the Richard Wilson Insurance Agency (the "Wilson Agency").  The Wilson Agency continuously used the BAYSTATE Marks in commerce and continued to do business as Baystate Financial Services from March 1, 1992 until approximately August 1996.

11.     In August 1996, the Wilson Agency entered into a buyout agreement with New England Life Insurance Company ("New England Life").  As part of that agreement, the Wilson Agency sold its "Assets and Inventory" (as defined in the agreement) to New England Life.  The Inventory sold to New England Life included the First Registration, the BAYSTATE Marks, and the goodwill associated with the BAYSTATE Marks and Baystate Financial Services trade name.

BAYSTATE Marks in commerce and continued to do business as Baystate Financial Services from August 1996 until approximately January 2, 1997.

13.    On or about January 2, 1997, Porter organized Porter/Desautels LLC ("Porter/Desautels") and transferred to it the Registration, the BAYSTATE Marks, and the goodwill associated with the BAYSTATE Marks and Baystate Financial Services trade name. The stated purpose of Porter/Desautels was "to provide financial planning services and products." Porter/Desautels continuously used the BAYSTATE Marks in commerce and continued to do business as Baystate Financial Services from January 2, 1997 until approximately May 19, 1997.

14.    On or about May 19, 1997, Porter/Desautels formally changed its name to Baystate Financial Services, LLC, the defendant in this action. From that date to the present, Baystate Financial has continuously used the BAYSTATE Marks in commerce and has continued to do business as Baystate Financial Services. Together with its predecessors, Baystate Financial has continuously provided insurance and investment services and products since 1983.

15.    Also on or about May 19, 1997, Baystate Financial reregistered the "BAYSTATE FINANCIAL SERVICES" mark with the Secretary of the Commonwealth of Massachusetts (the "Second Registration") (the First Registration and Second Registration are referred to hereinafter as the "Registrations").

16.    On or about June 29, 1999, Baystate Financial registered the domain name www.baystatefinancial.com.

Baystate Financial's Business and Use of Its Marks

17.     Over the past twenty years, and previously, Baystate Financial and its predecessors have provided professional and business clients with a broad range of financial services and products under the BAYSTATE Marks.  Baystate Financial has invested substantial amounts of time, effort and money in marketing and promoting its business and the professional quality of its services in connection with the BAYSTATE Marks.  The BAYSTATE Marks have become publicly accepted, symbolizing the valuable and extensive goodwill and consumer recognition that Baystate Financial has built up over the years.  Baystate Financial continues to expend substantial resources promoting its services under the BAYSTATE Marks.

18.     Baystate Financial's services involve all aspects of personal financial planning, including, but not limited to, tax planning in the areas of personal, corporate, and estate planning; ownership and management succession planning for closely-held and corporate businesses; and retirement and education funding.  In addition, through its licensed associates, including, but not limited to, Baystate Financial Services Insurance Agency, LLC, Baystate Financial places financial products (*i.e.*, insurance and investments) in support of its financial services activities, and provides personal and corporate money management, including debt counseling, as well as risk management involving all forms of insurance (with an emphasis on life, health, long-term disability and long-term care insurance).  Baystate Financial also offers fixed and variable annuities and investment products, including individual securities (stocks and bonds) and mutual funds.

19.     Baystate Financial has used the BAYSTATE Marks in its letterhead and other business forms, and has included the marks on the business cards of more than 100 associates. Baystate Financial also has used the BAYSTATE Marks in marketing throughout New England,

on the Internet and elsewhere in connection with its numerous professional affiliations with community banks, CPA firms and property and casualty insurance firms.

20.     Baystate Financial has utilized the BAYSTATE Marks in conjunction with the Baystate Financial Services Foundation, a charitable organization that Baystate Financial formed to provide holiday gifts to hundreds of children involved with the Massachusetts Department of Social Services. Baystate Financial also presents seminars for consumers, insurance brokers and financial services professionals using the BAYSTATE Marks. In addition, Baystate Financial has used the BAYSTATE Marks in its role as an approved provider of continuing education credits for CPAs through the National Association of State Boards of Accountancy.

21.     Baystate Financial has been widely recognized as one of the premier financial services organizations in New England in such publications as *Life & Health Advisor, The Boston Globe, Medical Economics*, and *Worth* magazine. In 2003, the *Boston Business Journal* ranked Baystate Financial number one in its Best Places to Work in Massachusetts awards program.

22.     In short, over the past twenty years, the BAYSTATE Marks have acquired secondary meaning in the financial services industry and consumers have come to associate the BAYSTATE Marks with the high quality, innovative financial services that Baystate Financial and its predecessors have provided for decades throughout New England.

The Bank Marks

23.     On or about July 20, 1999, October 14, 1999, January 7, 2000 and January 13, 2000, respectively, the Bank registered with the Secretary of the Commonwealth of Massachusetts the service marks "Bay State Savings Bank," "Bay State," "Bay State Savings

15

Bank & Minuteman Head Design," and "Bay State Savings" for the provision of banking and financial services to consumers and businesses.

24.     On or about November 14, 2001 and June 3, 2002, respectively, the Bank registered with the Secretary of the Commonwealth of Massachusetts the service marks "Bay State Online" and "Bay State Investment Services." The Bay State Online mark was for banking services provided through a global computer network, while the Bay State Investment Services mark was registered in connection with investment services.

25.     On or about May 15, 2001, May 22, 2001 and July 16, 2002, respectively, the Bank registered with the United States Patent and Trademark Office ("USPTO") the service marks "Bay State," "Bay State Savings Bank" and "Bay State Savings Bank & Minuteman Head Design" in connection with banking services and financial services. The Bay State and Bay State Savings Bank registrations each listed the date of first use of the mark as May 16, 1895, while the date of first use for the Bay State Savings & Minuteman Head Design was listed as November 25, 1999.

26.     On or about July 30, 2002 and October 1, 2002, respectively, the Bank registered with the USPTO the service marks "Bay State Investment Services" and "Bay State Online." The Bay State Investment Services mark was registered in connection with investment services and the Bay State Online mark was registered in connection with banking services provided through a global computer network. The Bank's service marks as described in paragraphs 23 through 26 are collectively referred to hereinafter as the "Bank Marks."

27.     On or about July 16, 2002, the Bank registered with the USPTO the service mark "Minuteman Investment Services" in connection with investment services. This registration reflects a January 10, 2001 date of first use. The Bay State Investment Services federal

16

registration, which also was made in connection with investment services, reflected a February 5, 2002 date of first use. However, that purported date of first use was contradicted by Bay State in its own advertising, which notified customers in May 2003 that Minuteman Investment Services "has a new name and a new look! We're now Bay State Investment Services . . .." *See* Exhibit A hereto.

28.     In addition, as discussed in more detail below, even though the Bank was actually using Minuteman Investment Services as the mark for its financial services until May 2003, *see* Exhibit A, the Bank deceptively grouped financial services with banking services in the Bay State, Bay State Savings Bank and Bay State Savings Bank & Minuteman Head Design federal registrations in an effort to illegally tack on to the Bank's longer use of those marks for banking services.

29.     Upon information and belief, the Bank registered the Bank Marks without first conducting a search of the federal and state service mark registries.

The Bank's Intentional Infringement of the Baystate Financial Marks

30.     On or about February 20, 2003, Baystate Financial provided written notice to the Bank confirming Baystate Financial's senior rights in the BAYSTATE Marks and seeking to obtain an agreement from the Bank not to use the confusingly similar Bank Marks in connection with financial services. The Bank refused to make such an agreement. In fact, the Bank compounded the problem by abandoning the Minuteman Investment Services mark that it had previously created for financial services and adopted in its place the Bay State Investment Services mark for its financial services arm in the New England region. *See* Exhibit A.

31.     Thus, despite knowledge of Baystate Financial's senior rights and long standing use of the BAYSTATE Marks, the Bank proceeded to offer competing financial services in the

17

same geographic market as Baystate Financial under the confusingly similar Bay State

Investment Services service mark and trade name.  In so doing, the Bank deliberately created the

likelihood that consumers would be confused between the BAYSTATE Marks and Bank Marks,

thereby enabling the Bank to profit from the substantial goodwill that Baystate Financial has

built up over the past two decades concerning its marks.

<u>The Likelihood of Confusion</u>

32.    The BAYSTATE Marks and Bank Marks are similar if not virtually identical.

The dominant or core element of the respective marks is Baystate and Bay State.  The only

appreciable difference between these core elements is a single space, an almost insignificant

distinction.  The parties' core marks sound the same and look the same, and therefore convey the

same commercial impression to consumers.  It is unlikely that consumers will be able to

distinguish between the BAYSTATE Marks associated with Baystate Financial's long-standing

and highly regarded financial services business and the Bank Marks representing the Bank's

neophyte financial services offerings.

33.    Baystate Financial has used the BAYSTATE Marks for financial services for

many years prior to the Bank's decision to adopt the Bank Marks for its new financial services

arm.  Baystate Financial, through its predecessors, has been using the BAYSTATE Marks since

at least January 1, 1983, and has developed considerable brand identity using the BAYSTATE

Marks in the financial services field.  In contrast, the Bank was using Minuteman Investment

Services as the mark for its financial services until May of last year and has not developed any

brand identity in the Bank Marks for financial services.

34.    Moreover, until just a few years ago, the Bank was prohibited under federal law

from offering financial services.  In November 1999, the Gramm-Leach-Bliley Act ("GLBA")

18

came into effect and repealed those provisions of the Banking Act of 1933 known as "Glass-Steagall," which had separated commercial banking from the securities business. GLBA also repealed the provisions of the Bank Holding Company Act of 1956 that separated commercial banking from the insurance business. In effect, GLBA eliminated the long-standing prohibitions on mixing banking, securities and insurance businesses and allowed what is now referred to as "broad banking."

35.     Consistent with the timing of Glass-Steagall's repeal, the Bank submitted its application to the USPTO for registration of the Bay State Investment Services mark on November 12, 1999. In fact, all of the state and federal applications for the Bank Marks were filed in 1999 or later. Thus, it was not until 1999, when broad banking became legal, that the Bank chose to expand from traditional banking services into the financial services arena where Baystate Financial has operated for more than 100 years.

The Bank's Fraudulent Procurement of the Bank Marks

*Bay State Mark – Registration No. 2,450,573*

36.     On July 16, 1999, the Bank filed Application No. 75/753185 with the USPTO for registration of the "Bay State" mark for "banking and financial services to consumers and businesses" (the "Bay State Application"). The Bay State Application matured into Registration No. 2,450,573 on May 15, 2001 (the "Bay State Registration").

37.     As part of the Bay State Application, the Bank submitted a Declaration claiming that the date the Bay State mark was first used in connection with banking and financial services to consumers and businesses was "at least as early as May 16, 1895." That statement was untrue, however, because the Bank had been prohibited under Glass-Steagall from offering financial services between 1933 and November 1999. In addition, the specimen submitted with the Bay

State Application did not show any use of the mark in connection with financial services. The Bank also misrepresented the length of time it had been using the Bay State mark for financial services at the time it submitted the application that led to the Bay State Registration.

38.     On June 28, 2000, in response to a USPTO Office Action denying registration of the Bay State mark on geographically descriptive grounds, among others, the Bank amended its recitation of "financial services" to "financial services, namely, financial investment in the field of real estate, stocks, bonds, commercial paper and other securities, financial management and planning, and financial guarantee and surety, in international class 36." However, the specimen submitted in support of the Bay State Application failed to show that the Bay State mark had been used in connection with these amended financial services, which the Bank could not legally offer between 1933 and November 1999. Moreover, even though the Bank had not been using the Bay State mark in connection with the amended financial services since May 16, 1895, the Bank withheld this information from the USPTO in its June 28, 2000 response and never amended the date of first use.

39.     As part of its June 28, 2000 response to the USPTO's objection that the Bay State mark was geographically descriptive, the Bank submitted a Declaration dated May 10, 2000 in which it claimed that the Bay State mark "has become distinctive of the services through the applicant's substantially exclusive and continuous use in commerce for at least the five (5) years immediately before the date of this statement and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true."

40.     At the time it submitted that Declaration with its response, however, the Bank knew or should have known that (i) Baystate Financial was the senior user in commerce of the BAYSTATE Marks, including the senior user of the BAYSTATE FINANCIAL SERVICES