mark, which had been registered in Massachusetts more than ten years earlier and again in 1997; (ii) the Bank had not been using the Bay State mark in connection with the amended financial services for five (5) years immediately before May 10, 2000; (iii) the Bay State mark had not become distinctive of the Bank's financial services in commerce, and customer recognition of the term Bay State as a valid mark identifying only the Bank as to financial services had not been achieved; and (iv) the Bank was prohibited by law from offering the amended financial services until November 1999. In short, when the Bank submitted the May 10, 2000 Declaration to the USPTO, it knew or should have known that the statements contained in that Declaration were false, fraudulent and misleading.

*Bay State Savings Bank Mark – Registration No. 2,452,511*

41.     On July 16, 1999, the Bank filed Application No. 75/753188 with the USPTO for registration of the mark "Bay State Savings Bank" for "banking and financial services to consumers and businesses" (the "Bay State Savings Bank Application"). The Bay State Savings Bank Application matured into Registration No. 2,452,511 on May 22, 2001 (the "Bay State Savings Bank Registration").

42.     As part of the Bay State Savings Bank Application, the Bank submitted a Declaration claiming that the date the Bay State Savings Bank mark was first used in commerce in connection with banking and financial services to consumers and businesses was "at least as early as May 16, 1895." That statement was untrue, however, because the Bank was prohibited under Glass-Steagall from offering financial services between 1933 and November 1999. In addition, the specimen submitted with the Bay State Application did not show use of the mark in connection with financial services. The Bank also misrepresented the length of time it had been

21

using the Bay State Savings Bank mark for financial services at the time it submitted the application that led to the Bay State Savings Bank Registration.

43.   On June 28, 2000, in response to a USPTO Office Action denying registration of the Bay State mark in part on geographically descriptive grounds, the Bank amended its recitation of "financial services" to "financial services, namely, financial investment in the field of real estate, stocks, bonds, commercial paper and other securities, financial management and planning, and financial guarantee and surety, in international class 36." However, the specimen submitted in support of the Bay State Savings Bank Application failed to show that the mark had been used in connection with these amended financial services, which the Bank could not legally offer between 1933 and November 1999. Moreover, even though the Bank had not been using the Bay State Savings Bank mark in connection with the amended financial services since May 16, 1895, the Bank withheld this information from the USPTO in its June 28, 2000 response and never amended the date of first use.

44.   As part of its June 28, 2000 response to the USPTO's objection that the Bay State Savings Bank mark was geographically descriptive, the Bank submitted a Declaration dated May 12, 2000 in which it claimed that the Bay State Savings Bank mark "has become distinctive of the services through the applicant's substantially exclusive and continuous use in commerce for at least the five (5) years immediately before the date of this statement and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true."

45.   At the time it submitted that Declaration with its response, however, the Bank knew or should have known that (i) Baystate Financial was the senior user in commerce of the BAYSTATE Marks, including the senior user of the BAYSTATE FINANCIAL SERVICES

mark, which had been registered in Massachusetts more than ten years earlier and again in 1997; (ii) the Bank had not been using the Bay State Savings Bank mark in connection with the amended financial services for five (5) years immediately before May 10, 2000; (iii) the Bay State Savings Bank mark had not become distinctive of the Bank's financial services in commerce, and customer recognition of the term Bay State as a valid mark identifying only the Bank as to financial services had not been achieved; and (iv) the Bank was prohibited by law from offering the amended financial services until November 1999. In short, when the Bank submitted the May 10, 2000 Declaration to the USPTO, it knew or should have known that the statements contained in that Declaration were false, fraudulent and misleading.

*Bay State Savings Bank & Minuteman Head Design – Registration No. 2,593,516*

46. On January 6, 2000, the Bank filed Application No. 75/888742 with the USPTO for registration of the mark Bay State Savings Bank & Minuteman Head Design for "banking and financial services to consumers and businesses" (the "Design Application"). The Design Application matured into Registration No. 2,593,516 on July 16, 2002 (the "Design Registration").

47. As part of the Design Application, the Bank submitted a Declaration claiming that the date the Design mark was first used in commerce in connection with banking and financial services to consumers and businesses was "at least as early as November 25, 1999." While this date was consistent with the time frame that the Bank could legally offer financial services, the specimen submitted with the Design Application still did not show the use of the mark in connection with financial services.

48. On January 18, 2001, in response to a USPTO Office Action denying registration of the Design mark in part on geographically descriptive grounds, the Bank amended its

recitation of "financial services" to "financial services, namely, financial investment in the field of real estate, stocks, bonds, commercial paper and other securities, financial management and planning, and financial guarantee and surety, in international class 36." However, the specimen submitted in support of the Design Application also did not show the use of the mark in connection with these amended financial services.

49. As part of its January 18, 2001 response to the USPTO's objection that the Design mark was geographically descriptive, the Bank submitted a Declaration dated May 12, 2000 in which it had claimed that the Bay State Savings Bank mark had "become distinctive of the services through the applicant's substantially exclusive and continuous use in commerce for at least the five (5) years immediately before the date of this statement and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true" and that, given its similarities to the Bay State Savings Bank mark, the Design mark also was not merely geographically descriptive.

50. At the time it filed that Declaration as part of its January 18, 2001 response, the Bank knew or should have known that (i) Baystate Financial was the senior user in commerce of the BAYSTATE Marks, including the senior user of the BAYSTATE FINANCIAL SERVICES mark, which had been registered in Massachusetts more than ten years earlier and again in 1997; (ii) the Bank had not been using the Design mark in connection with the amended financial services for five (5) years immediately before May 10, 2000; (iii) the Design mark had not become distinctive of the Bank's financial services in commerce, and customer recognition of the term Bay State as a valid mark identifying only the Bank as to financial services had not been achieved; and (iv) the Bank was prohibited by law from offering the amended financial services until November 1999. In short, when the Bank submitted the May 12, 2000 Declaration to the

USPTO, it knew or should have known that the statements contained in that Declaration were false, fraudulent and misleading.

*Bay State Investment Services Mark – Registration No. 2,601,830*

51.  On November 22, 1999, Bank filed Intent-to-Use Application No. 75/847386 with the USPTO for registration of the mark Bay State Investment Services for "sale of mutual funds, stocks and bonds, annuities, life insurance and long term care" (the "Bay State Investment Services Application"). The Bay State Investment Services Application matured into Registration No. 2,601,830 on July 30, 2002 (the "Bay State Investment Services Registration").

52.  On October 27, 2000, in response to a USPTO Office Action denying registration of the Bay State Investment Services mark in part on geographically descriptive grounds, the Bank amended the services recitation to "investment services, namely, mutual fund, brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds, life insurance and long-term care insurance and insurance agencies and underwriting in the field of life insurance and long-term care insurance, in Class 36."

53.  As part of its October 27, 2000 response to the USPTO's objection that the Bay State Investment Services mark was geographically descriptive, the Bank submitted a Declaration dated May 10, 2000 in which it claimed that the Bay State mark "has become distinctive of the services through the applicant's substantially exclusive and continuous use in commerce for at least the five (5) years immediately before the date of this statement and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true" and that, given its similarities to the Bay State mark, the Bay State Investment Services mark also was not merely geographically descriptive.

25

54. At the time it filed that Declaration as part of its October 27, 2000 response, the Bank knew or should have known that (i) Baystate Financial was the senior user in commerce of the BAYSTATE Marks, including the senior user of the BAYSTATE FINANCIAL SERVICES mark, which had been registered in Massachusetts more than ten years earlier and again in 1997; (ii) the Bank had not been using the Bay State Investment Services mark in connection with the amended financial services for five (5) years immediately before May 10, 2000; (iii) the Bay State Investment Services mark had not become distinctive of the Bank's financial services in commerce, and customer recognition of the term Bay State as a valid mark identifying only the Bank as to financial services had not been achieved; and (iv) the Bank was prohibited by law from offering the amended financial services until November 1999. Again, when the Bank submitted the May 10, 2000 Declaration to the USPTO, it knew or should have known that the statements contained in that Declaration were false, fraudulent or misleading.

55. Moreover, in connection with its efforts to register Bay State Investment Services, the Bank submitted a Statement of Use that included a Declaration that "applicant is using or is using through a related company the mark in commerce on or in connection with all the goods/services listed in the Application/Notice of Allowance." The services listed in the Bay State Investment Services Notice of Allowance were "investment services, namely, mutual fund, brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds, life insurance and long-term care insurance and insurance agencies and underwriting in the field of life insurance and long-term care insurance." The Statement of Use declared the date of first use in commerce as February 5, 2002.

56. At the time it submitted its Statement of Use, however, the Bank knew or should have known that (i) the Bank was not using the Bay State Investment Services mark in

commerce for the services listed in the Notice of Allowance because it was using Minuteman Investment Services for those financial services (*see* Exhibit A); (ii) the Bank was not using the Bay State Investment Services mark in interstate commerce because the specimen submitted with the Statement of Use was addressed to a Massachusetts resident; and (iii) the Bank had not been using the mark since February 5, 2002 because it was using Minuteman Investment Services at that time and, in fact, used that mark until May 2003 (*see* Exhibit A). Thus, at the time it submitted the Statement of Use, the Bank knew or should have known that the statements and documents submitted in connection with the Statement of Use were false, fraudulent and/or misleading.

*Minuteman Investment Services Mark – Registration No. 2,595,041*

57. On November 12, 1999 – the same day the Bank filed the Bay State Investment Services Application – the Bank also filed Application No. 75/847385 with the USPTO for registration of Minuteman Investment Services (the "Minuteman Investment Services Application"). The Minuteman Investment Services Application matured into Registration No. 2,595,041 (the "Minuteman Investment Services Registration") and, with the exception of various insurance services, covers the same financial services as those recited in the Bay State Investment Services Registration. The Minuteman Investment Services recitation of services is "investment services, namely, mutual fund brokerage and investment, annuity underwriting and brokerage in the field of stocks and bonds."

58. The Bank knew at the time it filed the Minuteman Investment Services Application that Baystate Financial was the senior user of the BAYSTATE FINANCIAL SERVICES mark for financial services, but filed the Minuteman Investment Services

27

Application as a fall back position in the event Baystate Financial opposed the Bank's various Bay State applications or otherwise challenged the Bank's use of Bay State for financial services.

59.     On or about February 20, 2003, Baystate Financial notified the Bank that Baystate Financial is the senior user of the BAYSTATE Marks for financial services. Despite actual notice of Baystate Financial's senior rights, in May 2003, the Bank adopted the confusingly similar Bay State Investment Services mark and issued an advertisement announcing that:

> *Minuteman Investment Services has a new name and a new look! We're now Bay State Investment Services. . .Simply call Bay State Investment Services. . .for a FREE financial analysis. There is absolutely no obligation or fee for this service. It's simply our way of introducing Bay State Investment Services to the community.*

(Exhibit A)

*Bay State Bank Mark – Application Serial No. 78/261709*

60.     On June 12, 2003, the Bank filed Intent-To-Use Application No. 78/261709 for the mark Bay State Bank for "banking services and on-line banking services; and financial services, namely, financial investment in the field of real estate, stocks, bonds, commercial paper, and other securities, financial management and planning and financial guarantee and surety" (the "Bay State Bank Application"). On information and belief, the Bank filed the Bay State Bank Application following the fraud allegations leveled against the Bank by Baystate Financial and despite prior notice that Baystate Financial is the senior user of the BAYSTATE Marks for financial services.

28

COUNT I
Unfair Competition by Infringement
of Common Law Rights

61. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 60.

62. Baystate Financial has used the BAYSTATE Marks in interstate commerce continuously since at least January 1, 1983 in connection with insurance and investment products and services.

63. The BAYSTATE Marks symbolize the valuable and extensive goodwill and consumer recognition that Baystate Financial has built up over the years and serve to identify Baystate Financial as the source of the high quality, innovative financial services that Baystate Financial offers throughout New England.

64. The BAYSTATE Marks have acquired distinctiveness and secondary meaning in connection with the financial services that Baystate Financial offers.

65. Despite its actual and constructive notice of Baystate Financial's senior use of the BAYSTATE Marks, the Bank has engaged in unfair competition and infringed upon the BAYSTATE Marks by the various acts described above, including offering financial services under the confusingly similar Bank Marks.

66. The Bank's acts were committed with the intent to deceive the public into believing that the services offered by the Bank are those actually offered by and affiliated with Baystate Financial. The Bank's acts were committed with the intent to pass off and palm off the Bank's services as the services of Baystate Financial, and with the intent to deceive and defraud the public.

67. As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

COUNT II
Trademark Infringement
Violation of 15 U.S.C. § 1125(a)

68. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 67.

69. Baystate Financial has used the BAYSTATE Marks in interstate commerce continuously since at least January 1, 1983 in connection with insurance and investment products and services.

70. The BAYSTATE Marks symbolize the valuable and extensive goodwill and consumer recognition that Baystate Financial has built up over the years and serve to identify Baystate Financial as the source of the high quality, innovative financial services that Baystate Financial offers throughout New England.

71. The BAYSTATE Marks have acquired distinctiveness and secondary meaning in connection with the financial services that Baystate Financial offers.

72. Despite its actual and constructive notice of Baystate Financial's senior use of the BAYSTATE Marks, the Bank has infringed upon those marks by the various acts described above, including offering financial services under the confusingly similar Bank Marks. The Bank's acts constitute false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact in interstate commerce, which are likely to cause confusion, mistake or to deceive, in violation of 15 U.S.C. § 1125(a).

73. The Bank's use of the Bank Marks for financial services is without the permission or authority of Baystate Financial. The Bank's acts also were committed with the intent to cause

confusion, mistake or to deceive, and without first having conducted a search of the federal and state service mark registries to avoid infringing on registered marks, such as the BAYSTATE FINANCIAL SERVICES mark.

74.  As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

## COUNT III
## Trademark Dilution
## Violation of 15 U.S.C. § 1125(c)

75.  Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 74.

76.  The BAYSTATE Marks are "famous marks" within the meaning of 15 U.S.C. § 1125(c).

77.  Baystate Financial has used the BAYSTATE Marks in interstate commerce continuously since at least January 1, 1983.

78.  The BAYSTATE Marks symbolize the valuable and extensive goodwill and consumer recognition that Baystate Financial has built up over the years and serve to identify Baystate Financial as the source of the high quality, innovative financial services that Baystate Financial offers throughout New England.

79.  The Bank's use of the Bank Marks is diluting the BAYSTATE Marks by lessening the capacity of the BAYSTATE Marks to identify and distinguish Baystate Financial's services, and by tarnishing the BAYSTATE Marks.

80.  The Bank's use of the Bank Marks for financial services is without the permission or authority of Baystate Financial. The Bank's acts also were committed with the intent to dilute and tarnish the BAYSTATE Marks.

81. As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

COUNT IV
Cyberpiracy
<u>Violation of 15 U.S.C. § 1125(d)</u>

82. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 81.

83. Baystate Financial is the owner of the BAYSTATE Marks, the Registrations and the domain name, "baystatefinancial.com."

84. The BAYSTATE Marks and Baystate Financial's domain name are distinctive and famous marks within the meaning of the Lanham Act.

85. The Bank has established a number of domain names, including "baystatesavingsbank.com", "baystateonline.com", "baystatesavingsbank.net", "baystatesavingsbank.biz" and "baystatatesavingsbank.org."

86. The Bank had a bad faith intent to profit from using the Bank Marks and the various domain names that it established, each of which are confusingly similar to, and dilutive of, the distinctive and famous BAYSTATE Marks and Baystate Financial domain name.

87. As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

COUNT V
Fraudulent Registration
<u>Violation of 15 U.S.C. § 1120</u>

88. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 87.

32

89. The Bank procured Registration Nos. 2,450,573; 2,452,511; 2,593,516 and 2,601,830 through false and fraudulent means, including (1) misrepresenting in the registration applications the length of time the Bank had been using the Bank Marks for financial services; (2) failing to disclose in the Bank's responses to the various USPTO Office Actions that the Bank had not been using the Bank Marks for financial services for the length of time originally indicated in the Bank's registration applications; and (3) misrepresenting in declarations filed in support of the Bank's registration applications that the Bank had been using the Bank Marks for financial services exclusively and continuously for five years before the filing of the declarations.

90. At the time it made these material misrepresentations, the Bank knew that the information it provided to the USPTO was false, fraudulent and misleading.

91. The Bank intended to induce, and did induce, the USPTO's reasonable reliance on the Bank's misrepresentations, which caused the USPTO to award the Bank's registrations.

92. As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

COUNT VI
Cancellation of the Bank's Federal Registrations
15 U.S.C. § 1064

93. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 92.

94. As alleged above, the Bank procured Registration Nos. 2,450,573; 2,452,511; 2,593,516 and 2,601,830 through false and fraudulent means.

95. Baystate Financial has been damaged as a result of the Bank's fraudulent procurement of these registrations.

33

## COUNT VII
### Violation of M.G.L. c. 110, § 4

96. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 95.

97. The Bank has used and is using the Bank Marks, which are confusingly similar to the BAYSTATE Marks, without Baystate Financial's written consent.

## COUNT VIII
### Violation of M.G.L. c. 110B, §§ 11-13

98. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 97.

99. The Bank's use of the Bank Marks is likely to cause confusion, mistake or to deceive and is diluting the BAYSTATE Marks, as described above.

100. The Bank's use of the Bank Marks for financial services is without the permission or authority of Baystate Financial. The Bank's acts also were committed with the intent to cause confusion, mistake or to deceive and to dilute the BAYSTATE Marks.

101. As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

## COUNT IX
### Violation of M.G.L. c. 93A, § 11

102. Baystate Financial restates and incorporates herein by reference the allegations in paragraphs 1 through 101.

103. At all relevant times, the Bank and Baystate Financial were engaged in trade or commerce within Massachusetts.

104. The Bank's acts described above constitute unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A, § 2.

105. The Bank's acts were performed willfully and knowingly.

106. As a result of the Bank's actions, Baystate Financial has suffered damage in an amount to be determined at trial.

WHEREFORE, Baystate Financial requests this Court to:

A. Dismiss the Bank's claims with prejudice;

B. Cancel the state and federal registrations of the Bank Marks, and the domain names established by the Bank, as described above, pursuant to 15 U.S.C. §§ 1064 and 1125(d) and M.G.L. c. 110B, § 8;

C. Enter a preliminary and permanent injunction ordering the Bank and its respective officers, agents, servants, employees and representatives, and those in active concert or participation with them, to refrain from using, authorizing or employing the Bank Marks, the domain names established by the Bank and any marks confusingly similar to the BAYSTATE Marks;

D. Enter judgment for Baystate Financial and against the Bank on all counts of Baystate Financial's Counterclaim;

E. Award Baystate Financial the full amount of its monetary damages;

F. Treble such damages as provided by law;

G. Award Baystate Financial interest, costs and attorneys' fees; and

H. Grant such other relief as the Court deems just and appropriate.

BAYSTATE FINANCIAL SERVICES, LLC,

By its attorneys,

_____
Debra K. Mayfield (BBO #549389)
Christopher P. Litterio (BBO #551098)
Brian K. French (BBO #637856)
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, Massachusetts 02114
(617) 742-4200

Dated: January 28, 2004

U:\BKF\Baystate Financial\Pleadings\answer.doc

36

37

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Answer and Counterclaim has been furnished by overnight mail to James C. Donnelly, Jr., Esq., Mirick O'Connell DeMallie & Lougee, LLP, 100 Front Street, Worcester, Massachusetts 01608, this 28th day of January, 2004.

_____
Brian K. French

U:\BKF\Baystate Financial\Pleadings\answer.doc





### Are Your Investments In Good Health?

*Take care of your investments and they'll take care of you.*



Minuteman Investment Services has a new name and a new look! We're now Bay State Investment Services, and we're proud to introduce our Investment Executive, Craig Proctor and Investment Services Associate, Cathie Herrick.

CRAIG PROCTOR brings more than 10 years of experience to Bay State Investment Services. Craig received his bachelors degree from Sam Houston State University and his Masters Degree in Business (MBA) from Embry Riddle Aeronautical University. Throughout his career, Craig has remained committed to the highest standards of ethics and professionalism. Whatever your goals, Craig can be counted on to provide honest and professional financial advice.

To introduce Craig and Cathie, you're invited to take advantage of a free offer. Simply call Bay State Investment Services at 508-890-9090 for a FREE financial analysis. There is absolutely no obligation or fee for this service. It's simply our way of introducing Bay State Investment Services to the community.



**BayState**
INVESTMENT SERVICES

Securities Offered Through Infinex Investments, Inc.
Member NASD/SIPC

**Call us today at 508-890-9090 or 800-244-8161 x9090**



Investment and insurance products and services are offered through Infinex Investments, Inc., Member NASD/SIPC. In Massachusetts, insurance products are offered through Infinex Insurance Agency of Massachusetts, Inc. Products and services made available through Infinex are not insured by the FDIC or any other agency of the United States and are not deposits or obligations of nor guaranteed or insured by any bank or bank affiliate. These products are subject to investment risk, including the possible loss of value.