UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BAY STATE SAVINGS BANK,
    Plaintiff

V.

BAYSTATE FINANCIAL SERVICES, LLC,
    Defendant

Civil Action No. 4:03-cv-40273-FDS

**PLAINTIFF BAY STATE SAVINGS BANK'S MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO COMPEL DISCOVERY</u>**

The plaintiff, Bay State Savings Bank® ("Bay State®"), pursuant to Fed. R. Civ. P. 37(a), moves to compel discovery of information concerning two issues that are relevant to its claims for infringement and dilution of its registered Bay State® service mark:

    1.    Baystate Financial's "Bank Affiliate Program," which distributes products and services similar to those offered under the plaintiff's registered Bay State® service mark in channels of trade that are similar to the plaintiff's, including other banks that compete directly with Bay State®; and

    2.    Baystate Financial's efforts to retain customers of the Patriot Group, an insurance agency located in downtown Worcester that Baystate Financial acquired in 2003, including efforts to introduce the Baystate name to Patriot Group customers and other efforts to generate name recognition and good will in the Worcester area.

The information was duly requested. Baystate Financial has objected. The parties have complied with Local Rule 37.1(A), but have failed to resolve the issue.[1]

## SUMMARY OF RELEVANT FACTS

*Background information concerning the lawsuit and motion.* This is an action for infringement of the "Bay State®" service mark, which the plaintiff has used continuously for banking and financial services for 110 years, since the bank's formation in 1895. The Massachusetts Secretary of State and the United States Patent and Trademark Office issued service mark registrations in 1999 and 2001 respectively. On December 4, 2003, Bay State® filed its Complaint asserting claims including unfair competition under § 43(a) of the Trademark Act of 1946 as amended 15 U.S.C. §1125(a) (the "Lanham Act"); for unlawful use of a trade name under G.L.M. c. 110, §4; for violation of the state trademark statutes, G.L.M. c. 110, §4 and c. 110B, §§11, 12 and 13; and for unfair and deceptive trade practices in violation of G.L.M. c. 93A, §11.

Baystate Financial is a general agent of New England Life that adopted the Baystate name on May 1, 1997. Its name, services and products are sufficiently similar to cause dilution and confusion. Until recently, its use of the Baystate name was limited. On November 26, 2003,

---

[1] See Bay State®'s First Set of Interrogatories (Interrogatory Nos. 11 and 17) and First Request for Production of Documents (Document Request Nos. 14 and 37), filed herewith as **Exhibits A** and **B** to the Affidavit of James C. Donnelly, Jr. in plaintiff's Appendix of Exhibits (referred to by exhibit as "Ex. __."). The information requested is relevant to the Bank's claims against Baystate Financial for service mark infringement because it evidences the extent to which Baystate Financial competes with Bay State®, the relationship between the parties' channels of trade, and efforts to promote the Baystate Financial name, which are factors the Court is required to consider in evaluating likelihood of confusion under the Lanham Act.
Bay State® served the discovery requests at issue on or about March 31, 2005. See **Exhibits A** and **B.** Baystate Financial served written responses and objections to the plaintiff's First Request for Production of Documents and First Set of Interrogatories on May 2, 2005, and May 31, 2005, respectively, refusing or failing to produce the requested information. See **Exhibits C** and **D**. Communications between counsel for each of the parties beginning in June 2005 and running through October 2005 satisfy the requirements of Local Rule 37.1(A). Baystate Financial refuses to produce information concerning the Bank Affiliate Program outside of Worcester County and continues to refuse to produce responsive documents and interrogatory answers concerning the identities of employees of the Patriot Group subsequently hired by Baystate Financial.

it announced a major expansion, including the acquisition of the Patriot Group in Worcester, and plans to expand the use of its name.  Baystate Financial asserts that it is the senior user and that Bay State® acquired the state and federal registrations by fraud.  These arguments are false.  Baystate Financial refuses to stop using the Bay State® mark.

*Plaintiff has used the name Bay State Savings Bank® continuously since 1895 and serves customers located throughout the Commonwealth and the United States.*  It is headquartered in an attractive century-old building facing the Worcester City Common and has branch locations in Worcester, Auburn and Holden.  The Bay State® mark is prominently displayed at each location.  Bay State®'s primary geographic market consists of Worcester and the surrounding communities, but its customers live in approximately 431 different postal zip codes in Massachusetts, and in 29 other states.  Lewis Aff., ¶¶2-4,11.[2]

*Bay State® provides a broad range of financial products and service sold by personnel located in Bay State® Offices.*  At first, this consisted of savings accounts and home mortgages.  St. 1907, c. 561 authorized savings banks to offer Savings Bank Life Insurance ("SBLI").  Available records show sales of SBLI dating to at least 1962.  In addition to SBLI, the services have included sales of savings bonds since 1960; mortgage and disability insurance by 1971; IRA, SEP and Keough retirement and educational accounts by 1976; Investment Unit Accounts by 1981; SBLI Life Saver Annuities by 1988; and sales of stocks, bonds and Mutual Funds by 1994.  From January 1999 to February 2002, the investment services were identified with the Minuteman Investment Services mark, but they were exclusively sponsored by Bay State®; sold

---

[2]   This motion is supported by the Affidavits of Robert J. Lewis ("Lewis Aff.") and Gerry A. Blodgett, Esq. ("Blodgett Aff."), filed herewith as Exhibits E and F to the Affidavit of James C. Donnelly, Jr. in plaintiff's Appendix of Exhibits.  The Affidavit of Robert J. Lewis makes reference to exhibits previously filed with the Court on March 29, 2004.

by personnel in located in Bay State® offices; and target marketed primarily to Bay State® customers.  Lewis Aff., ¶¶5-6.

*Bay State® obtained state and federal service mark registrations in 1999 and 2001, respectively*.  They include, among others:

| Mark | First Use | Federal Registration | State Registration | Services described |
|---|---|---|---|---|
| Bay State | 5/16/1895 | 5/15/01 | 10/14/99 | IC 036: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning And Financial Guarantee And Surety. |
| Bay State Savings Bank | 5/16/1895 | 5/22/01 | 7/20/99 | IC 036: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning, And Financial Guarantee And Surety. |
| Bay State Investment Services | 2/5/02 | 7/30/02 | 6/3/02 | IC 036: Investment Services, namely, mutual fund brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds, life insurance and long term care insurance and insurance agencies and underwriting in the field of life insurance and long term care insurance. |

The applications state that Bay State® had been using the mark for "BANKING AND FINANCIAL SERVICES TO CONSUMERS AND BUSINESSES" in International Class ("IC") 36 since 1895.[3]  The description of services was amended in good faith at the PTO's suggestion to add "FINANCIAL INVESTMENT IN THE FIELD OF REAL ESTATE, STOCKS, BONDS, COMMERCIAL PAPER, AND OTHER SECURITIES FINANCIAL MANAGEMENT AND PLANNING, AND FINANCIAL GUARANTY AND SURETY," all in IC 36.  Lewis Aff., ¶¶14-15; Blodgett Aff., ¶2.

*Baystate Financial uses the mark in similar channels of trade*.  Through its "Bank Affiliate Program," Baystate Financial offers its services through banks that are similar to Bay State®, sometimes using the Baystate name to promote those services.  Lewis Aff., ¶¶20-21.

---

[3] International Class ("IC") 36 includes:  Insurance, financial affairs, monetary affairs, and real estate affairs.

*On November 23, 2003, Baystate Financial announced a major expansion including a 38-employee financial planning business located across the Worcester City Common from Bay State®'s headquarters.* The announcement asserts that the expansion made Baystate Financial the largest financial planning operation in New England with 168 employees and annual sales of $176 million, and that the expansion will continue. Lewis Aff., ¶24.

Baystate Financial has objected and refused to produce information concerning the Bank Affiliate Program outside of Worcester County and continues to refuse to produce responsive documents and interrogatory answers concerning the identities of employees of the Patriot Group subsequently hired by Baystate Financial.

## ARGUMENT

A.   <u>The Federal Rules of Civil Procedure Permit Discovery of Relevant Information</u>.

Rule 26(b)(1) provides for broad discovery of "any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Bay State® is entitled to the requested discovery under this liberal standard, where information concerning the Bank Affiliate Program and the employees hired by Baystate Financial upon the acquisition of the Patriot Group is relevant to Bay State®'s claims for infringement and evidences likelihood of confusion under the Lanham Act.

B.   <u>Documents and Information Concerning Baystate Financial's Bank Affiliate Program are Relevant to Show the Extent to Which Baystate Financial Competes with the Bank and the Relationship between the Parties' Channels of Trade.</u>

The Bank Affiliate Program involves a channel of commerce that is almost identical to that of Bay State Investment Services. Baystate Financial offers its services through banks that

are similar to Bay State®, sometimes using the Baystate name to promote those services. The information requested through Document Request No. 37 and Interrogatory No. 11 concerning the Bank Affiliate Program is relevant to show the extent to which Baystate Financial competes with the Bank and the relationship between the parties' channels of trade, which are factors the Court is required to consider in evaluating likelihood of confusion under Lanham Act §43(a). See Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989).

During the parties' Local Rule 37.1 conference held on September 29, 2005, counsel for Baystate Financial stated that Baystate Financial is affiliated with only one bank in Worcester County and agreed to produce documents and information concerning that bank alone.

Baystate Financial's refusal to provide information about the Bank Affiliate Program beyond Worcester County is inappropriate, where Bay State®'s state and federal registrations are prima facie evidence of Bay State®'s exclusive right to use the Bay State® mark, not only statewide, but nationwide. The Lanham Act and M.G.L. c. 110B "statutorily expanded the common law rights of a senior user who registers its mark under the Act." See Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc., 639 F.Supp. 750, 755 (D.Mass. 1986), aff'd, 831 F.2d 924, 932 (1st Cir. 1987). Subject to certain enumerated defenses, federal registrations:

> . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein.

15 U.S.C. §1115(a). See also M.G.L. c. 110B, §4 (registration of a mark is prima-facie evidence of the registrant's exclusive right to use the registered mark in the Commonwealth).

There is no geographic limit to Bay State®'s registrations. Indeed, while Bay State®'s primary geographic market consists of Worcester and the surrounding communities, its

customers live in approximately 431 different postal zip codes in Massachusetts, and in 29 other states.  Use of a confusingly similar name anywhere in the United States would be a violation, unless Baystate Financial could establish a "limited area" defense under applicable trademark law. [4]  Baystate Financial bears the burden of establishing such a defense and may not unilaterally refuse to produce information concerning its use of the mark in other relevant geographical areas.  See Thrifty Rent-A-Car Syst., Inc. v. Thrift Cars, Inc., 831 F.2d 1177, 1181 (1st Cir. 1987) (party claiming "limited area" defense bears the burden of proof as to that issue).

On September 29, 2005, the Court entered the parties' Confidentiality Stipulation and Agreed Protective Order as an order in this case, obviating Baystate Financial's objections concerning the confidentiality of the requested information.  The Confidentiality Stipulation and Agreed Protective Order provides that all confidential information shall be marked as such and will not be used for any purposes other than this litigation and shall not be disclosed, discussed with or used by any individual or entity not connected with the lawsuit.  Confidentiality is not an issue because Baystate Financial can designate such information confidential.

---

[4]   At common law, "two parties who innocently adopt similar trademarks and use them in separate markets carve out territories for themselves.  Within its territory, each party can use its mark free from interference by the other."  Thrifty Rent-A-Car Syst., Inc. v. Thrift Cars, Inc., 639 F. Supp. 750, 753 (D. Mass. 1986), aff'd, 831 F.2d 1177 (1st Cir. 1987).  This was codified in Section 33(b)(5) of the Lanham Act, 15 U.S.C. §1115(b)(5), which "confers upon a junior user, such as [Baystate Financial], the right to continued use of an otherwise infringing mark in a remote geographical area  if that use was established prior to the other party's [state registration or federal application]. "  Thrifty, 831 F.2d at 1181.  To sustain its "limited area" defense, Baystate Financial "is required to demonstrate (1) that it adopted its mark before[Bay State®'s 1999 application] under the ... Act, and without knowledge of [Bay State®]'s prior use; (2) the extent of the trade area in which [Baystate Financial] used the mark prior to [Bay State®]'s registration; and (3) that [Baystate Financial] has continuously used the mark in the pre-registration trade area."  Id.  (citing Foxtrap, Inc. v. Foxtrap, Inc., 671 F.2d 636, 640 (D.C. Cir. 1982)).

C. <u>Documents and Information Concerning Patriot Group Employees are Relevant to Show That Efforts to Retain Patriot Group Business and Promote the New Name are Likely to Cause Confusion and Dilution</u>.

On November 26, 2003, Baystate Financial announced the acquisition of a 38 –employee firm formerly known as the Patriot Group that is located directly across the Worcester City Common from Bay State®'s headquarters in downtown Worcester. Baystate Financial changed the firm's name and retained several Patriot Group employees. Bay State® is entitled to information about what employees held over, what accounts they retained and how they presented the change from Patriot Group to Baystate Financial.

Patriot Group employees who were hired by Baystate Financial after its acquisition of the Patriot Group undoubtedly solicited clients to retain their business and promote the new name. This almost certainly involved marketing and promotional activities to introduce customers to the Baystate Financial mark. Such efforts to promote the new name are relevant to likelihood of confusion, yet Baystate Financial refuses to identify witnesses who possess this information. Pursuant to Rule 26(b)(1) Bay State® is entitled, inter alia, to discovery of the " identity and location of persons having knowledge of any discoverable matter" including the identities of the former Patriot Group employees subsequently hired by Baystate Financial. Fed. R. Civ. P. 26(b)(1).

Bay State® does not seek personal employee information through its requests (Interrogatory No. 17 and Document Request No. 14), but documentation concerning Baystate Financial's sales to customers and clients located in Worcester County through such representatives since Baystate Financial's acquisition of the Patriot Group. Bay State® requests employee information only to the extent such individuals have been conducting sales and marketing activities in Worcester County. It is entitled to information concerning the volume of sales made, commissions earned, types of products sold, and marks associated with the products

{H:\PA\Lit\16311\00003\A0853751.DOC}

- 8 -

sold.  See e.g., Boston Athletic Ass'n, 876 F.2d at 29 (in evaluating likelihood of confusion relevant factors include similarity of the marks, similarity of the goods, relationship between the parties' channels of trade, relationship between the parties' advertising, classes of prospective purchasers, evidence of actual confusion, defendant's intent in adopting its mark and strength of plaintiff's mark).

As referenced above, on September 29, 2005, the Court entered the parties' Confidentiality Stipulation and Agreed Protective Order as an order in this case, obviating Baystate Financial's objections concerning the confidentiality of the requested information.  The Confidentiality Stipulation and Agreed Protective Order provides that all confidential information shall be marked as such and will not be used for any purposes other than this litigation and shall not be disclosed, discussed with or used by any individual or entity not

connected with the lawsuit. Confidentiality is not an issue because Baystate Financial may designate such information confidential.

                BAY STATE SAVINGS BANK

                By its attorneys,

Dated: November 2, 2005              /s/ James C. Donnelly, Jr.
                James C. Donnelly, Jr., Esq.
                BBO #129700
                Ann Marie Dirsa, Esq.
                BBO #650173
                Mirick, O'Connell, DeMallie & Lougee, LLP
                100 Front Street
                Worcester, MA 01608-1477
                Phone: (508) 791-8500
                Fax:   (508) 791-8502

## CERTIFICATE OF SERVICE

I, James C. Donnelly, Jr., hereby certify that I have this day served a copy of the foregoing document, by electronic filing, to Christopher P. Litterio, Esq., Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114 and Brian K. French, Esq., Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114.

                /s/James C. Donnelly, Jr.
Dated: November 2, 2005         James C. Donnelly, Jr., Esq.

## CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 37.1(A)

I, James C. Donnelly, Jr., hereby certify that I have complied with the provision of Local Rule 37.1(A) in filing of the above-captioned motion. On July 12, 2005, and September 29, 2005, counsel for the parties participated in discovery conferences in a good faith effort to narrow the areas of disagreement to the greatest possible extent, pursuant to Fed. R. Civ. P. 37(a)(2)(A) and Local Rule 37.1(A).

                /s/ James C. Donnelly, Jr.
Date:  November 2, 2005         James C. Donnelly, Jr., Esq.