UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BAY STATE SAVINGS BANK,
    Plaintiff

V.

BAYSTATE FINANCIAL SERVICES, LLC,
    Defendant

CIVIL ACTION NO. 4:03-CV-40273-FDS

## **APPENDIX OF EXHIBITS**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BAY STATE SAVINGS BANK,
    Plaintiff

    V.

BAYSTATE FINANCIAL SERVICES, LLC,
    Defendant

Civil Action No. 4:03-cv-40273-FDS

## AFFIDAVIT OF JAMES C. DONNELLY, JR.

I, James C. Donnelly, Jr., do hereby under oath depose and state the following:

1.      I represent the plaintiff, Bay State Savings Bank®, in the above captioned matter.

2.      The attached exhibits are genuine copies of the following documents:

| Exhibit | Description |
|---------|-------------|
| A | Plaintiff Bay State Savings Bank's First Set of Interrogatories to the Defendant, Baystate Financial Services, LLC, dated March 31, 2005 |
| B | Plaintiff Bay State Savings Bank's First Requests for Production of Documents to the Defendant, Baystate Financial Services, LLC, dated March 31, 2005 |
| C | Defendant's Responses to Plaintiff's First Requests for Production of Documents served on my office on or about May 2, 2005 |
| D | Defendant's Answers to Plaintiff's First Set of Interrogatories served on my office on or about May 31, 2005 |
| E | Affidavit of Robert Lewis, previously filed with the Court on March 29, 2004 |
| F | Affidavit of Gerry Blodgett, previously filed with the Court on March 29, 2004 |

I declare and certify under the penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of November 2005.

/s/ James C. Donnelly, Jr.

James C. Donnelly, Jr., Esq.
BBO #129700
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

<u>CERTIFICATE OF SERVICE</u>

I, James C. Donnelly, Jr., hereby certify that I have this day served a copy of the foregoing document, by electronic filing, to Christopher P. Litterio, Esq., Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114 and Brian K. French, Esq., Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114.

/s/ James C. Donnelly, Jr.

Dated: November 2, 2005                James C. Donnelly, Jr., Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAY STATE SAVINGS BANK )<br>　　Plaintiff　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>　　v.　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>BAYSTATE FINANCIAL SERVICES, LLC)<br>　　Defendant　　　　　　　　　　　) | Civil Action No. 4:03-CV-40273-FDS |

## PLAINTIFF BAY STATE SAVINGS BANK'S FIRST SET OF INTERROGATORIES TO THE DEFENDANT, BAYSTATE FINANCIAL SERVICES, LLC

The plaintiff, Bay State Savings Bank, hereby requests that the defendant, Baystate Financial Services, LLC, respond to the following interrogatories in accordance with the provisions of Fed. R. Civ. P. 33.

In answering these Interrogatories, reference should be made to the following definitions:

### DEFINITIONS/INSTRUCTIONS

1.　　The term "Plaintiff" shall refer to Bay State Savings Bank.

2.　　The terms "Baystate Financial", "Defendant", "you" or "your" shall refer to Baystate Financial Services, LLC and any of its officers, directors, successors, parents, subsidiaries, assigns, employees, agents or representatives.

3.　　The term "Defendant's Predecessors" or "Predecessors" shall refer to all of Defendant's predecessors in interest concerning the BAYSTATE Marks including Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency; Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency; Successors-in-interest of

Interrogatory No. 11:  Identify and describe Defendant's "Bank Affiliate Program" including:

    a.    The identity of each participating financial institution;

    b.    The advertising and promotional activities supporting the program;

    c.    The use of BAYSTATE Marks in connection with such program, or any goods or services pertaining to the program;

    d.    The sales, revenues, commissions and profit for activities related to each participating financial institution;

    e.    The persons with knowledge of the program; and

    f.    The documents concerning the program.

Interrogatory No. 12:  Identify and describe separately for each year since first use of the BAYSTATE Marks the precise geographic territory and the manner in which the BAYSTATE Marks have been used by Defendant and its Predecessors within such territory.  Please include in the description for each separate year:

    a.    The dates the BAYSTATE Mark was used in such territory;

    b.    The nature of use of the BAYSTATE Marks in such territory;

    c.    The identity of persons with knowledge of the foregoing; and

    d.    The identity of documents reflecting use in such territory.

Interrogatory No. 13:  Identify and describe any incidents of actual confusion, mistake or deception that you allege arise from use of the BAYSTATE Marks by either party, including Defendant's Predecessors.

Interrogatory No. 14:  Identify in full the names and addresses of the principals, officers, and/or directors of the Defendant and its Predecessors including each of the following entities and the dates such individuals served in such capacity:

    a.    Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;

    b.    Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;

    c.    Successors-in-interest of Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson Insurance Agency;

    d.    New England Financial Services LLC;

    e.    New England Life Insurance Company; and

    f.    Porter/Desautels LLC.

Interrogatory No. 15:  Identify and describe all efforts made by Defendant to solicit or retain customers of The Patriot Group including a description of all communications to such

customers. Please include in the description the identity of persons and documents with information concerning such activities.

Interrogatory No. 16:  Identify all customers of The Patriot Group to whom such communications and solicitations (as identified in the preceding answer) were directed, and the response (if any) from each such customer.

Interrogatory No. 17:  Identify each employee of The Patriot Group who subsequently became employed by Defendants.

Interrogatory No. 18:  Please identify all witnesses and documents with information relevant to Defendant's allegation in paragraphs 17 to 22 of Defendant's counterclaim that the BAYSTATE Marks have acquired secondary meaning.

Interrogatory No. 19:  Please identify all witnesses and documents with information relevant to the issue of whether use of the BAYSTATE Marks is likely to cause confusion, as alleged in paragraphs 32 to 35 of the counterclaim.

Interrogatory No. 20:  Please identify all witnesses and documents with information relevant to the allegations of paragraphs 36 to 60 that the Plaintiff procured registration of marks by fraud.

Interrogatory No. 21:  Please identify and describe all harm or damage that Defendant claims to have suffered based on the allegations of the counterclaim.

Interrogatory No. 22:  Please identify all witnesses and documents with information concerning the harm described in the preceding answer.

Interrogatory No. 23:  Please identify and describe Defendant's or its Predecessors' use of any other mark besides the BAYSTATE Marks at any place or any time.

Interrogatory No. 24:  Please identify and describe Defendant's acquisition of assets, distribution or franchise rights, customer lists, real estate interests or other assets of any kind formerly held by or owned by The Patriot Group.

Interrogatory No. 25:  Identify in full each expert witness whom you expect to be called for testimony on your behalf at trial, and please state, specifying separately as to each expert:

        a.      The subject matter on which the expert is expected to testify;

        b.      The substance of the facts and opinions to which each such expert is expected to testify; and

        c.      A summary of the grounds for each opinion of each such expert.

BAY STATE SAVINGS BANK
By its attorneys,

James C. Donnelly, Jr., Esq.
B.B.O. No. 129700
Ann Marie Dirsa, Esq.
B.B.O. No. 650173
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA  01608-1477
Phone:  (508) 791-8500
Fax:    (508) 791-8502

Dated: March 31, 2005

## CERTIFICATE OF SERVICE

I, James C. Donnelly, Jr., hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, via first-class mail, postage prepaid, to:  Christopher P. Litterio, Esq. of Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114:

Dated: March 31, 2005

James C. Donnelly, Jr.

# **EXHIBIT B**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAY STATE SAVINGS BANK<br>　　Plaintiff<br><br>　　　v.<br><br>BAYSTATE FINANCIAL SERVICES, LLC<br>　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 4:03-CV-40273-FDS |

## PLAINTIFF BAY STATE SAVINGS BANK'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO BAYSTATE FINANCIAL SERVICES, LLC

Pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure, the plaintiff, Bay State Savings Bank, requests that the defendant produce the following items for inspection and copying at the offices of Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, Massachusetts 01608-1477, the attorneys for the plaintiff, within thirty (30) days hereof. Alternatively, compliance may be accomplished by mailing to plaintiff's counsel, fully legible, complete copies of each and every document to be produced.

### <u>Definitions</u>

1.　　　The term "Plaintiff" shall refer to Bay State Savings Bank.

2.　　　The terms "Baystate Financial", "Defendant", "you" or "your" shall refer to Baystate Financial Services, LLC and any of its officers, directors, successors, parents, subsidiaries, assigns, employees, agents or representatives.

3.    The term "Defendant's Predecessors" or "Predecessors" shall refer to all of

Defendant's predecessors in interest concerning the BAYSTATE Marks including Desautels &

Wilson Partnership d/b/a Desautels & Wilson Insurance Agency; Wilson, Bergstrom & Denton

Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency; Successors-in-interest of

Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency,

including the Wilson & Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and

the Richard Wilson Insurance Agency; New England Financial Services LLC; New England Life

Insurance Company; David C. Porter; Porter/Desautels LLC; The Patriot Group; and any other

predecessor of Baystate Financial and any of their officers, directors, successors, parents,

subsidiaries, assigns, employees, agents or representatives.

4.    The term "BAYSTATE Marks" shall refer to the service marks BAYSTATE,

BAYSTATE FINANCIAL and BAYSTATE FINANCIAL SERVICES.

5.    The Plaintiff incorporates by reference herein the uniform definitions set forth in

Local Rule 26.5.

## Requests for Production

Request No. 1:  All documents concerning adoption of the BAYSTATE Marks by
Defendant and its Predecessors including the basis for the decision to adopt the Marks.

Request No. 2:  All documents concerning Defendant's acquisition of the Baystate
Financial Services tradename, BAYSTATE Marks and any related service mark registration.

Request No. 3:  All documents concerning Defendant's or its Predecessors' use of any
other Mark at any place or any time.

Request No. 4:   Any and all corporate documents, such as minute books, etc., concerning Defendant's predecessors including Porter/Desautels LLC.

Request No. 5:   All documents and things concerning any search, study, inquiry, survey or investigation carried out by, or prepared for the Defendant or its Predecessors concerning the validity, enforceability and/or infringement of the BAYSTATE Marks.

Request No. 6:   All documents concerning the preparation and/or prosecution of any trademark or servicemark application by or on behalf of the Defendant or its Predecessors for any of the BAYSTATE Marks whether or not resulting in the issuance of a trademark or servicemark.

Request No. 7:   All documents concerning the origin, meaning, significance or impression intended to be communicated by Defendant's use of the BAYSTATE Marks.

Request No. 8:   All documents concerning market studies, focus group studies, polls or surveys conducted by or on behalf of the Defendant or its Predecessors concerning the BAYSTATE Marks.

Request No. 9:   All documents concerning any analysis, studies or reports concerning the sales or prospective sales of Defendant's or its Predecessors' goods or services under the BAYSTATE Marks, including but not limited to business plans, marketing plans, development plans, financial plans and budgetary plans.

Request No. 10:   All documents concerning Defendant's or its Predecessors' "Bank Affiliate Program", including but not limited to documents concerning:

      a.     The identity of each participating financial institution;
      b.     The advertising and promotional activities supporting the program;
      c.     The use of BAYSTATE Marks in connection with such program, or any goods or services pertaining to the program;
      d.     The sales, revenues, commissions and profit for activities related to each participating financial institution;
      e.     The persons with knowledge of the program; and
      f.     The documents concerning the program.

Request No. 11:   All documents concerning any analysis, studies or reports relating to the expansion of Defendant's or its Predecessors' sales or prospective sales of goods or services under the BAYSTATE Marks, including but not limited to business plans, marketing plans, development plans, financial plans and budgetary plans and including but not limited to expansion into the Worcester Area.

Request No. 12:  All documents concerning the Defendant's Acquisition of assets, distribution or franchise rights, customer lists, real estate interests or other assets of any kind formerly held by or owned by The Patriot Group.

Request No. 13:  All documents concerning efforts to solicit or retain customers of The Patriot Group, including but not limited to any and all communications to or from such customers.

Request No. 14:  All documents concerning any and all employees of The Patriot Group who subsequently became employed by Baystate Financial Services.

Request No. 15:  All documents concerning Defendant's or its Predecessors' communications with New England Financial or New England Life Insurance Company concerning the BAYSTATE Marks.

Request No. 16:  All documents concerning Defendant's or its Predecessors' first use and first use in commerce of each distinct use of the BAYSTATE Marks for each of the particular goods and/or services with which the BAYSTATE Marks are or have been used.

Request No. 17:  All documents concerning Defendant's or its Predecessors' development, sale and distribution of any goods or services with which the BAYSTATE Marks have been used.

Request No. 18:  Specimens of all goods and services sold, offered or produced by Defendant or its Predecessors bearing the BAYSTATE Marks.

Request No. 19:  Representative documents evidencing every good and/or service with which Defendant's or its Predecessor's use of any of the BAYSTATE Marks has been associated.

Request No. 20:  Specimens of all advertising and promotional documents prepared by or on behalf of Defendant or its Predecessors bearing any of the BAYSTATE Marks, including, but not limited to, brochures, catalogs, circulars, leaflets, direct mail pieces, paper and magazine advertisements, television commercials, radio scripts, telephone book advertisements, counter displays or other point-of-sale displays, price lists, trade association listings, annual reports and any other materials such as labels, tags, packages, containers, decals, stamps, and nameplates used by Defendant or its Predecessors, or their agents, distributors or other sellers of its goods and/or services.

Request No. 21:  All documents concerning educational or promotional events, dinners, seminars or other events presented, offered or sponsored by the Defendant or its Predecessors, including but not limited to documents concerning invitees, attendees, and materials distributed or presented at the event including writings, drawings, graphs, charts, photographs, and other data compilations from which information can be obtained.

Request No. 22:  All documents summarizing and/or evidencing Defendant's or its Predecessor's advertising or promotional expenditures for any goods and/or services bearing or sold under the BAYSTATE Marks.

Request No. 23:  All media articles or stories and press releases referring or relating to Defendant's or its Predecessor's business or the BAYSTATE Marks.

Request No. 24:  All documents summarizing and/or evidencing total dollar sales and total unit sales for each good or service incorporating or offered in association with the BAYSTATE Marks by Defendant or its Predecessors on an annual basis from the date of Defendant's or its Predecessors' first use of any of the BAYSTATE Marks until the present.

Request No. 25:  All documents concerning statements, inquiries, comments or other communications by or from Defendant's or its Predecessors' customers, distributors, suppliers or any other third parties concerning the similarity of Plaintiff's use of the Bay State mark to Defendant's or its Predecessors' use of any of the BAYSTATE Marks or concerning any confusion, suspicion, belief or doubt on the part of said third parties as the relationship between the Defendant or its Predecessors and Bay State Savings Bank or their respective goods and/or services including any misdirected complaints or inquiries.

Request No. 26:  All documents concerning any challenge, objection, protest, cease and desist letter, opposition, action, claim, lawsuit or proceeding of any kind Defendant or its Predecessors has ever made to any third party or any third party has made to Defendant or its Predecessors, concerning use of the BAYSTATE Marks.

Request No. 27:  All documents concerning any inquiry, investigation or survey conducted by or on behalf of Defendant regarding any of the issues involved in this proceeding.

Request No. 28:  All documents concerning Defendant's or its Predecessors' knowledge or awareness of Bay State Savings Bank's use or registration of the BAYSTATE Marks.

Request No. 29:  All documents concerning any transfer, license or assignment to or from the Defendant or its Predecessors of any rights or interests in the BAYSTATE Marks.

Request No. 30:  All documents concerning the geographic scope of Defendant's or its Predecessors' advertising, distribution, and sales of goods and/or services bearing any of the BAYSTATE Marks and any change of geographic scope since the date of first use.

Request No. 31:  All documents concerning any plan Defendant has to expand the type of goods or services it provides under the BAYSTATE Marks or the geographic scope of the use of said Marks.

Request No. 32:  A copy of each annual report of Defendant or its Predecessors for the date of first use of the BAYSTATE Marks to the present.

Request No. 33:  All training materials or manuals provided to or used for training of Defendant's or its Predecessors' sales personnel.

Request No. 34:  All documents concerning the development, sale and distribution by the Defendant or it Predecessors of any goods or services with which the BAYSTATE Marks have been used including sale or distribution of goods and services by:

    a.    Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;

    b.    Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;

    c.    Successors-in-interest of Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson Insurance Agency;

    d.    New England Financial Services LLC;

    e.    New England Life Insurance Company;

    f.    David C. Porter; and

    g.    Porter/Desautels LLC.

Request No. 35:  All documents concerning advertising or promotional expenditures or activities by the Defendant or its Predecessors of any goods and/or services bearing or sold under the BAYSTATE Marks including expenditures or activities by or on behalf of:

    a.    Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;

    b.    Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;

    c.    Successors-in-interest of Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson &

Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson Insurance Agency;

    d.   New England Financial Services LLC;

    e.   New England Life Insurance Company;

    f.   David C. Porter; and

    g.   Porter/Desautels LLC.

Request No. 36:   All documents summarizing and/or evidencing total dollar sales and total unit sales for each good or service offered in association with the BAYSTATE Marks by Defendant or its Predecessors on an annual basis from the date of first use of any of the BAYSTATE Marks until the present including sales by:

    a.   Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;

    b.   Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;

    c.   Successors-in-interest of Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson Insurance Agency;

    d.   New England Financial Services LLC;

    e.   New England Life Insurance Company;

    f.   David C. Porter; and

    g.   Porter/Desautels LLC.

Request No. 37:   All documents concerning or containing information concerning Defendant's or its Predecessors' Bank Affiliate Program including but not limited to:

    a.   Agreements with participating banks;

    b.   Correspondence;

    c.   Referral of customers from or to such banks;

    d.   Advertising and promotion of the Bank affiliate Program or any goods or services offered under said program;

    e.   Total dollar sales and unit sales under said Program;

    f.   Total revenues, profits and net profits generated by or for Defendant or its Predecessors' under said Program.

Request No. 38:   All documents concerning or containing information relevant to Defendant's allegation in paragraphs 17 to 22 of Defendant's counterclaim that the BAYSTATE Marks have acquired secondary meaning.

Request No. 39:   All documents concerning or containing information relevant to the issue of whether use of the BAYSTATE Marks is likely to cause confusion, as alleged in paragraphs 32 to 35 of the counterclaim.

Request No. 40:   All documents concerning or containing information relevant to the allegations of paragraphs 36 to 60 that the Plaintiff procured registration of marks by fraud.

Request No. 41:   All documents concerning the harm or damage that Defendant claims to have suffered based on the allegations of the counterclaim.

Request No. 42:   Defendant's or its Predecessors' agreements with New England Finalist Services, LLC and/or New England Life.

Request No. 43:   All statements or opinions of any expert retained by Defendant or any person acting for or on behalf of Defendant regarding any of the issues involved in this proceeding.

Request No. 44:   All documents identified and/or referred to in Defendant's Rule 26(a)(1) disclosures; specifically those mentioned pursuant to Rule 26(a)(1)(B), or in answer to any of Plaintiff's interrogatories.

BAY STATE SAVINGS BANK
By its attorneys,

James C. Donnelly, Jr., Esq.
B.B.O. No. 129700
Ann Marie Dirsa, Esq.
B.B.O. No. 650173
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: March 31, 2005

## CERTIFICATE OF SERVICE

I, James C. Donnelly, Jr., hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, via first-class mail, postage prepaid, to:  Christopher P. Litterio, Esq. of Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114:

Dated:  March 31, 2005

James C. Donnelly, Jr.

# **EXHIBIT C**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BAY STATE SAVINGS BANK, | ) |
| Plaintiff, | ) |
| v. | ) |
| BAYSTATE FINANCIAL SERVICES, LLC, | ) |
| Defendant. | ) |

Civil Action No. 4:03-cv-40273-FDS

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant Baystate Financial Services, LLC ("Baystate Financial") responds to the First Request for Production of Documents of plaintiff Bay State Savings Bank (the "Bank") as follows:

## GENERAL OBJECTIONS

1.      Baystate Financial objects to each request to the extent that it seeks documents protected from disclosure by the attorney-client privilege or work product doctrine.

2.      Baystate Financial objects to each request to the extent that it seeks documents that contain confidential information, the disclosure of which, in the absence of an adequate protective order, will harm Baystate Financial or related entities.

3.      Baystate Financial objects to each request to the extent that it seeks documents beyond the permitted scope of discovery under Fed. R. Civ. P. 26 or the Local Rules.

4.      Baystate Financial objects to each request to the extent that it seeks documents beyond Baystate Financial's possession, custody or control.

5.    Baystate Financial will produce the documents indicated below at a mutually convenient time and place.

6.    Any statements below that documents will be produced in response to particular requests are not intended as representations that any such documents exist, but only that Baystate Financial will produce those documents that do exist, are in its possession, custody or control, are not privileged or confidential, and can be found in a reasonable search.

7.    The inadvertent production of any documents as to which a claim of privilege or confidentiality could have been invoked by Baystate Financial is not intended as a waiver of privilege or confidentiality as to such documents or any related documents not produced or in connection with any subsequent request for production of documents in this matter.

## SPECIFIC RESPONSES AND OBJECTIONS

Subject to and without waiver of the foregoing general objections, Baystate Financial responds to the Bank's requests as follows:

Request No. 1:

All documents concerning adoption of the BAYSTATE Marks by Defendant and its Predecessors including the basis for the decision to adopt the Marks.

Response to Request No. 1:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 2:

All documents concerning Defendant's acquisition of the Baystate Financial Services tradename, BAYSTATE Marks and any related service mark registration.

Response to Request No. 2:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 3:

All documents concerning Defendant's or its Predecessors' use of any other Mark at any place or any time.

Response to Request No. 3:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 4:

Any and all corporate documents, such as minute books, etc., concerning Defendant's predecessors including Porter/Desautels LLC.

Response to Request No. 4:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

Request No. 5:

All documents and things concerning any search, study, inquiry, survey or investigation carried out by, or prepared for the Defendant or its Predecessors concerning the validity, enforceability and/or infringement of the BAYSTATE Marks.

Response to Request No. 5:

Baystate Financial objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege or work product doctrine. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

3

Request No. 6:

All documents concerning the preparation and/or prosecution of any trademark or servicemark application by or on behalf of the Defendant or its Predecessors for any of the BAYSTATE Marks whether or not resulting in the issuance of a trademark or servicemark.

Response to Request No. 6:

Baystate Financial objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege or work product doctrine. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 7:

All documents concerning the origin, meaning, significance or impression intended to be communicated by Defendant's use of the BAYSTATE Marks.

Response to Request No. 7:

Baystate Financial objects to this request as vague and ambiguous. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 8:

All documents concerning market studies, focus group studies, polls or surveys conducted by or on behalf of the Defendant or its Predecessors concerning the BAYSTATE Marks.

Response to Request No. 8:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

4

Request No. 9:

All documents concerning any analysis, studies or reports concerning the sales or prospective sales of Defendant's or its Predecessors' goods or services under the BAYSTATE Marks, including but not limited to business plans, marketing plans, development plans, financial plans and budgetary plans.

Response to Request No. 9:

Baystate Financial objects to this request as overly broad and not reasonably calculated to

lead to the discovery of admissible evidence. Baystate Financial also objects to this request to

the extent that it seeks documents that contain confidential information, the disclosure of which

would harm Baystate Financial or related entities. Subject to and without waiver of the

foregoing objections, Baystate Financial will produce those non-privileged documents within its

possession, custody or control that are responsive to this request and which specifically involve

the BAYSTATE Marks.

Request No. 10:

All documents concerning Defendant's or its Predecessors' "Bank Affiliate Program", including but not limited to documents concerning:

a.    The identity of each participating financial institution;
b.    The advertising and promotional activities supporting the program;
c.    The use of BAYSTATE Marks in connection with such program, or any goods or services pertaining to the program;
d.    The sales, revenues, commissions and profit for activities related to each participating financial institution;
e.    The persons with knowledge of the program; and
f.    The documents concerning the program.

Response to Request No. 10:

Baystate Financial objects to this request as overly broad and not reasonably calculated to

lead to the discovery of admissible evidence. Baystate Financial also objects to this request to

the extent that it seeks documents that contain confidential information, the disclosure of which

would harm Baystate Financial or related entities. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents in response to Request No. 10(c) that bear the BAYSTATE Marks.

Request No. 11:

All documents concerning any analysis, studies or reports relating to the expansion of Defendant's or its Predecessors' sales or prospective sales of goods or services under the BAYSTATE Marks, including but not limited to business plans, marketing plans, development plans, financial plans and budgetary plans and including but not limited to expansion into the Worcester Area.

Response to Request No. 11:

Baystate Financial objects to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request and which specifically involve the BAYSTATE Marks.

Request No. 12:

All documents concerning the Defendant's Acquisition of assets, distribution or franchise rights, customer lists, real estate interests or other assets of any kind formerly held by or owned by The Patriot Group.

Response to Request No. 12:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this

6

request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities.

Request No. 13:

All documents concerning efforts to solicit or retain customers of The Patriot Group, including but not limited to any and all communications to or from such customers.

Response to Request No. 13:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities.

Request No. 14:

All documents concerning any and all employees of The Patriot Group who subsequently became employed by Baystate Financial Services.

Response to Request No. 14:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request to the extent that it seeks documents that contain confidential or private information, the disclosure of which would harm Baystate Financial, related entities or other individuals.

Request No. 15:

All documents concerning Defendant's or its Predecessors' communications with New England Financial or New England Life Insurance Company concerning the BAYSTATE Marks.

<u>Response to Request No. 15</u>:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

<u>Request No. 16</u>:

All documents concerning Defendant's or its Predecessors' first use and first use in commerce of each distinct use of the BAYSTATE Marks for each of the particular goods and/or services with which the BAYSTATE Marks are or have been used.

<u>Response to Request No. 16</u>:

Baystate Financial objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to this discovery of admissible evidence. Baystate Financial also objects to this request as vague and ambiguous. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents within its possession, custody or control that are responsive to this request and which bear the BAYSTATE Marks.

<u>Request No. 17</u>:

All documents concerning Defendant's or its Predecessors' development, sale and distribution of any goods or services with which the BAYSTATE Marks have been used.

<u>Response to Request No. 17</u>:

Baystate Financial objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to this discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents within its possession, custody or control that are responsive to this request and which bear the BAYSTATE Marks.

Request No. 18:

Specimens of all goods and services sold, offered or produced by Defendant or its Predecessors bearing the BAYSTATE Marks.

Response to Request No. 18:

Baystate Financial objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to this discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents within its possession, custody or control that are responsive to this request and which bear the BAYSTATE Marks.

Request No. 19:

Representative documents evidencing every good and/or service with which Defendant's or its Predecessors' use of any of the BAYSTATE Marks has been associated.

Response to Request No. 19:

Baystate Financial objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to this discovery of admissible evidence. Baystate Financial also objects to this request as vague and ambiguous. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents within its possession, custody or control that are responsive to this request and which bear the BAYSTATE Marks.

Request No. 20:

Specimens of all advertising and promotional documents prepared by or on behalf of Defendant or its Predecessors bearing any of the BAYSTATE Marks, including, but not limited to, brochures, catalogs, circulars, leaflets, direct mail pieces, paper and magazine displays or other point-of-sale displays, price lists, trade association listings, annual reports and any other materials such as labels, tags, packages, containers, decals, stamps, and nameplates used by

Defendant or its Predecessors, or their agents, distributors or other sellers of its goods and/or services.

Response to Request No. 20:

Baystate Financial objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to this discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents within its possession, custody or control that are responsive to this request and which bear the BAYSTATE Marks.

Request No. 21:

All documents concerning educational or promotional events, dinners, seminars or other events presented, offered or sponsored by the Defendant or its Predecessors, including, but not limited to documents concerning invitees, attendees, and materials distributed or presented at the event including writings, drawings, graphs, charts, photographs, and other data compilations from which information can be obtained.

Response to Request No. 21:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of documents within its possession, custody or control that are responsive to this request and which bear the BAYSTATE Marks.

Request No. 22:

All documents summarizing and/or evidencing Defendant's or its Predecessor's advertising or promotional expenditures for any goods and/or services bearing or sold under the BAYSTATE Marks.

<u>Response to Request No. 22</u>:

Baystate Financial objects to this request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request and which specifically involve the BAYSTATE Marks.

<u>Request No. 23</u>:

All media articles or stories and press releases referring or relating to Defendant's or its Predecessor's business or the BAYSTATE Marks.

<u>Response to Request No. 23</u>:

Baystate Financial objects to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request to the extent that it seeks to require Baystate Financial to produce documents that are publicly available, as the identification and collection of such documents would impose an undue and unnecessary burden on Baystate Financial. Subject to and without waiver of the foregoing objections, Baystate Financial will produce a representative sample of those documents within its possession, custody or control that are responsive to this request and which specifically involve the BAYSTATE Marks.

<u>Request No. 24</u>:

All documents summarizing and/or evidencing total dollar sales and total unit sales for each good or service incorporating or offered in association with the BAYSTATE Marks by Defendant or its Predecessors on an annual basis from the date of Defendant's or its Predecessors' first use of any of the BAYSTATE Marks until the present.

11

Response to Request No. 25:

Baystate Financial objects to this request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request and which specifically involve the BAYSTATE Marks.

Request No. 26:

All documents concerning any challenge, objection, protest, cease and desist letter, opposition, action, claim, lawsuit or proceeding of any kind Defendant or its Predecessors has ever made to any third party or any third party has made to Defendant or its Predecessors, concerning use of the BAYSTATE Marks.

Response to Request No. 26:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 27:

All documents concerning any inquiry, investigation or survey conducted by or on behalf of Defendant regarding any of the issues involved in this proceeding.

Response to Request No. 27:

Baystate Financial objects to this request to the extent that its seeks documents protected from disclosure by the attorney-client privilege or work product doctrine. Baystate Financial also objects to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody of control that are responsive to this request.

12

Request No. 28:

All documents concerning Defendant's or its Predecessors' knowledge or awareness of Bay State Savings Bank's use or registration of the BAYSTATE Marks.

Response to Request No. 28:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 29:

All documents concerning any transfer, license or assignment to or from the Defendant or its Predecessors of any rights or interests in the BAYSTATE Marks.

Response to Request No. 29:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 30:

All documents concerning the geographic scope of Defendant's or its Predecessors' advertising, distribution, and sales of goods and/or services bearing any of the BAYSTATE Marks and any change of geographic scope since the date of first use.

Response to Request No. 30:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 31:

All documents concerning any plan Defendant has to expand the type of goods or services it provides under the BAYSTATE Marks or the geographic scope of the use of said Marks.

13

Response to Request No. 31:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 32:

A copy of each annual report of Defendant or its Predecessors for the date of first use of the BAYSTATE Marks to the present.

Response to Request No. 32:

Baystate Financial will produce those documents within its possession, custody or control that are responsive to this request.

Request No. 33:

All training materials or manuals provided to or used for training of Defendant's or its Predecessors' sales personnel.

Response to Request No. 33:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities.

Request No. 34:

All documents concerning the development, sale and distribution by the Defendant or its Predecessors of any goods or services with which the BAYSTATE Marks have been used including sale or distribution of goods and services by:

a.  Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;
b.  Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;
c.  Successors in interest Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom

14

Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson
Insurance Agency;

d.    New England Financial Services LLC;
e.    New England Life Insurance Company;
f.    David C. Porter; and
g.    Porter/Desautels LLC.

Response to Request No. 34:

Baystate Financial objects to this request as overly broad, unduly burdensome and not

reasonably calculated to lead to this discovery of admissible evidence.  Subject to and without

waiver of the foregoing objections, Baystate Financial will produce a representative sample of

documents within its possession, custody or control that are responsive to this request and which

bear the BAYSTATE Marks.

Request No. 35:

All documents concerning advertising or promotional expenditures or activities by the
Defendant or its Predecessors of any goods and/or services bearing or sold under the
BAYSTATE Marks including expenditures or activities by or on behalf of:

a.    Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;
b.    Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton
      Insurance Agency;
c.    Successors in interest Wilson, Bergstrom & Denton Partnership d/b/a Wilson,
      Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom
      Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson
      Insurance Agency;
d.    New England Financial Services LLC;
e.    New England Life Insurance Company;
f.    David C. Porter; and
g.    Porter/Desautels LLC.

Response to Request No. 35:

Baystate Financial objects to this request to the extent that it seeks documents that

contain confidential information, the disclosure of which would harm Baystate Financial or

related entities.  Subject to and without waiver of the foregoing objections, Baystate Financial

15

will produce those non-privileged documents within its possession, custody or control that are

responsive to this request and which specifically involve the BAYSTATE Marks.


Request No. 36:

All documents summarizing and/or evidencing total dollar sales and total unit sales for each good or service offered in association with the BAYSTATE Marks by Defendant or its Predecessors on an annual basis from the date of first use of any of the BAYSTATE Marks until the present including sales by:

a.   Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;
b.   Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;
c.   Successors in interest Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson Insurance Agency;
d.   New England Financial Services LLC;
e.   New England Life Insurance Company;
f.   David C. Porter; and
g.   Porter/Desautels LLC.

Response to Request No. 36:

Baystate Financial objects to this request to the extent that it seeks documents that

contain confidential information, the disclosure of which would harm Baystate Financial or

related entities.  Subject to and without waiver of the foregoing objections, Baystate Financial

will produce those non-privileged documents within its possession, custody or control that are

responsive to this request and which specifically involve the BAYSTATE Marks.


Request No. 37:

All documents concerning or containing information concerning Defendant's or its Predecessors' Bank Affiliate Program including but not limited to:

a.   Agreements with participating banks;
b.   Correspondence;
c.   Referral of customers from or to such banks;

d. Advertising and promotion of the Bank affiliate Program or any goods or services offered under said program;

e. Total dollar sales and unit sales under said Program;

f. Total revenues, profits and net profits generated by or for Defendant or its Predecessors' under said Program.

Response to Request No. 37:

Baystate Financial objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request to the extent that it seeks documents that contain confidential information, the disclosure of which would harm Baystate Financial or related entities.

Request No. 38:

All documents concerning or containing information relevant to Defendant's allegation in paragraphs 17 to 22 of Defendant's counterclaim that the BAYSTATE Marks have acquired secondary meaning.

Response to Request No. 38:

Baystate Financial objects to this request to the extent that it misstates or mischaracterizes the allegations in paragraphs 17 to 22 of Baystate Financial's counterclaims. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 39:

All documents concerning or containing information relevant to the issue of whether use of the BAYSTATE Marks is likely to cause confusion, as alleged in paragraphs 32 to 35 of the counterclaim.

17

Response to Request No. 39:

Baystate Financial objects to this request to the extent that it misstates or mischaracterizes the allegations in paragraphs 32 to 35 of Baystate Financial's counterclaims. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 40:

All documents concerning or containing information relevant to the allegations of paragraphs 36 to 60 that the Plaintiff procured registration of marks by fraud.

Response to Request No. 40:

Baystate Financial objects to this request to the extent that it misstates or mischaracterizes the allegations in paragraphs 36 to 60 of Baystate Financial's counterclaims. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

Request No. 41:

All documents concerning the harm or damage that Defendant claims to have suffered based on the allegations of the counterclaim.

Response to Request No. 41:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

18

Request No. 42:

Defendant's or its Predecessors' agreements with New England Finalist Services, LLC and/or New England Life.

Response to Request No. 42:

Baystate Financials objects to this request as irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this request as vague and ambiguous. Subject to and without waiver of the foregoing objections, Baystate Financial will produce those documents within its possession, custody or control that are responsive to this request and which specifically involve the BAYSTATE Marks.

Request No. 43:

All statements or opinions of any expert retained by Defendant or any person acting for or on behalf of Defendant regarding any of the issues involved in this proceeding.

Response to Request No. 43:

Baystate Financial objects to this request to the extent that it seeks documents beyond the permitted scope of discovery under Fed. R. Civ. P. 26 or the Local Rules. Baystate Financial also objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege or work product doctrine. Subject to and without waiver of the foregoing objections, Baystate Financial states that it has not yet identified any expert witness to testify at the trial of this matter.

Request No. 44:

All documents identified and/or referred to in Defendant's Rule 26(a)(1) disclosures; specifically those mentioned pursuant to Rule 26(a)(1)(B), or in answer to any of Plaintiff's interrogatories.

Response to Request No. 44:

Baystate Financial will produce those non-privileged documents within its possession, custody or control that are responsive to this request.

BAYSTATE FINANCIAL SERVICES, LLC,

By its attorneys,

Christopher P. Litterio (BBO #551098)
Brian K. French (BBO #637856)
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, Massachusetts 02114
(617) 742-4200

Dated: May 2, 2005

C:\Documents and Settings\bkf\Desktop\document.request.responses.doc

20

# **EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BAY STATE SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:03-cv-40273-FDS |
| | ) | |
| BAYSTATE FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Baystate Financial

Services, LLC ("Baystate Financial") answers the Interrogatories propounded by plaintiff Bay

State Savings Bank (the "Bank") as follows:

## GENERAL OBJECTIONS

1.    Baystate Financial objects to each interrogatory to the extent that it seeks

information protected from disclosure by the attorney-client privilege or work product doctrine.

2.    Baystate Financial objects to each interrogatory to the extent that it seeks

confidential information, the disclosure of which, in the absence of an adequate protective order,

will harm Baystate Financial or related entities.

3.    Baystate Financial objects to each interrogatory to the extent that it seeks

information beyond the permitted scope of discovery under Fed. R. Civ. P. 26 or the Local

Rules.

SPECIFIC OBJECTIONS AND ANSWERS

Interrogatory No. 1:

Identify and describe each service or product provided, sold, or distributed by the Defendant or its Predecessors under the BAYSTATE Marks, including (a) the manner in which such products are or were marketed; (b) the date Defendant first offered the service or product; (c) the sales (by units, dollars and costs) of such products; and (d) the net profits realized from the sale of such products.

Answer to Interrogatory No. 1:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the extent that it seeks confidential information, the disclosure of which would harm Baystate Financial or related entities. Subject to and without waiver of the foregoing objections, Baystate Financial states that it offers various business-related products and services under the BAYSTATE Marks, including, among other things:

Executive Benefit Planning

- Deferred Compensation
- Group Carve-Out
- Individual Disability Insurance
- Split Dollar Life Insurance
- Selective Executive Retirement Plan

Business Continuation Planning

- Business Income Insurance
- Buy-Sell Arrangements
- Section 303 Stock Redemption
- Key Employee Insurance

Tax-Qualified Plans

- Profit Sharing
- Money Purchase
- Target Benefit
- Defined Benefit Plan
- Simplified Employee Pension ("SEPs")

2

- SIMPLE IRA
- 401(k) Plan

Employee Benefits Products:

- Managed Care Medical Products
- Dental Insurance
- Group Life Insurance
- Short-term and Long-term Disability Insurance
- HMOs

Baystate Financial has offered these products and services under the BAYSTATE Marks at various times beginning as early as January 1983.

Baystate Financial generally does not advertise in the media, but promotes its business under the BAYSTATE Marks within the financial services industry, at trade meetings, and in interactions with its clients and potential clients. The company also includes the BAYSTATE Marks on its website, letterhead, brochures, business cards and other materials.

Interrogatory No. 2:

Identify and describe each office or business location from which Defendant or its Predecessors have conducted business under the BAYSTATE Marks, including:

a.   The date of first use at that location;
b.   The date that use at that location discontinued (if applicable);
c.   The sales (by units, dollars and costs) from each such location; and
d.   The net profits realized from sales at each such location.

Answer to Interrogatory No. 2:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the extent that it seeks confidential information, the disclosure of which would harm Baystate Financial or related entities. Subject to and without

3

waiver of the foregoing objections, Baystate Financial has conducted business under the

BAYSTATE Marks at the following locations:

| | |
|---|---|
| 699 Boylston Street<br>Boston, MA 02116 | 10 Essex Street<br>Andover, MA 01810 |
| 1017 Turnpike Street<br>Canton, MA 02021 | Six Kimball Lane<br>Lynnfield, MA 01940 |
| 5 Mount Royal Avenue<br>Marlborough, MA 01752 | 133 Falmouth Road<br>Mashpee, MA 02649 |
| 43 Virginia Lane<br>Newburyport, MA 01950 | 27 Sutton Avenue<br>Oxford, MA 01540 |
| 1 Batterymarch Park<br>Quincy, MA 02169 | 434 Route 134<br>South Dennis, MA 02660 |
| 3 Roberge Drive<br>Tyngsboro, MA 01879 | 55 William Street<br>Wellesley, MA 02481 |
| 70 Broadway Street<br>Westford, MA 01886 | 195 Washington Street<br>Weymouth, MA 02188 |
| 100 Front Street<br>Worcester, MA 01608 | 99 High Street<br>Boston, MA 02110 |
| 100 North Washington Street<br>Boston, MA 02114 | 401 Wampanoag Trail<br>East Providence, RI 02915 |
| 875 Centerville Road<br>Warwick, RI 02886 | 80 Leighton Road<br>Falmouth, ME 04105 |
| 823 Lafayette Road<br>Seabrook, NH 03874 | |

Baystate Financial and its predecessors-in-interest have used the BAYSTATE Marks

continuously since January 1983.

4

Interrogatory No. 3:

For each of the BAYSTATE Marks, identify the date and circumstances in which the mark was: (a) first used; (b) sold, assigned or transferred; and (c) is licensed for any purpose. In addition, please identify witnesses and documents with information relevant to your response.

Answer to Interrogatory No. 3:

On or about January 1, 1983, Baystate Financial's predecessor-in-interest, the Wilson, Bergstrom & Denton Partnership, adopted and began using the service marks "BAYSTATE," "BAYSTATE FINANCIAL" and "BAYSTATE FINANCIAL SERVICES," and began conducting business under the trade name, "Baystate Financial Services." On or about April 10, 1990, the Wilson, Bergstrom & Denton Partnership registered with the Secretary of the Commonwealth of Massachusetts the service mark "BAYSTATE FINANCIAL SERVICES" (the "First Registration"). The BAYSTATE FINANCIAL SERVICES mark was for the "sale of insurance products and actuarial services and financial planning services." The First Registration included a date of first use of the BAYSTATE FINANCIAL SERVICES mark of January 1, 1983.

The Wilson, Bergstrom and Denton Partnership continuously used the BAYSTATE Marks in commerce and continuously conducted business as Baystate Financial Services until approximately June 29, 1990. On or about that date, the Wilson, Bergstrom & Denton Partnership transferred ownership to is successor, the Wilson & Bergstrom Partnership. Thereafter, the Wilson & Bergstrom Partnership continuously used the BAYSTATE Marks in commerce and continuously conducted business as Baystate Financial Services until approximately March 1, 1992.

On or about March 1, 1992, the Wilson & Bergstrom Partnership was terminated and its interest in the First Registration, the continuing exclusive right to use the BAYSTATE Marks

5

and the goodwill associated with the BAYSTATE Marks and Baystate Financial Services trade name were assigned to Richard D. Wilson, the former managing partner of the Wilson & Bergstrom Partnership, in his capacity as the sole proprietor of the Richard Wilson Insurance Agency (the "Wilson Agency"). The Wilson Agency continuously used the BAYSTATE Marks in commerce and continued to do business as Baystate Financial Services from March 1, 1992 until approximately August 1996.

In August 1996, the Wilson Agency entered into a buyout agreement with New England Life Insurance Company ("New England Life"). As part of that agreement, the Wilson Agency sold its "Assets and Inventory" (as defined in the agreement) to New England Life. The Inventory sold to New England Life included the First Registration, the BAYSTATE Marks, and the goodwill associated with the BAYSTATE Marks and Baystate Financial Services trade name.

Immediately following the buyout, New England Life sold the Inventory it acquired from the Wilson Agency to David C. Porter ("Porter"). Porter continuously used the BAYSTATE Marks in commerce and continued to do business as Baystate Financial Services from August 1996 until approximately January 2, 1997.

On or about January 2, 1997, Porter organized Porter/Desautels LLC ("Porter/Desautels") and transferred to it the First Registration, the BAYSTATE Marks, and the goodwill associated with the BAYSTATE Marks and Baystate Financial Services trade name. The stated purpose of Porter/Desautels was "to provide financial planning services and products." Porter/Desautels continuously used the BAYSTATE Marks in commerce and continued to do business as Baystate Financial Services from January 2, 1997 until approximately May 19, 1997.

6

On or about May 19, 1997, Porter/Desautels formally changed its name to Baystate Financial Services, LLC, the defendant in this action. From that date to the present, Baystate Financial has continuously used the BAYSTATE Marks in commerce and has continued to do business as Baystate Financial Services. Together with its predecessors, Baystate Financial has continuously provided insurance and investment services and products under the BAYSTATE Marks since 1983.

Also on May 19, 1997, Baystate Financial reregistered the "BAYSTATE FINANCIAL SERVICES" mark with the Secretary of the Commonwealth of Massachusetts (the "Second Registration"). The company reregistered the BAYSTATE FINANCIAL SERVICES mark because, until 1997, Baystate Financial's predecessors had operated as General Agencies of New England Life. After Baystate Financial established itself as a separate LLC in 1997, it decided to reregister the BAYSTATE FINANCIAL SERVICES mark in case the change in the form of ownership had any bearing on Baystate Financial's use of the mark.

In completing the application for the Second Registration, Baystate Financial inadvertently listed the date of first use of the BAYSTATE FINANCIAL SERVICES mark as May 1, 1997. In fact, however, Baystate Financial had acquired from New England Life all of Baystate Financial's predecessors' rights, title and interests in the BAYSTATE Marks, the First Registration and the goodwill associated with the BAYSTATE Marks and the Baystate Financial Services trade name when Baystate Financial purchased that Inventory from New England Life in August 1996.

On or about June 29, 1999, Baystate Financial registered the domain name www.baystatefinancial.com.

7

Persons with information relevant to this response may include the following:

David C. Porter
Baystate Financial Services, LLC
699 Boylston Street
One Exeter Plaza, Suite 1400
Boston, MA 02116

Richard M. Denton
Baystate Financial Services, LLC
Six Kimball Lane
Suite 120
Lynnfield, MA 01940

Richard D. Wilson
11 Dalton Avenue
Magnolia, MA 01930

Other persons with relevant information may include current or former Baystate

Financial employees listed in the various Baystate Financial annual reports (which were

previously submitted to the Court), as well as other individuals listed in documents produced to

the Bank by Baystate Financial.

Finally, documents containing information relevant to this response may include the

various documents attached as exhibits to the Affidavits of David C. Porter, Richard D. Wilson

and Richard M. Denton (which were previously submitted to the Court), as well as other

documents produced to the Bank by Baystate Financial.

Interrogatory No. 4:

Has any validity or infringement search or investigation ever been conducted by or on
behalf of the Defendant or its Predecessors concerning the BAYSTATE Marks? If so, please
identify: (a) the date of the search; (b) the results or such search or investigation; and (c) the
person making, authorizing or requesting such search or investigation.

Answer to Interrogatory No. 4:

Baystate Financial objects to this interrogatory to the extent that it seeks information

protected from disclosure by the attorney-client privilege or work product doctrine. Subject to

and without waiver of the foregoing objections, Baystate Financial states that, to the best of its

knowledge, in February 2003, USPTO file histories were obtained regarding Plaintiff's federal

trademark registrations for BAY STATE, BAY STATE SAVINGS BANK, BAY STATE

SAVINGS BANK (& Design), and BAY STATE INVESTMENT SERVICES. Baystate

Financial previously provided copies of these file histories to the Plaintiff.

Interrogatory No. 5:

Please describe the origin, meaning, significance or impression intended to be
communicated by Defendant's use of the BAYSTATE Marks.

Answer to Interrogatory No. 5:

Baystate Financial objects to this interrogatory as vague and ambiguous. Subject to and

without waiver of the foregoing objections, Baystate Financial states that in January 1983, its

predecessor-in-interest, the Desautels & Wilson Partnership began using the name "Baystate

Financial Services" in recognition of the wide variety of financial services the agency had come

to offer. As indicated in the Desautels & Wilson Partnership's 1982 Annual Report, the agency

believed that, with the grouping of its insurance, investment, financial planning, group benefits,

and pension services under one marketing identification, the agency would be better able to serve

its clients and other advisors. The report also stated, "Baystate Financial Services is a name that

accurately describes what we have become. It is a name that we can promote without it having

to change."

Interrogatory No. 6:

Please describe how Defendant first became aware of Bay State Savings Bank's use or
registration of the BAYSTATE Marks.

Answer to Interrogatory No. 6:

Baystate Financial is without knowledge or information sufficient to state when Baystate

Financial or its precedessors-in-interest first heard of Bay State Savings Bank. Answering

9

further, Baystate Financial states that, to the best of its knowledge, it first learned of Plaintiff's

registrations in late-December 2002 or early-January 2003, when Baystate Financial received a

letter from Attorney Gerry A. Blodgett dated December 23, 2002, in which Attorney Blodgett

stated that the Plaintiff had various federal and Massachusetts service mark registrations for the

"Bay State" mark.

Interrogatory No. 7:

Please identify and describe any challenge, objection protest, cease and desist request,
opposition, action, claim, lawsuit or proceeding of any kind Defendant or its Predecessors have
ever made to any third party or any third party has made to Defendant, concerning use of the
BAYSTATE Marks.

Answer to Interrogatory No. 7:

To the best of Baystate Financial's knowledge, this dispute between the Plaintiff and

Baystate Financial is the only dispute in which Baystate Financial has been involved in

connection with the BAYSTATE Marks.

Interrogatory No. 8:

Identify and describe each service or product provided, sold, or distributed by the
Defendant and its Predecessors under the BAYSTATE Marks including sales or distributions by:

a.  Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;
b.  Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton
    Insurance Agency;
c.  Successors-in-interest of Wilson, Bergstrom & Denton Partnership d/b/a Wilson,
    Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom
    Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson
    Insurance Agency;
d.  New England Financial Services LLC;
e.  New England Life Insurance Company;
f.  David C. Porter; and
g.  Porter/Desautels LLC.

Answer to Interrogatory No. 8:

Baystate Financial objects to this interrogatory as overly broad, unduly and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, please see Answer to Interrogatory No. 1 above.

Interrogatory No. 9:

Identify and describe all advertising or promotional activities of Defendant and its Predecessors concerning the BAYSTATE Marks each year from first use of the marks to the present including:

a. A brief description of the activity or category of activity;
b. The amount of time, money or other resources spent supporting such activities; and
c. The persons with knowledge of the activity.

Answer to Interrogatory No. 9:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, please see Answers to Interrogatory Nos. 1 and 3.

Interrogatory No. 10:

Identify and describe all business or marketing plans of Defendant and its Predecessors concerning use or promotion of the BAYSTATE Marks, or goods or services bearing the BAYSTATE Marks.

Answer to Interrogatory No. 10:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the extent that it seeks confidential information, the disclosure of which would harm Baystate Financial or related entities.

11

Interrogatory No. 11:

Identify and describe Defendant's "Bank Affiliate Program" including:

a.     The identity of each participating financial institution;
b.     The advertising and promotional activities supporting the program;
c.     The use of BAYSTATE Marks in connection with such program, or any goods or services pertaining to the program;
d.     The sales, revenues, commissions and profit for activities related to each participating financial institution;
e.     The persons with knowledge of the program;
f.     The documents concerning the program.

Answer to Interrogatory No. 11:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and

not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial

also objects to this interrogatory to the extent that it seeks confidential information, the

disclosure of which would harm Baystate Financial or related entities. Subject to and without

waiver of the foregoing objections, Baystate Financial has contracts with various banks whereby

it provides financial services on behalf of the banks.

Interrogatory No. 12:

Identify and describe separately for each year since first use of the BAYSTATE Marks the precise geographic territory and the manner in which the BAYSTATE Marks have been used by Defendant and its Predecessors within such territory. Please include in the description for each separate year:

a.     The dates the BAYSTATE Mark was used in such territory;
b.     The nature of use of the BAYSTATE Marks in such territory;
c.     The identity of persons with knowledge of the foregoing; and
d.     The identity of documents reflecting use in such territory.

Answer to Interrogatory No. 12:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and

not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiver of the foregoing objections, please see Answers to Interrogatory Nos. 1-3. Further

answering, Baystate Financial states that it has serviced clients throughout Massachusetts for

several years.

Interrogatory No. 13:

Identify and describe any incidents of actual confusion, mistake or deception that you allege arise from use of the BAYSTATE Marks by either party, including Defendant's Predecessors.

Answer to Interrogatory No. 13:

Baystate is not aware of any such confusion, mistake or deception.

Interrogatory No. 14:

Identify in full the names and addresses of the principals, officers, and/or directors of the Defendant and its Predecessors including each of the following entities and the dates such individuals services in such capacity:

a. Desautels & Wilson Partnership d/b/a Desautels & Wilson Insurance Agency;
b. Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency;
c. Successors-in-interest of Wilson, Bergstrom & Denton Partnership d/b/a Wilson, Bergstrom & Denton Insurance Agency, including the Wilson & Bergstrom Partnership d/b/a Wilson & Bergstrom Insurance Agency and the Richard Wilson Insurance Agency;
d. New England Financial Services LLC;
e. New England Life Insurance Company; and
f. Porter/Desautels LLC.

Answer to Interrogatory No. 14:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and

not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiver of the foregoing objections, please see Answers to Interrogatory Nos. 2-3.

13

Interrogatory No. 15:

Identify and describe all efforts made by Defendant to solicit or retain customers of The Patriot Group including a description of all communications to such customers. Please include in the description the identity of persons and documents with information concerning such activities.

Answer to Interrogatory No. 15:

Baystate Financial objects to this interrogatory as not reasonably calculated to lead to the

discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the

extent that it seeks confidential information, the disclosure of which would harm Baystate

Financial or related entities.

Interrogatory No. 16:

Identify all customers of The Patriot Group to whom such communications and solicitations (as identified in the preceding answer) were directed, and the response (if any) from each such customer.

Answer to Interrogatory No. 16:

Baystate Financial objects to this interrogatory as not reasonably calculated to lead to the

discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the

extent that it seeks confidential or private information, the disclosure of which would harm

Baystate Financial or related entities or other persons.

Interrogatory No. 17:

Identify each employee of The Patriot Group who subsequently became employed by Defendants.

Answer to Interrogatory No. 17:

Baystate Financial objects to this interrogatory as not reasonably calculated to lead to the

discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the

14

extent that it seeks confidential or private information, the disclosure of which would harm

Baystate Financial or related entities or other persons.

Interrogatory No. 18:

Please identify all witnesses and documents with information relevant to Defendant's allegation in paragraphs 17 to 22 of Defendant's counterclaim that the BAYSTATE Marks have acquired secondary meaning.

Answer to Interrogatory No. 18:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and

not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiver of the foregoing objections, please see Answer to Interrogatory No. 3.

Interrogatory No. 19:

Please identify all witnesses and documents with information relevant to the issue of whether use of the BAYSTATE Marks is likely to cause confusion, as alleged in paragraphs 32 to 35 of the counterclaim.

Answer to Interrogatory No. 19:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and

not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiver of the foregoing objections, please see Answer to Interrogatory No. 3.

Interrogatory No. 20:

Please identify all witnesses and documents with information relevant to the allegations of paragraphs 30 to 60 that the Plaintiff procured registration of marks by fraud.

Answer to Interrogatory No. 20:

Baystate Financial objects to this interrogatory as overly broad, unduly burdensome and

not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiver of the foregoing objections, please see Answer to Interrogatory No. 3.  Further answering,

Robert J. Lewis and Attorney Gerry A. Blodgett also are likely to have information relevant to

these allegations.

Interrogatory No. 21:

Please identify and describe all harm or damage that Defendant claims to have suffered
based on the allegations of the counterclaim.

Answer to Interrogatory No. 21:

Defendant has not yet quantified any damages.  Defendant sustains harm every

day that Plaintiff continues to use Defendant's mark with respect to financial services.

Interrogatory No. 22:

Please identify all witnesses and documents with information concerning the harm
described in the preceding answer.

Answer to Interrogatory No. 22:

David Porter.  Defendant is not aware of any documents at this time.

Interrogatory No. 23:

Please identify and describe Defendant's or its Predecessors' use of any other mark
besides the BAYSTATE marks at any place or any time.

Answer to Interrogatory No. 23:

Baystate Financial objects to this interrogatory as not reasonably calculated to lead to the

discovery of admissible evidence.  Further answering, Baystate Financial is not aware of any

such use.

Interrogatory No. 24:

Please identify and describe Defendant's acquisition of assets, distribution or franchise rights, customer lists, real estate interests or other assets of any kind formerly held by or owned by The Patriot Group.

Answer to Interrogatory No. 24:

Baystate Financial objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence. Baystate Financial also objects to this interrogatory to the extent that it seeks confidential or private information, the disclosure of which would harm Baystate Financial or related entities or other persons. Further answering, Baystate Financial states that it did not acquire any assets of any kind formerly owned by The Patriot Group.

Interrogatory No. 25:

Identify in full each expert witness whom you expect to be called for testimony on your behalf at trial, and please state, specifying separately as to each expert:

a.    The subject matter on which the expert is expected to testify;
b.    The substance of facts and opinions to which each such expert is expected to testify; and
c.    A summary of the grounds for each opinion of each such expert.

Answer to Interrogatory No. 25:

Baystate Financial has not yet identified any expert witnesses to testify at the trial of this matter.

17

Signed and sworn to under the pains and penalties of perjury this ___31st___ day of May, 2005.

BAYSTATE FINANCIAL SERVICES, LLC,

By: David C. Porter
Its: Managing Partner

Objections by:

Christopher P. Litterio (BBO #551098)
Brian K. French (BBO #637856)
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, Massachusetts 02114
(617) 742-4200

Counsel for Baystate Financial Services, LLC

U:\BKF\Baystate Financial\Pleadings\interrog.answers.doc

---

**CERTIFICATE OF SERVICE**

I, Christopher P. Litterio, hereby certify that on this 31st day of May, 2005, I did serve a true copy of the within document on counsel of record for plaintiff, via facsimile and first class mail

---

U:\PM\CPL\Baystate\Pleadings\interrog.answers.doc

# **EXHIBIT E**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BAY STATE SAVINGS BANK,
　　Plaintiff

　　V.

BAYSTATE FINANCIAL SERVICES, LLC,
　　Defendant

CIVIL ACTION NO. 4:03-CV-40273-NMG

## AFFIDAVIT OF ROBERT J. LEWIS

Robert J. Lewis on oath deposes and says:

1.　　I am the president and CEO of Bay State Savings Bank ("Bay State"). This affidavit is submitted in support of Bay State's Motion for a Preliminary Injunction against Baystate Financial Services, LLC ("Baystate Financial").

2.　　*Plaintiff has used the name Bay State Savings Bank® continuously since 1895 and is popularly known as Bay State®.* Bay State® was formed by special legislation entitled "An Act To Incorporate The Bay State Savings Bank" which is published as Ch. 107 of the Acts of 1895. Ex. 1.[1] It is a mutual corporation, meaning that ownership belongs to its depositors. This form of ownership emphasizes accountability to the community, rather than to remote stockholders whose interest is focused on investment returns and profitability.

3.　　*Bay State® promotes consumer awareness by signage and trade dress at its headquarters and branch offices.* The headquarters is an attractive century-old building facing the Worcester City Common. Bay State® maintains six full service branch offices: four in

---

[1]　　All exhibits are contained in a consolidated Appendix of Exhibits and referred to by number as "Ex. ___ ."

Worcester and one each in Auburn and Holden. It also maintains a loan center in Worcester and

a branch at Auburn High School during the school year. The branches all have consistent

architecture, color schemes, appearance and trade dress. All are attractively landscaped, and

provide parking. The Bay State® mark is prominently displayed at each location. Ex. 2.

4.     *Bay State®'s primary geographic market consists of Worcester and the*

*surrounding communities, but its customers live in approximately 431 different postal zip codes*

*in Massachusetts, and in 29 other states.* It offers 24-hour telebanking and Internet banking

services to improve access for customers who are not located near Worcester.

5.     *Bay State® provides a broad range of financial products and services.* At first,

this consisted of savings accounts and home mortgages. St. 1907, C. 561 authorized savings

banks to offer Savings Bank Life Insurance ("SBLI"). Bay State® has offered SBLI longer than

any of the current employees can remember. Available records show sales of SBLI dating to at

least 1962. Ex. 3. In addition to SBLI, the range of services has included savings bonds since at

least 1961; mortgage and disability insurance beginning in 1971; IRA, SEP and Keogh retirement

and educational accounts beginning in 1976; Investment Unit Accounts beginning in 1981; SBLI

Life Saver Annuities beginning in 1988; and sales of stocks, bonds and mutual funds beginning

in 1994.[2] The services that Bay State® has offered continuously since 1994 are as follows:

a.     Thrift services with approximately 17 different kinds of savings and

checking accounts, including IRA's, Roth and SEP retirement plans,

Education IRA's and three kinds of Tax-Deferred Annuities, etc.;

---

[1]   All exhibits are contained in a consolidated Appendix of Exhibits and referred to by number as "Ex. ____."
[2]   Bay State's 1994 Annual Report states, in the Treasurer's Report section under the heading Alternative Investment Program: "In late 1994, the Bank contracted with FIS Company (FISCO), an independent broker/dealer to sell mutual funds and annuities in our branches. This program will provide customers with a wider array of financial products to choose from while providing fee income to the Bank."

b.     Consumer loan services with approximately 20 different loan programs including a broad variety of mortgages, construction loans, Title V septic loans, Affordable Housing Plan Mortgages, Equity and No-Equity lines of credit, auto loans, student loans, personal loans, Minuteman Plus Cash Reserve lines of credit, etc.;

c.     Commercial loan services including a broad variety of commercial checking accounts, Entrepreneur and Non-Profit accounts, commercial and industrial loans, commercial real estate loans, SBA loans, letters of credit, equipment loans, etc.;

d.     Insurance including SBLI, SBLI Annuities and mortgage life and disability insurance;

e.     Consumer services including Visa Check Cards, Travelers Cheques, U.S. Savings Bonds, Money Orders, Bank By Mail Service, Direct Deposit of payroll, Social Security checks, and other pension checks, Safe Deposit Boxes, etc.; and

f.     Investment services including purchases and sales of stocks, bonds and mutual funds, including services that Bay State® sponsored using the Minuteman Investment Services® mark from Jan. 2001 to Feb. 2002.

All such services were fully disclosed in Annual Reports, reviewed by state regulatory authorities and authorized by law.  Ex. 4-A to 4-M.

6.     *From January 1999 to February 2002, Bay State marketed its investment services using the Minuteman Investment Services® mark, but the relationship between Bay State® and*

*Minuteman was similar to that between Ford and Taurus.* Minuteman Investment Services®

was exclusively sponsored by Bay State®; sold by personnel located in Bay State® offices; and

target marketed primarily to Bay State® customers and the public at large. The ad that originally

introduced Minuteman Investment Services® states:

> Now The People Who Take
> Banking Personally
> Take Investing Personally, Too

> No two investors are alike. That's why *Bay State Savings Bank
> introduces Minuteman Investment Services.* You will receive
> personal, one-on-one investment advice from investment executive
> Daniel Chase. He will meet with you on a regular basis to analyze
> your current financial situation and develop a written investment
> plan for the future. . . .
>
> \*\*\*
>
> Minuteman Investment Services Securities offered through Infinex
> Investment, Inc. *located at Bay State Savings Bank, 28 Franklin
> St., Worcester.* Ex. 5-A. (emphasis added).

Another ad featuring the Bay State mark states "Minuteman Investment Services, *a division of

Bay State Savings Bank*, will be holding an Investment Check-Up Workshop." Ex. 5-B. In many

such ads, the Bay State® mark is more prominent than Minuteman Investment Services®. In

February 2002, the bank informed Minuteman Investment Services® customers that the name

would change to Bay State Investment Services®. On May 1, 2002, the name change was

announced in ads in The Boston Globe and the Providence Journal. Ex. 5-C. (emphasis added).

    7.    *Bay State® has advertised and promoted itself in newspapers and trade journals

for 109 years.* Advertising expenditures have grown from $7,059 in 1960 (the first year in which

they are segregated) to as much as $415,000. Since at least 1995, this has included statewide

advertising in The Banker & Tradesman. The total from 1960 to 1997, when Baystate Financial

incorporated, is approximately $2.7 million. Total to date including the 2004 budget exceeds $5.2 million. Current advertising and promotional activities include the following:

  a. Extensive print advertising in publications of local, regional and statewide circulation including the Worcester Telegram & Gazette, the Worcester Business Journal, The Boston Globe, Worcester Magazine, the Banker & Tradesman, The Landmark, the Catholic Free Press, the Auburn News, the Senior Advocate, the Jewish Chronicle, the Catalog of Homes, Home Source, etc. Examples of advertising and promotional publications dating from the 1920's are included in Ex. 6-A.

  b. Product literature prominently displaying the Bay State® mark which is distributed at all branches, and in connection with promotional events, etc. Ex. 6-B.

  c. Display ads in the yellow pages promoting Bay State® services and branch locations. Ex. 6-C.

  d. Radio advertising at all of the high power radio stations including WTAG, WXLO, WSRS and WSFX, whose listener areas include Boston, Brookline, Dedham, Norwood and Westwood, in addition to Central Massachusetts. Ex. 6-D.

  e. Direct mail advertising to customers and potential customers which prominently displays the Bay State® mark. Ex. 6-E.

  f. Sponsorship of a book entitled "WORCESTER: A Portrait Of Central Massachusetts" (1998) which includes a one-page history of Bay State®.

The article quotes then-president Patricia Naumnik as saying that Bay

State®: "remains firmly committed to offering a full package of financial

services that responds to the changing needs of our customers and is

delivered, using superior technology, by a professional staff. Our people -

our customers - are our future." Ex. 6-F.

8.      *In addition to paid advertising, Bay State has invested in community relations by*

*providing financial support for community organizations through a regular program of*

*charitable giving.*  The giving program is usually described in the Annual Reports, and reported

in the news media.  In 1997, when Baystate Financial was incorporated, Bay State donated a total

of $38,400 to 91 organizations.  Ex. 4-H at p. 31.  The amount reflected in the Annual Statement

for 2002 is $127,000.  Ex. 4-M at pp. 4-5.  The amount reflected in Annual Report for 2003,

which has just been released and has not been included in the Appendix of Exhibits, is $135,578.

9.      *Bay State® has been featured in many unsolicited news articles reporting matters*

*of public interest,* including the appointment of community leaders to serve in various leadership

positions, and the bank's support of community activities.  For example, it has received

"outstanding" community reinvestment ratings from the FDIC and the Office of the

Commissioner of Banks for making loans that serve the local community.  Ex. 7-A.  It has

received the Silver Hammer award for its effort and financial commitment to revitalize and

restore a downtown building in the City of Worcester, namely, the Bay State Savings Bank

Building.  Ex. 7-B.  These are just two examples.  A selection of newspaper articles dating back

as far as the 1920's, which chronicle Bay State®'s contributions to the community, are included

in Ex. 7-C.

10.    *Bay State® has increased in size, prominence, sales and customers.* Assets have grown from $20,241 in 1895 to well over $245 million. As of 1997, when Baystate Financial incorporated, loans and deposits were $90.5 million and $115.6 million, respectively. Ex. 4-H.

11.    *The public commonly refers to the bank as "Bay State."* This is evidenced by correspondence from third parties, including real estate brokers who are a leading source of referrals for mortgage loans, customers and, even U.S. Senator John Kerry. Some specific examples include the following:

a.    "Call Reports Of State-Chartered Savings Banks" which refer to the bank as "Bay State." Ex. 8-A.

b.    A letter from U.S. Senator John Kerry congratulating Robert J. Lewis on becoming president of Bay State® addressed to "Bay State Bank." Ex. 8-B.

c.    The fact that Bay State® employees are commonly introduced to community and business groups as representatives of "Bay State." Ex. 8-C.

d.    A letter from Marcia Kringle of RE/MAX, a referral source in the real estate industry, thanking "Bay State Bank" for its sponsorship of the Greater Worcester Board of Realtors. Ex. 8-D.

e.    A letter from a customer addressed to "Bay State Bank" expressing thanks for the warm and sensitive assistance provided by a bank employee handling a transaction for two elderly customers. Ex. 8-E.

12.    *Consumer surveys in August of 1999 and 2001 show that the Bay State® mark is widely recognized and highly regarded.* The 1999 survey showed that 70% of the general population in Bay State®'s primary market recognize the Bay State mark, and 50% claimed to have seen or heard Bay State® ads. By 2001, the recognition factor had increased to 76%. Bay State's overall reputation ranked very high in both surveys, far surpassing the reputation of Fleet and Bank Boston. Its customer satisfaction in 2001 was the highest of any bank. The 1999 survey showed that Bay State customers had an above average appetite for stocks and mutual funds, that the proportions of their investments that are held at Bay State is higher than that of customers at other banks, and that they are more likely than customers of other banks to recommend the services of Bay State® to friends and family. Myers Aff., ¶¶7,10. Ex. 9 and 10.

13.    *The 1999 survey shows that Bay State® customers had a stronger appetite for stocks and bonds than the general population; kept half their total household investment dollars at Bay State®; and believed that the products and services were getting much better.* Over 80% said they would recommend Bay State® to others, a higher proportion than customers at other banks. Myers Aff., ¶6. Ex. 9.

14.    *The 2001 survey ratings for "products and services satisfaction" show that consumers view Bay State® as providing a wide range of financial services including stocks, bonds and mutual funds.* Some of the survey questions ask whether the bank: (1) "offers a wide variety of products and services to choose from"; (2) "informs you regularly about the specific products and services that are right for you"; (3) "offers one-stop shopping for all your financial services needs by providing non-traditional banking services, such as life insurance, mutual funds, stocks or bonds"; and (4) "offers professional financial planning and counseling." Bay

State® scored nearly 10 points higher than the combined average rating for all its competitors. Myers Aff., ¶9. Ex. 10.

15.    *Bay State® asserted common law trademark rights in 1999 in the case of Bay State Savings Bank v. Bay State Bancorp., 99cv12383-NMG, to successfully prevent another organization from using the names "Bay State" and "Bay State Bank."* The case arose when Bay State Federal Savings Bank of Brookline, MA became a publicly owned company named Bay State Bancorp and attempted to adopt the name "Bay State Bank." Bay State® brought suit to prevent it. As a result of negotiations in connection with a hearing on a Motion For Preliminary Injunction, Bay State Bancorp agreed that it would not use the name Bay State Bank; that it would return to its original name of Bay State Federal; that it would confine its use of that name to existing branches mostly located in Norfolk County; that it would not expand its geographic use of the Bay State Federal name; that it would adopt appropriate measures to prevent confusion; and that it would consent to Bay State®'s registration of the name.  Bay State Bancorp subsequently merged into Compass Bank, and no longer uses the Bay State® name in any capacity.

16.    *Bay State® obtained state and federal service mark registrations in 1999 and 2001, respectively.* Ex. 11-A to 11-M. All of the registrations are in International Class ("IC") 36, which includes insurance, financial affairs, monetary affairs, and real estate affairs.

17.    *Bay State® used highly reputable trademark counsel to prosecute the trademark registrations on its behalf.* Gerry A. Blodgett, Esq. of Worcester represented the bank in the trademark applications. Mr. Blodgett specializes in Intellectual Property including trademarks and is licensed to practice before the PTO.   There was no misrepresentation or fraud. See

Blodgett Aff. The registrations resulting from the bank's and Mr. Blodgett's efforts include the following:

| Mark | First Use | Federal Registration | State Registration | Services described |
|------|-----------|---------------------|-------------------|-------------------|
| Bay State | 5/16/1895 | 5/15/01 | 10/14/99 | IC 036. US 100 101 102. G & S: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning And Financial Guarantee And Surety. |
| Bay State Savings Bank | 5/16/1895 | 5/22 01 | 7/20/99 | IC 036. US 100 101 102. G & S: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning, And Financial Guarantee And Surety. |
| Bay State Online | 7/5/01 | 10/1/02 | 11/14/01 | IC 036. US 100 101 102. G & S: Banking services provided by means of a global computer network. |
| Bay State Investment Services | 2/5/02 | 7/30/02 | 6/3/02 | Investment Services, namely, mutual fund brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds, life insurance and long term care insurance and insurance agencies and underwriting in the field of life insurance and long term care insurance, in Class 36 (U.S. Cls. 100, 101 and 102) |
| Bay State Bank | 5/30/03 | pending | 6/19/03 | IC 036. US 100 101 102. G & S: Banking services and on-line banking services; and financial services, namely, financial investment in the field of real estate, stocks, bonds, commercial paper, and other securities, financial management and planning and financial guarantee and surety |
| Bay State Savings Bank & Minuteman Head Design | 11/25/99 | 7/16/02 | 1/7/00 | IC 036. Us 100 101 102. G & S: Banking Services And Financial Services, Said Financial Services Being Namely; Financial Investment Advice And Brokerage In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities; Risk Management Insurance And Annuity Brokerage; Brokerage Of Insurance Primarily Designed As An Investment And Investment Annuity Brokerage; Financial Management And Planning; And Financial Guarantee And Surety |
| Minuteman Investment Services | 1/10/01 | 7/16/02 | | Brokerage and investment, annuity underwriting and brokerage in the field of stocks and bonds. |

18.    *Baystate Financial incorporated on May 1, 1997.* It is an agent for New England Life Insurance Company and its affiliate, New England Financial Services. Annual Reports describe its business as providing "financial planning services and products." Ex. 12.

19.    *On May 27, 1997, Baystate Financial filed a Massachusetts state service mark registration stating under oath that it first used the Bay State® mark for financial services on May 1, 1997.*  It has not sought federal registration.  The state registration is in IC 36, the same as Bay State®'s registrations.  Ex. 13.

20.    *Baystate Financial uses the mark to promote products and services that are generally quite similar to those of Bay State®.*  A comparison of services based on Baystate Financial's web site (Ex. 14) and Bay State®'s annual reports (Ex. 4) is as follows:

| **GENERAL SERVICES** | |
|---|---|
| **Baystate Financial** | **Bay State Savings Bank** |
| "Gathering data to help you determine your goals." | "take the time to understand your financial goals and dreams." |
| "Recommending specifically tailored solutions." | "Working with you, we will help develop a prudent, written plan to achieve your goals." |
| "Analyzing your current financial situation." | "help you understand all the financial options available to you, and how to integrate various elements into a results-driven plan." |

| **BUSINESS SERVICES** | |
|---|---|
| **Baystate Financial** | **Bay State Savings Bank** |
| *Executive Benefit Planning:*<br><br>• Deferred Compensation<br>• Group Carve-Out<br>• Individual Disability Insurance<br>• Split Dollar Life Insurance<br>• Selective Executive Retirement Plan | • Long Term Care<br>• Disability<br>• All Types of Life Insurance |
| *Business Continuation Planning:*<br><br>• Business Income Insurance<br>• Buy-Sell Arrangements<br>• Section 303 Stock Redemption<br>• Key Employee Insurance | • Life Insurance |
| *Tax-Qualified Retirement Plans:*<br><br>• Profit Sharing | |

| | |
|---|---|
| • Money Purchase<br>• Target Benefit<br>• Defined Benefit Plan<br>• Simplified Employee Pension (SEPs)<br>• SIMPLE IRA<br>• 401(k) Plan | • Simplified Employee Pension (SEPs)<br>• SIMPLE IRA<br>• 401(k) Plan |
| • *Employee Benefits Products:*<br><br>• Managed Care Medical Benefits<br>• Dental Insurance<br>• Group Life Insurance<br>• Short-term and Long-term<br>• Disability Insurance<br>• HMO's | • Disability Insurance |

| **INDIVIDUAL SERVICES** | |
|---|---|
| **Baystate Financial** | **Bay State Savings Bank** |
| • *Family Protection:*<br><br>• Permanent Life Insurance<br>• Term Insurance<br>• Variable Life Insurance<br>• Disability Income Insurance<br>• Long Term Care Insurance<br>• Estate Planning<br>• Charitable Giving | • Permanent Life Insurance<br>• Term Insurance<br>• Variable Life Insurance<br>• Disability Income Insurance<br>• Long Term Care Insurance<br>• Estate Planning<br>• Charitable Giving |
| • *Wealth Accumulation Strategies:*<br><br>• Mutual Funds<br>• Variable Annuities<br>• Managed Accounts (New England Securities Investment Manager Program)<br>• Regular IRA/Roth IRA<br>• Education Funding<br>• Retirement Planning | • Mutual Funds<br>• Variable Annuities<br>• Managed Accounts<br><br>• Regular IRA/Roth IRA<br>• College Planning<br>• Retirement Planning |

21.    *Baystate Financial uses the mark in similar channels of trade.* Through its "Bank

Affiliate Program," Baystate Financial sells its services through banks that are similar to Bay

State®, sometimes using the Bay State name to promote those services. Baystate Financial states

there are nine such Affiliates. They include Dean Bank of Franklin, MA; Marlborough Savings

Bank of Marlborough, MA; The Lowell Five Cent Savings Bank; United Cooperative Bank of West Springfield; and Scituate Federal Savings Bank. Ex. 15.

22.    *Baystate Financial incorrectly alleges that predecessors in interest have used the mark since 1983 and obtained a state registration in 1990.* Baystate Financial's state registration states under oath that the mark was first used on May 1, 1997. Instruction on the application clearly states that the applicant should report the first use by any predecessor affiliate. See Ex. 13. Upon information and belief based on inquiries to the Secretary of State, a 1990 state registration by an apparently unrelated party expired because the owner did not renew it. Ex. 16.

23.    *On December 23, 2002, Bay State® notified Baystate Financial, in writing, to discontinue use of the Bay State® mark.* Baystate Financial did not comply. Ex. 17.

24.    *On November 23, 2003, Baystate Financial announced a major expansion including a 38-employee financial planning business located across the Worcester City Common from Bay State®'s headquarters.* In newspaper coverage, Baystate Financial asserted that the recent acquisition made it the largest financial planning operation in New England with 168 employees and annual sales of $176 million, and that the expansion will continue. Ex. 18.

25.    *Baystate Financial does not conduct paid advertising, but does promote itself by other means that threaten dilution and confusion.* Until recently, its activities were confined to Boston. Some newspapers refer to it as "Bay State," suggesting that it is still a very weak mark when applied to Baystate Financial. Ex. 19.

26.    At least in its Worcester office, the principal signage is under the name of New England Financial, for which it is an agent. The Baystate Financial mark is barely displayed. Ex. 20.

27.    The Boston Business Journal ("BBJ") recently observed that:

> Baystate Financial has been growing, *albeit under the radar*.
> However [Baystate Financial CEO David] Porter recently told the
> Boston Business Journal that "the next couple years will present
> solid growth opportunities - *and more recognition* - for Baystate
> Financial, as it looks to expand to Western Massachusetts and
> south toward Hartford." Ex. 21. (Emphasis added).

28.     *Baystate Financial admits that the parties' present and proposed use of the Bay*

*State® mark will cause dilution and confusion.*  Baystate Financial's counterclaim alleges that:

> The BAYSTATE Marks and Bank Marks are similar if not
> virtually identical. The dominant or core element of the respective
> marks is Baystate and Bay State. The only appreciable difference
> between the marks is a single space, an almost insignificant
> distinction. The parties' core marks sound the same and look the
> same, and therefore convey the same commercial impression to
> consumers. It is unlikely that consumers will be able to distinguish
> between the BAYSTATE Marks associated with Baystate
> Financial's long-standing and highly regarded financial services
> business and the Bank Marks representing the Bank's neophyte
> financial services offerings.

See Defendant's Counterclaim, ¶32.

29.     *Baystate Financial's allegations of fraud in the trademark application process*

*are incorrect.*  The true facts (indexed against the false Counterclaim allegations to which they

relate) are as follows:

> a.     *The specimens included in the trademark applications were used in*
>
> *commerce in connection with the services described in the amended*
>
> *applications; and Bay State® was fully authorized to offer all such*
>
> *services.*  Compare Counterclaim ¶¶ 38, 42, 47, 48. The authenticity and
>
> use of the specimens is confirmed in declarations supporting the
>
> applications. In the case of the Bay State Investment Service®
>
> application, the specimen is a promotional letter that Bay State® sent by
>
> mail to selected customers. Ex. 22. An advertisement for Bay State

Investment Services® was run in the newspapers at about the same time, including ads in The Boston Globe and Providence Journal on May 1, 2002. Ex. 23. The services promoted in the letter are investment services that involve interstate commerce, namely, selling stocks, bonds and mutual funds that are publicly traded in the securities markets. According to Bay State®'s trademark counsel, the specimens fulfill the requirement of showing how the mark is used in commerce. See Affidavit of Gerry A. Blodgett, Esq. ("Blodgett Aff.") at ¶¶12, 14, 16.

b.    *The applications correctly state that Bay State® has used the mark for banking and financial services since 1895.* To be sure, the range of services has expanded. Bay State® used the mark for all of the services identified in paragraph 5, above, from the date the services were introduced. The introduction of new investment services including stocks and mutual funds was announced in the 1994 Annual Report and passed review by state regulators. Compare Counterclaim ¶¶ 38, 42, 54. Counsel has advised that the recitations of services in the applications comply with application requirements. See Blodgett Aff., ¶15. Contrary to Baystate Financial's Counterclaim, federal law did not prohibit Bay State® from selling stocks, bonds and mutual funds prior to 1999. See General Counsel's Opinion No. 6, 48 Fed. Reg. 22989 (May 23, 1983).

c.    *Baystate Financial was not the senior user of the Bay State® mark.* Bay State® has used the mark continuously since 1895. The range of services and the dates they were introduced are detailed above in paragraph 5. The

1999 and 2001 surveys show that Bay State® has an excellent reputation, and that both customers and the general public regard the bank as offering a wide range of financial services. Compare Counterclaim ¶¶ 40(i), 45(i), 50(i) and 54(i). See Blodgett Aff., ¶¶4-10.

d. *Bay State® had in fact been using the mark in commerce for the services described in the applications for more than five (5) years.* Compare Counterclaim ¶¶ 40(ii), 45(ii), 50(ii) and 54(ii). Counsel has advised that the descriptions were correct. See Blodgett Aff., ¶¶12-14.

e. *The Bay State® mark had become distinctive of the banking and financial services described in the applications.* This is shown by the long history of use described above, and by the 1999 and 2001 consumer surveys. Bay State® sponsored, and surveys show a public perception that it sponsored, financial services including stocks, bonds, etc., even when the services were offered under the Minuteman® mark. Compare Counterclaim ¶¶ 40(iii), 45(iii), 50(iii) and 54(iii). See Blodgett Aff., ¶17.

f. *Bay State® was not prohibited by law from offering investment services in the period from 1933 to 1999.* It could and did offer new and additional investment services including stocks and mutual funds beginning in 1994. Contrary to what Baystate Financial apparently believes, the Glass-Steagall Act of 1933 and the Bank Holding Company Act of 1956 did not prohibit state chartered banks such as Bay State® from selling such investments. See General Counsel's Opinion No. 6, 48 Fed. Reg. 22989

(May 23, 1983).  Compare Counterclaim ¶¶ 40(iv), 45(iv), 50(iv) and

54(iv); Blodgett Aff., ¶15.

g.    *The Bay State Investment Services® application was based on "intent to*

*use" the name.*  Bay State® used the Bay State Investment Services®

mark in commerce on the dates stated to the PTO.  The distinctiveness of

the Bay State® mark as to investment services is shown by surveys

conducted in 1999 and 2001.  Blodgett Aff., ¶¶16,17.

## VERIFICATION

I, Robert J. Lewis, became the President of Bay State Savings Bank® in April 1999 and

have personal knowledge of events from that time forward.  Facts prior to that date are based on

diligent investigations by Bay State® staff or attorneys.  They are true to the best of my

knowledge, information and belief, based on diligent inquiry.

Signed under pains and penalties of perjury this 24th day of March 2004.


Robert J. Lewis

# **EXHIBIT F**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BAY STATE SAVINGS BANK,
    Plaintiff

    V.

BAYSTATE FINANCIAL SERVICES, LLC,
    Defendant

CIVIL ACTION NO. 4:03-CV-40273-NMG

## AFFIDAVIT OF GERRY A. BLODGETT, ESQ.

Gerry A. Blodgett on oath deposes and says:

1.      I am a principal in the firm of Blodgett & Blodgett P.C. of Worcester, MA.  I was

admitted to the Massachusetts Bar in 1977.  I was admitted to practice before the U.S. Patent and

Trademark Office ("PTO") in 1971.  A majority of my law practice is concentrated on

prosecuting patent and trademark applications in the PTO.  I have taken formal trademark courses

at both the J.D. and L.L.M. level.  I have participated for two years as a federal appeals court law

clerk in trademark appeals from the U.S. Patent and Trademark Office, involving both substantive

and procedural issues.  Over 35 years of professional practice, I have prepared and prosecuted

approximately 500 federal and Massachusetts trademark and service mark registration

applications.  I have participated in numerous administrative proceedings and appeals and

litigation involving trademarks and service marks.  A curriculum vitae summarizing my

background is attached at the end of this affidavit.

2.      *Bay State Savings Bank® ("Bay State®") engaged my services in 1999 to*

*prosecute  a series of state and federal trademark registrations.*  I provided advice on trademark

issues, prepared applications and other supporting documents, and represented the bank in

proceedings with the Massachusetts Secretary of State and the PTO. Copies of the state

application and the "file wrappers" for federal registration are included in Exhibits 11-A to 11-M.[1]

The earlier applications stated that the marks were used for banking and financial services, but this

was expanded at the suggestion of the PTO. The applications and resulting registrations are

illustrated in the following chart:

| Mark | First Use | Federal Registration | State Registration | Services described |
|------|-----------|---------------------|-------------------|--------------------|
| Bay State | 5/16/1895 | 5/15/01 | 10/14/99 | IC 036. US 100 101 102. G & S: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning And Financial Guarantee And Surety. |
| Bay State Savings Bank | 5/16/1895 | 5/22/01 | 7/20/99 | IC 036. US 100 101 102. G & S: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning, And Financial Guarantee And Surety. |
| Bay State Online | 7/5/01 | 10/1/02 | 11/14/01 | IC 036. US 100 101 102. G & S: Banking services provided by means of a global computer network. |
| Bay State Investment Services | 2/5/02 | 7/30/02 | 6/3/02 | Investment Services, namely, mutual fund brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds, life insurance and long term care insurance and insurance agencies and underwriting in the field of life insurance and long term care insurance, in Class 36 (U.S. Cls. 100, 101 and 102) |
| Bay State Bank | 5/30/03 | pending | 6/19/03 | IC 036. US 100 101 102. G & S: Banking services and on-line banking services; and financial services, namely, financial investment in the field of real estate, stocks, bonds, commercial paper, and other securities, financial management and planning and financial guarantee and surety |
| Bay State Savings Bank & Minuteman Head Design | 11/25/99 | 7/16/02 | 1/7/00 | IC 036. US 100 101 102. G & S Banking Services And Financial Services, Namely, Financial Investment Advice and Brokerage In The Filed of Real Estate, Stocks, Bonds, Commercial Paper, and Other Securities; Risk Management Insurance and Annuity Brokerage; Brokerage of Insurance Primarily Designed As an Investment and Investment Annuity Brokerage; Financial Management and Planning; And Financial Guarantee and Surety |
| Minuteman Investment Services | 1/10/01 | 7/16/02 | | Brokerage and investment, annuity underwriting and brokerage in the field of stocks and bonds. |

---

[1]    All exhibit references are to the Appendix of Exhibits.

3.      *Baystate Financial has brought a counterclaim inappropriately alleging that four of the registrations were procured by fraud.* The factual allegations of the counterclaim are incorrect. Moreover, they reflect incorrect interpretations of trademark law. This affidavit is intended to provide correct and accurate information. It also provides my professional opinions that: (a) Bay State® is the common law owner of the Bay State® marks; (b) Baystate Financial is a subsequent user and not the owner of the Bay State® marks; (c) the Bay State® registrations are valid and were not procured by fraud; and (d) Baystate Financial's state registration of the name Baystate Financial Services is invalid and subject to cancellation.

BAY STATE® IS THE COMMON LAW OWNER
OF THE BAY STATE MARKS

4.      *In trademark law, the "owner" of a mark is the first party that appropriated the mark to its own use and used it sufficiently to generate secondary meaning.* See Memorandum in Support of Bay State Savings Bank's Motion for Preliminary Injunction ("Plaintiff's Memorandum") at pp. 15-16 and n. 21.

5.      *Bay State® has used the mark since 1985 in a manner that has generated secondary meaning.* The public recognition and good will associated with Bay State® are reflected by the growth, prominence and present size of Bay State®. Consumer surveys in August of 1999 and August of 2001 provide direct evidence that a substantial portion of the public associates the Bay State® mark exclusively with Bay State®, and perceive Bay State® as offering a broad range of financial services. See Affidavits of Robert J. Lewis ("Lewis Aff.") and Kelly Myers ("Myers Aff.").

6.      *In my opinion, Bay State® acquired common law ownership of the Bay State® mark in connection with financial services long before Baystate Financial was incorporated in 1997, and before its alleged predecessors supposedly began to use the mark in 1983.*

## BAYSTATE FINANCIAL IS A SUBSEQUENT USER AND
## NOT THE OWNER OF THE BAY STATE® MARKS

7.      *Baystate Financial's application to register the "Baystate Financial Services"*
*mark in Massachusetts states that the mark was used for the first time on May 1, 1997.* The
application was signed under oath before a notary public on May 27, 1997. It includes a sworn
statement that all of the statements in the application are true. The Massachusetts Service Mark
form specifically states that the claimed date of first use should include use by any predecessors in
interest. Based on this information, the first use of the mark by Baystate Financial Services
occurred on May 1, 1997, approximately 102 years later than the first use by Bay State Savings
Bank®.

8.      *Baystate Financial incorrectly alleges that, contrary to the 1997 application, a*
*predecessor in interest began to use the Bay State service mark on January 1, 1983.* It further
alleges that a predecessor registered "Baystate Financial Services" with the Secretary of State of
Massachusetts on April 10, 1990. See Counterclaim ¶¶ 6-7. There are at least two flaws in this
position. First, it is contradicted by the 1997 service mark application, as discussed above in
paragraph 7. Second, even if true, the 1990 registration was allowed to expire. If Baystate
Financial had, in fact, owned the 1990 registration the proper and customary practice would be to
renew that registration rather than filing a new one.

9.      *Baystate Financial asserts that its use of the Bay State® service mark is senior as*
*to investment services.* However, Bay State® has offered investment products for decades,
including stocks and mutual funds since 1994. Furthermore, even if Baystate Financial had been
the first to use the name for stocks and mutual funds, this argument begs the question of whether
the other investment services offered by Baystate Financial or its predecessors are sufficiently
similar to the Bay State® services to cause dilution or confusion. The test is whether consumers

perceive the Baystate Financial use of the mark as "so foreign to [Bay State's] as to insure against identification of the two." See Plaintiff's Memorandum at pp. 7-8. A comparison of services provided by Baystate Financial shows substantial similarity to those of Bay State®, even if sales of stocks, bonds and mutual funds are not considered. See Lewis Aff., ¶17. In my opinion, based on all the available evidence including a review of all the relevant information including the 1999 and 2001 surveys, the services offered by Baystate Financial are too similar to insure against identification with Bay State®. See Great Scott Food Market, Inc. v. Sunderland Wonder, Inc., 348 Mass. 320, 325 (1965).

10.    *Baystate Financial's use of the Bay State® mark is subsequent to that of Bay State®. In addition, in my opinion, the 1997 registration of Baystate Financial Services was improper under M.G.L. c. 110B § 3(f) because it "so resembles . . . a mark or trade name previously used in the Commonwealth by another and not abandoned, as to be likely, when applied to the goods and services of the applicant, to cause confusion or mistake or deceive."* A mark that was issued contrary to §3(f) is subject to cancellation under M.G.L. c. 110B § 8(3)(c). In addition, M.G.L. c. 110B §8(3)(b) provides for cancellation of any mark upon finding "that the registrant is not the owner of the mark." In my opinion, for the reasons stated above, Baystate Financial is not the owner of the Bay State® mark, and the Baystate Financial registration should be cancelled.

### THE BAY STATE REGISTRATIONS ARE VALID
### AND WERE NOT PROCURED BY FRAUD

11.    *Baystate Financial's claim of fraud is mainly based on five allegations that are repeated in virtually the same form for each of the challenged registrations.* The allegations are that: (1) the "specimens" submitted to the PTO are deficient; (2) Bay State®'s applications falsely

claim first use of the mark for investment services, as distinguished from banking services, in 1895; (3) the Bay State® mark had not become distinctive of the investment services, as alleged in Bay State®'s declaration of distinctiveness; (4) the Banking Act of 1933 (the "Glass-Steagall Act") and Bank Holding Company Act of 1956 prohibited Bay State from providing investment services until 1999; and (5) the investment services were offered exclusively under the Minuteman® rather than the Bay State® mark until at least May 2003. See. e.g., Counterclaim, ¶¶ 37, 38 and 40; 42, 43 and 45; 47, 48 and 50; 54-56; and 60.   The relevant facts are as follows:

12.    *The specimens submitted with the applications meet all applicable requirements of the PTO.* They show the mark as actually used to sell and advertise Bay State®'s services, or, in the case of Bay State Investment Services®, as it was intended to be and subsequently was in fact used.  Under 37 C.F.R. §2.56(2), it is sufficient for an application to include "one specimen showing the mark as used on or in connection with the goods, or in the sale or advertising of the services in commerce."  The specimen is not required to show on its face how or when it was used.  That information is provided elsewhere in declarations supporting the applications.  The specimen for Bay State Investment Services® is a letter that was sent by mail through the U.S. Postal Service to selected Bay State® customers located in Massachusetts.  At about the same time, ads using the Bay State Investment Services® mark were published in The Boston Globe and the Providence Journal.  The letter and newspaper ads promote services that are offered in commerce including sales of stocks, bonds and mutual funds in public security markets.  See Lewis Aff., ¶25.a.[2]  See also 15 U.S.C. §1051 (a)(3)(c).  For trademark purposes, the definition of "commerce" includes "all commerce which may lawfully be regulated by congress."  15 U.S. C.

---

[2]    15 U.S.C. § 1127(2) defines use of a mark in commerce on services as "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one state . . . and the person rendering the services is engaged in commerce in connection with the services."

§1127. Congress can and does regulate advertising, securities markets and the U.S. mail. Thus, the mark was used in commerce. The specimens were examined and accepted by the PTO. The PTO could have rejected the specimen, if there were questions about its sufficiency. The federal registrations are prima facie evidence under 15 U.S.C. §1115(a) that the marks are validly registered, that Bay State® owns the marks, and that Bay State® has the exclusive right to use the marks in commerce in connection with banking and financial services.

13.    *The applications correctly state that Bay State® has used the mark for banking and financial services since 1895.* 37 C.F.R. §2.88(c) states that "The statement of use may be filed only when the applicant has made use of the mark in commerce on or in connection with all of the goods or services … for which the applicant will seek registration…. If more than one item of goods or services is specified in the statement of use, the dates of use required in … this section need be for only one of the items specified in each class, provided the particular item to which the dates apply is designated." In this case, all the services are in Class 36. It was therefore sufficient to give the date of only one service when all of the services encompassed in the application are within a single class. To the extent that the service recitations overlap, as in the case of banking services and financial services, they are not in fact more than one service. Thus, the date of the first use for the one is the same as the first use of the other.

14.    *The Bay State® mark was distinctive of the services described in the applications.* Where the specimen presented shows the mark as used in advertising, the specimen must communicate the general nature of the services provided. It need not list all of the services. See Trademark Manual of Examining Procedure ("TMEP") ¶ 904.01(a). Where the service recitations overlap, proof of distinctiveness for one shows distinctiveness for the other. In any event, the 1999 and 2001 surveys show that the Bay State® mark had become distinctive of a

broad range of services including investments.  The applications were examined and accepted by

the PTO, which issued the TMEP.  The registrations are prima facie evidence under 15 U.S.C.

§1115(a) that the marks are validly registered, that Bay State® owns the marks, and that Bay

State® has the exclusive right to use them in commerce in connection with banking and financial

services.

     15.    *The declarations of distinctiveness filed by Bay State® are accurate and valid.*

Clearly, as proven by the various surveys, Bay State®'s long use of the mark Bay State® for

banking and financial services has established secondary meaning, that is, the term Bay State® in

the context of financial services refers to Bay State Savings Bank®, in the minds of consumers.

     16.    *The Banking Act of 1993 (the "Glass-Steagall Act") and the Bank Holding*

*Company Act of 1956 did not prohibit Bay State® from buying and selling securities for*

*customers in the period from 1933 to 1999.*  This is established in two respects:  First, Bay

State® had the right to and did, in fact, sell U.S. Savings Bonds during all relevant periods.  U.S.

Savings Bonds are securities, but are totally outside of the prohibitions of Glass-Steagall.  Thus,

Bay State® was legally selling securities and investments during all relevant periods, and had the

right to claim such services in Bay State®'s service mark applications.  Second, Bay State® is a

state chartered bank.  In 1983, the General Counsel of the Federal Deposit Insurance Corporation

("FDIC") issued an opinion addressing this issue.  The opinion states in relevant part:

> A non-member bank may . . ., consistent with the Glass-Steagall
> Act, purchase and sell securities for the account of a customer if it
> is without recourse and solely upon the order of the customer.

General Counsel's Opinion No. 6, 48 Fed. Reg. 22989 (May 23, 1983).  It is more than

reasonable to rely on an opinion of the General Counsel of the FDIC that is published in the

Federal Register.  Bay State® conducted such transactions publicly.  The arrangement was

announced in its 1994 Annual Report, and passed review by state regulators. See Lewis Aff.,

¶25.b.

17.    *Bay State® used the Bay State Investment Services® mark in a manner that*

*satisfied all of the requirements for federal trademark registration.*  The specimen submitted in

the Bay State Investment Services® application is a copy of a promotional letter that was sent to

bank customers via the U.S. Mail on February 5, 2002. On May 1, 2002, Bay State® used the

mark in ads that were published in The Boston Globe and the Providence Journal. Lewis Aff.,

¶29.a.  The services at issue, i.e. selling stocks and mutual funds, are regulated for Congress.

Commerce includes all commerce that can lawfully be regulated by congress. 15 U.S.C. §1127.

In my opinion, the mark was used in commerce.

18.    *The fact that Bay State® used the Minuteman Investment Services® mark for*

*investment services from 1999 to approximately 2002 does not detract from its registration or*

*trademark rights for Bay State Investment Services®.*  Prior to Bay State®'s transition from use

of the Minutemen Investment Services® mark for its investment services to the Bay State

Investment Services® mark, Bay State® sponsored Minuteman Investment Services® in much

the same way that Ford sponsors Taurus: to differentiate different products from the same

sponsor.  There is ample evidence that the Minuteman Investment Services® were target

marketed primarily to Bay State® customers.  The Minuteman Investment Services® were based

in Bay State® branches.  Bay State®'s sponsorship was a matter of public record; the ad that first

introduced Minuteman Investment Services® states: "No two investors are alike.  That's why Bay

State Savings Bank introduces Minuteman Investment Services."  A subsequent ad refers to

"Minuteman Investment Services, a division of Bay State Savings Bank."  The Bay State® and

Minuteman Investment Services® marks both appear in the ad, but the Bay State® mark is larger

and more prominent. See Lewis Aff., ¶6. Consumer surveys in 1999 and 2001 indicate that consumers and customers associate Bay State® with a broad range of financial services that include stock, bond and mutual fund investments in addition to other bank services. See Myer Aff. Thus, Baystate Financial's use of the Bay State® mark creates likelihood of dilution and confusion.

## BAYSTATE FINANCIAL'S STATE REGISTRATION IS INVALID AND SUBJECT TO CANCELLATION UNDER M.G.L. C. 110B, §§4 AND 8

19.   *M.G.L. C. 110B §3(f) forbids the registration of any mark that "so resembles . . . a mark or trade name previously used in the Commonwealth by another and not abandoned, as to be likely, when applied to the goods and services of the applicant, to cause confusion or mistake or to deceive."* Bay State® used the mark for more than a century before Baystate Financial existed. See Counterclaim, ¶ 32. Baystate Financial admits in pleadings that the marks are likely to cause confusion. A mark that was improperly issued can be cancelled under M.G.L. C. 110B §8(3). In my opinion, the mark was improperly issued and should be cancelled.

20.   *In addition, M.G.L. C. 110B §8(3) provides for cancellation of any mark upon finding "that the registrant is not the owner of the mark."* Ownership in the trademark context includes common law rights. Ownership is established by evidence that a party used the mark sufficiently to establish "secondary meaning." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:4 (4th Ed. 1997) ("Ownership is governed by priority of use"). In my opinion, the mark is owned by Bay State®, not by Baystate Financial.

Signed under pains and penalties of perjury this 17th day of March 2004.

Gerry A. Blodgett

# BLODGETT & BLODGETT, P.C.

*43 HIGHLAND STREET*
**WORCESTER, MASSACHUSETTS 01609-2797**
*Telephone: 508-753-5533*
*Telecopier: 508-755-1837*
*Email: pct-law@ix.netcom.com*
*URL: bablaw.com*

Patents, Trademarks, Unfair Competition and Copyright Law (US. and Foreign). Trial, Appellate and Federal Agency Practice.

**GERRY A. BLODGETT,** born Washington, D.C., August, 1947; admitted to bar, 1977, Massachusetts; 1978, District of Columbia; registered to practice before U.S. Patent and Trademark Office 1971.

Education: Worcester Polytechnic Institute (B.S.Ch.E., 1970; M.S.Ch.E., 1972) Suffolk University (J.D., cum laude, 1976); George Washington University (LL.M., Pat. Law and Trade Reg., 1980);

Courts Admitted to Practice: Massachusetts, U. S. Supreme Court, U.S. First Circuit, U.S. District of Columbia, U.S. Court of Appeals for the Federal Circuit, U.S. Court of Claims.

Publications: "Federal Courts Have the Power to Order a State Agency to Cure a Constitutional Violation of Another State Agency," 9 Suffolk U. L. Rev. 317-26, 1975; "Patent Fraud and Rule 10b-5: A New Liability for Patent Fraud," 10 Suffolk U. L. Rev. 1064-1106, 1976; "Law and Lubricants," Proceedings of the International Symposium on Metalworking Lubrication, 1980; "Relative Significance -A Concept in Chemical Structural Obviousness Cases," 63 J. Pat. Off. Soc'y., 69-125, 1981.

Positions: Patent Agent, Blodgett & Blodgett, P.C., 1970-1976;
Technical Advisor to Phillip B. Baldwin, U.S. Court of Customs and Patent Appeals, 1976-1978;
Patent, Trademark, and Copyright Attorney, Blodgett & Blodgett, P.C., 1978- present.

Member: Worcester County, Massachusetts and American Bar Associations; American Intellectual Property Law Association; Boston Patent Law Association.

Military: Major, U.S. Army Reserves (Inactive)

**PRACTICE AREAS:** Patents, Trademarks, and Copyrights.