UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAY STATE SAVINGS BANK,<br>    Plaintiff<br><br>V.<br><br>BAYSTATE FINANCIAL SERVICES, LLC,<br>    Defendant | CIVIL ACTION NO. 4:03-CV-40273-NMG |

## STATEMENT OF MATERIAL FACTS

The Plaintiff, Bay State Savings Bank® ("Bay State®" or the "Bank"), pursuant to Local Rule 56.1 provides the following Statement of Material Facts in support of its Motion for Partial Summary Judgment.[1]

1.  The Bank has used the name Bay State Savings Bank® continuously since 1895 and is often referred to Bay State Bank. Lewis Aff., ¶2; Lewis Aff., ¶11; Ex. 8A-8E.

2.  It is headquartered in an attractive century old building facing the Worcester City Common and has branch locations in Worcester, Auburn and Holden. The Bay State® Mark is prominently displayed at each location. Lewis Aff., ¶3; Ex. 2; Ex. 6B.

3.  Bay States®'s primary geographic market consists of Worcester and the surrounding communities, but its customers live in approximately 431 different postal zip codes in Massachusetts and in 29 other states. Lewis Aff., ¶4.

---

[1] This motion is supported by the Affidavits of Robert J. Lewis ("Lewis Aff."), Gerry A. Blodgett, Esq. ("Blodgett Aff."), David L. Porter ("Porter Aff.") and R. Kelley Myers ("Myers Aff.") and an Appendix of Exhibits, Volumes I-III, (referred to by exhibit as "Ex. ___."). Due to the large volume of the Affidavits and Exhibits, and pursuant to the Court's recommendation, they are being filed under a separate cover over the counter.

{H:\PA\Lit\16311\00003\A0915741.DOC}

4.  Bay State® provides a broad range of financial products and services. At first this consisted of savings accounts and home mortgages. St. 1907, c. 561 authorized savings banks to offer Savings Bank Life Insurance ("SBLI"). Available records show sales of SBLI dating to at least 1962. Lewis Aff., ¶5; Ex 3. In addition to SBLI, the services have included sales of savings bonds since 1960; mortgage and disability insurance by 1971; IRA, SEP and Keough retirement and educational accounts by 1976; Investment Unit Accounts by 1981; SBLI Life Saver Annuities by 1988; and sales of stocks, bonds and Mutual Funds from 1994 to 1998, and continuously since January 2000. Lewis Aff. ¶5; Ex. 4A-4M; Ex. 23A-23C; 2d Lewis Aff.,¶ 10, 11.

5.  From January 2000 to February 2002, the investment services were identified as a sub-brand with the Minuteman Investment Services® mark. Ex. 11K-11M; Lewis Aff., ¶6.

6.  In January, 2000, Bay State® entered into an agreement with Infinex Investments, Inc. and Infinex Insurance Agency of Massachusetts Inc. ("the Infinex Agreement") whereby joint employees located at Bay State® banks would sell investment services, including securities and insurance. Ex. 37; 2d Lewis Aff.,¶ 11.

7.  The investment services sold pursuant to the Infinex Agreement were advertised and promoted by Bay State®.

8.  The investment services were exclusively sponsored by Bay State®; sold by personnel located in Bay State® offices; and target marketed primarily to Bay State® customers. Lewis Aff., ¶6.

9.  The investment services were fully disclosed in Annual Reports and authorized by law. Lewis Aff., ¶5; Ex. 4A-4M; 23A-23C.

10. Bay State® has advertised and promoted itself in newspapers and trade journals since 1895. Lewis Aff., ¶7; Ex. 6A-C; Ex. 6E-6F.

11. Bay State ® has invested in community relations by charitable giving. Lewis Aff., ¶8; 2d Lewis Aff., ¶12; Ex. 4A-4M; Ex. 23A-23C.

12. Advertising expenditures have grown from $7,059 in 1960 (the first year in which they are segregated) to as much as $631,000. Lewis Aff., ¶7; 2d Lewis Aff.,¶21. Since at least 1995, this has included statewide advertising in The Banker & Tradesman. Lewis Aff., ¶7. The total from 1960 to 1997, when Baystate Financial incorporated, is approximately $2.7 million. Id. Total to date including the 2006 budget exceeds $6.1, without counting the charitable donations of several hundred thousand dollars. 2d Lewis Aff., ¶21.

13. Bay State® has been featured in many unsolicited news articles reporting matters of public interest, including the appointment of community leaders to serve in various leadership positions, and the bank's support of community activities. Lewis Aff. ¶9; Ex. 7A-7C.

14. Bay State® has increased in size, prominence, sales and customers. Assets have grown from $20,241 in 1895 to over $245 million. Lewis Aff., ¶10. In 1997, when Baystate Financial incorporated, loans and deposits were $90.5 million and $115.6 million, respectively, (total assets were $206.1 million). Lewis Aff., ¶10; Ex. 4H.

15. Consumer surveys in August of 1999 and 2001 showed that the Bay State® mark was widely recognized and highly regarded. Lewis Aff., ¶12; Meyers Aff., ¶¶7, 10; Ex. 9, 10.

16. The proportion of the general population who recognized the Bay State® mark was 70% in 1999 and 76% in 2001. Lewis Aff., ¶12; Meyers Aff., ¶¶7A, 10A; Ex. 9, pp. 7-8; Ex. 10. Half reported that they had seen or heard Bay State® ads. Lewis Aff., ¶12; Meyers Aff., ¶7C; Ex. 9, p.2, 9-10; Ex. 10.

17.     Bay State®'s favorability ratings far surpassed those of larger competitors such as Fleet and Bank Boston.  Lewis Aff., ¶12; Myers Aff., ¶¶7D, 10B; Ex. 9, pp.2, 11; Ex. 10, pp.2-3, Chart 7.

18.     Bay State®'s rating for "products and services satisfaction" shows that consumers view the bank as providing a wide range of financial services.  Meyers Aff., ¶¶7E, 10E; Ex. 9, pp.23-24; Ex. 10, p.10; Chart 26; Blodgett Aff., ¶5; Ex. 38, p.5.

19.     The 1999 survey shows that Bay State® customers had a stronger appetite for Mutual Funds than the general population; kept half their household investment dollars at Bay State®; and believed that the products and services are improving.  Meyers Aff., ¶¶7F-I; Ex. 9, pp.3, 23-24, 27-30.  Over 81% of customers would recommend Bay State® to others, a higher proportion than customers of other banks.  Meyers Aff., ¶7J.

20.     The 2001 survey contains similar information, and shows that customers associate Bay State® with a wide range of financial services including insurance, mutual funds and bonds. Myers Aff., ¶10E; Ex. 10, p.10, Chart 26; Blodgett Aff., ¶5; Ex. 38, p.5.

21.     Bay State® obtained state and federal service mark registrations in 1999 and 2001, respectively.  They include, among others:

| Mark | First Use | Federal Registration | State Registration | Services described |
| --- | --- | --- | --- | --- |
| Bay State | 5/16/1895 | 5/15/01 | 10/14/99 | IC 036: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning And Financial Guarantee And Surety. |
| Bay State Savings Bank | 5/16/1895 | 5/22/01 | 7/20/99 | IC 036: Banking Services And Financial Services, Namely, Financial Investment In The Field Of Real Estate, Stocks, Bonds, Commercial Paper, And Other Securities, Financial Management And Planning, And Financial Guarantee And Surety. |
| Bay State Online | 7/5/01 | 10/1/02 | 11/14/01 | IC 036: US 100, 101, 102.  G & S Banking services provided by means of a global computer network. |
| Bay State Investment Services | 2/5/02 | 7/30/02 | 6/3/02 | IC 036: Investment Services, namely, mutual fund brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds, life insurance and long term care insurance and insurance agencies |

|  |  |  |  | and underwriting in the field of life insurance and long term care insurance. |
|---|---|---|---|---|

Lewis Aff., ¶7.

22. The applications were handled by Gerry A. Blodgett, Esq., a reputable patent and experienced trademark attorney. Lewis Aff., ¶17; 2d Lewis Aff., ¶3; Blodgett Aff., ¶2; Ex. 38, p.4.

23. The Bay State® and Bay State Savings Bank® applications state that the Bank had been using the mark for "BANKING AND FINANCIAL SERVICES TO CONSUMERS AND BUSINESSES" in International Class ("IC") 36 since 1895.[2] Ex. 11A, 11B, p.00703, 11C, 11D, p.00785, 11L, p.00967; Blodgett Aff., ¶2; Ex. 38, p.4.

24. The description of services had been amended in good faith by July 18, 2000 at the PTO's suggestion to add "FINANCIAL INVESTMENT IN THE FIELD OF REAL ESTATE, STOCKS, BONDS, COMMERCIAL PAPER, AND OTHER SECURITIES FINANCIAL MANAGEMENT AND PLANNING, AND FINANCIAL GUARANTY AND SURETY," all in IC 36. Blodgett Aff., ¶2; Ex. 11B p.00762, 11D p.00851, 11L p.01003; Ex. 38, p.4.

25. Bay State® relied on Mr. Blodgett in all respects. Lewis Aff., ¶17; 2d Lewis Aff., ¶3.

26. The declarations supporting the trademark applications were made in good faith. Bay State® President Robert J. Lewis believed when he signed the declarations, and still believes now, that the declarations were true and correct. 2d Lewis Aff., ¶3. The same is true of the Internet domain name registrations. 2d Lewis Aff.,¶19.

---

[2] International Class ("IC") 36 includes: Insurance, financial affairs, monetary affairs, and real estate affairs.

27. Baystate Financial's trademark expert, Lawrence R. Robbins, Esq., testified that he saw no evidence of bad faith or misrepresentation in the applications for the Bay State® marks. Ex. 24, p. 36:23-37:18; Ex. 33.

28. He was asked to review Mr. Blodgett's report and Affidavit to identify areas he did not agree with. Mr. Blodgett's report represented that the applications were in good faith. Mr. Robins did not take issue with that assertion and testified that he found no indication of bad faith or misrepresentation. Ex. 24, p. 6:2-8, p. 36:23-37:18; Ex. 33; Ex.38

29. Baystate Financial's banking law expert, former Massachusetts Banks Commissioner Michael C. Hanson, Esq., testified that the Bank could properly offer all the services described in Mr. Lewis' Affidavit from the date the affidavit says the services were introduced. Ex. 25, p.28:1-13, p.28:14-30:19, p.31:2-33:1, p.33:2-34:8.

30. In addition, the Bank Commissioner's Office imposed rigorous inspections every 12 to 18 months that would have detected irregularities, but there were no irregularities at Bay State Savings Bank®. Ex. 25, p.42:2-44:17; 2d Lewis Aff., ¶20.

31. Baystate Financial stated under oath, in its Massachusetts service mark application, that it first used the Bay State® mark for financial services on May 1, 1997. Ex. 13; Ex. 26, p.12:24-14:5.

32. The registration is in IC 36, the same as Bay State®'s registrations. Ex. 13.

33. Baystate Financial filed the application without first conducting a search, (Ex. 28), and claims that it did not know of Bay State Savings Bank® at the time. Ex. 26, p.55:4-20. It has not sought federal registration. Lewis Aff., ¶19.

34. According to its own expert, Thomas D. Dupont, Baystate Financial's use of the Baystate name has not acquired secondary meeting. Ex. 27, p. 27:11-17.

35. Its Rule 30(b)(6) witness David Porter indicated that Baystate Financial does very little advertising, that advertising expenditures were less than $10,000 last year, and it dosen't use an advertising agency. Ex. 26. p. 50:7-10, p. 62:12-14

36. Baystate Financial claims to have the benefit of a state registration for the Baystate mark filed in 1990. Bay State® denies that any conveyance of the mark was made to Baystate Financial from any predecessor in interest.

37. Baystate Financial incorrectly alleges that predecessors in interest have used the mark since 1983 and obtained a state registration in 1990. This is contradicted by its state service mark application, which asserts under oath that Baystate Financial first used the Baystate mark on May 1, 1997. Ex. 13.

38. The Wilson, Bergstrom & Denton Insurance Agency (the "Wilson Agency") of Boston obtained a state registration for the name Baystate Financial Services in 1990, but a letter from its attorney warned that "registration of the name really is only proof that you have been using it. Were someone to come along who has been using this name since some date prior to you, they could theoretically stop you even they have not registered it". Ex. 28; Ex. 36; p.14:6-14.

39. In any event, the 1990 registration expired in 2000 because the Wilson Agency did not renew it. Lewis Aff., ¶22; Blodgett Aff. ¶8; Ex.16; Ex 38. p.6

40. In December 2003 the Wilson Agency purported to assign the expired registration to New England Life, but New England Life has not attempted to transfer the expired rights to any other party. Ex. 36, p.10:8-12:16; p.18:16-19:10.

41. Baystate Financial is an independent agency and is not affiliated with New England Life. Ex. 26, p.14:21-15:7, p.16:14-17:1; Porter Aff., ¶3.

42. Baystate Financial incorrectly asserts that it acquired the rights of the earlier Baystate Financial Services. Its Rule 30(b)(6) witness, David C. Porter, was asked to describe the assets that Baystate Financial acquired when it started business in 1997. Ex. 26, p.22:22-23:4. His list did not include rights to the Baystate Financial Services mark. It only included physical assets. Ex. 26, p. 23:11-17.

43. He said that Baystate Financial has no documents evidencing the acquisition of any such rights to the Baystate name. Ex. 26, p.23:5-10.

44. On December 23, 2002, Bay State® notified Baystate Financial, in writing, to discontinue use of the Bay State® mark. Ex. 17. Baystate Financial did not comply. Lewis Aff., ¶23.

45. On November 23, 2003, Baystate Financial announced a major expansion including a 38-employee financial planning business located across the Worcester City Common from Bay State®'s headquarters. The announcement asserts that the expansion made Baystate Financial the largest financial planning operation in New England with 168 employees and annual sales of $176 million, and that expansion will continue. Lewis Aff., ¶24; Ex. 18.

46. Baystate Financial does not conduct paid advertising but does promote itself by other means that threaten dilution and confusion. Until 2003, its activities were confined to Boston. Some newspapers misidentify it as "Bay State®" suggesting that the Baystate name is not well recognized. Ex. 19; Lewis Aff., ¶25.

47. At least in its Worcester office, the Baystate Financial mark is barely displayed. Lewis Aff., ¶26; Ex. 20.

48.     Baystate Financial does sponsor a radio show concerning financial planning and investment issues. The show is broadcast from three stations including one in Worcester. Ex. 6D; Ex. 26. p.59:17-61:23.

49.     The Boston Business Journal ("BBJ") recently observed that:

50.     Baystate Financial has been growing, albeit under the radar. However [Baystate Financial CEO David] Porter recently told the Boston Business Journal that the next couple years will present solid growth opportunities - and more recognition - for Baystate Financial, as it looks to expand to Western Massachusetts and south toward Hartford. Lewis Aff., ¶27; Ex. 21. (Emphasis added).

51.     Baystate Financial admits that the parties' present and proposed use of the Bay State® mark will cause dilution and confusion. Baystate Financial's counterclaim alleges that:

52.     The BAYSTATE Marks and Bank Marks are similar if not virtually identical. The dominant or core element of the respective marks is Baystate and Bay State. The only appreciable difference between the marks is a single space, an almost insignificant distinction. The parties' core marks sound the same and look the same, and therefore convey the same commercial impression to consumers. It is unlikely that consumers will be able to distinguish between the BAYSTATE Marks associated with Baystate Financial's long-standing and highly regarded financial services business *and the Bank Marks representing the Bank's neophyte financial services offerings.*

See Defendant's Counterclaim, ¶32. (Emphasis added).

        BAY STATE SAVINGS BANK

        By its attorneys,

        /s/ John T. McInnes
        James C. Donnelly, Jr., Esq.
        BBO #129700
        John T. McInnes, Esq.
        BBO # 657488
        Mirick, O'Connell, DeMallie & Lougee, LLP
        100 Front Street
        Worcester, MA 01608-1477
        Phone: (508) 791-8500
        Fax:    (508) 791-8502

Dated: May 8, 2006

## CERTIFICATE OF SERVICE

    I, John T. McInnes, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Christopher P. Litterio, Esq. of Ruberto, Israel & Weiner, P.C., 100 North Washington Street, Boston, MA 02114.

        /s/ John T. McInnes
        John T. McInnes, Esq.

Dated: May 8, 2006