UNITED STATES DISTRICT COURT
DISTRIST OF MASSACHUSETTS

Civil Action No. 4:03-cv-40273-NMG

BAY STATE SAVINGS BANK
Plaintiff,

v.

BAYSTATE FINANCIAL SERVICES, LLC
Defendant.

<u>DEFENDANT BAYSTATE FINANCIAL SERVICES, LLC'S
OPPOSITION TO PLAINTIFF, BAY STATE SAVINGS BANK'S
MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS</u>

I.    **INTRODUCTION**

Bay State Savings Bank (the "Bank"), a Worcester, Massachusetts based bank which

operates primarily in three towns in and around Worcester and Baystate Financial Services, LLC

("Baystate Financial"), a Massachusetts, LLC which provides financial investment (i.e. stocks,

bonds and mutual funds) and insurance products co-existed peacefully for 20 years.  The two

entities operated in separate spheres, providing separate and distinct products to its customers.

The  Bank offered mortgages, loans and deposit based products and Baystate Financial offered

investment  and insurance products.   In fact, the Bank was prohibited by law from offering the

investment and insurance based products offered by Baystate Financial so it would have been

legally impossible for the product lines to cross. ( *See* a complete discussion of these legal

parameters in Baystate Financial's Memorandum in Support of Motion for Summary Judgment

on Plaintiff's Claims filed with the court on May 8, 2006 at pp. 7-10).   When legislation was

enacted in 1998 and 1999 allowing savings banks (with particular restrictions) to enter the field

of non-deposit investment and insurance offerings the Bank began to look for ways to offer these

products in an effort to prevent current customers from moving to other savings banks which

would offer investment and insurance options.  Baystate Financial had already been offering

investment and insurance products since 1983.

In 1999, before the Bank actually offered any of these non-deposit  investment and

insurance services in its own name, it filed trademark applications to register the names "Bay

State", "Bay State Savings Bank", "Bay State Investment Services" and "Bay State Online".  As

discussed more completely below, in each of the applications for registration, in addition to

listing mortgages, loans and savings products the Bank represented that since 1895 it had offered

"financial services, namely financial investment in the field of real estate, stocks, bonds,

commercial paper and other securities, financial management and planning and financial guarantee and surety."[1]  The applications were originally rejected as being geographically descriptive.  Only after the Bank filed affidavits "attesting" to the exclusive use of the Marks for five years in connection with the investment and insurance products did the PTO grant the registrations.  Shortly after receiving the registrations, the Bank sought to prevent Baystate Financial from using the name "Baystate" claiming that the Bank's registrations trumped Baystate Financial's prior use in the investment and insurance sphere.  When Baystate Financial declined to change its name, the Bank  filed a claim alleging trademark infringement and sought a preliminary injunction to prevent use of the Baystate Financial Services name.  The preliminary injunction motion was denied.

In sum, this is simply a case to establish who is the first user of a tradename containing the term "Baystate" in connection with insurance and investment products; and if that user is Baystate Financial Services whether the Bank has any legal argument which would allow it as a matter of law to over-ride that first use.  Baystate Financial, which has used the name "Baystate Financial Services" since 1983 contends that there is no authority which supports the Bank's position that Baystate Financial is infringing on its marks and filed a Motion for Summary Judgment on May 8, 2006 as to the Bank's affirmative Claims.   This court has also already determined in its denial of the Bank's Preliminary Injunction Motion that there is no authority for the Bank's position; that as a matter of law, banks were unable to offer the sale of insurance and securities prior to the enactment of the 1998 and 1999 legislation, and within the area of financial services and investments, Baystate Financial Services pre-dates the Bank.  There are not any facts which support the Bank's claim for first use.

---

[1] See Baystate Financial Rule 56.1 Statement ¶ 52 submitted in connection with its Motion for Summary Judgment filed on May 8, 2006 on the Bank's Complaint.  Hereinafter Def. Rule 56.1 Stmt.

Baystate Financial filed counterclaims against the Bank alleging in part that the marks were fraudulently obtained and in fact, in the field of investment and insurance services the Bank is infringing on Baystate Financial's prior use as the first user of the "Baystate Financial Services" mark.  The Bank knew of the existence of Bay State Financial when it registered Bay State Investment Services and when it attempted to tie the investment and insurance products to be offered by Bay State Investment Services (an entity established at the earliest in 2002) to the Bank's origin in 1895.

The Bank now purports to move for summary judgment on each of Baystate Financial's counterclaims.  However, in support of its motion for summary judgment the Bank relies on the same affidavits and surveys which did not persuade the court at the preliminary injunction stage and offers no new credible evidence in support of its motion.  The Bank's issues as to Baystate Financial's counterclaims are addressed below.

**II.    THE BANK HAS MISSTATED THE STANDARD REQUIRED OF A MOVING PARTY TO PREVAIL ON SUMMARY JUDGMENT AND ALTHOUGH IT ALLEGES IT SEEKS SUMMARY JUDGMENT ON EACH COUNTERCLAIM IT HAS NOT PROPERLY DONE SO.**

To prevail on its motion for summary judgment the Bank must show that in regard to Baystate Financial's counterclaims "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F. R. Civ. P. 56 (c).  To defeat the motion, Baystate Financial need only "present evidence from which a jury *might* return a verdict in [its] favor.  If [it] does so there is a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 257 (1986) (emphasis added).   The Bank alleges that in order for the court to deny its motion for summary judgment on the counterclaims, Baystate Financial is required to provide "clear and convincing evidence" of its claims. This is not supported by the language of Rule 56 or in *Anderson* and *Celotex* which provide the seminal case law guidance

3

for compliance with Rule 56. *See Anderson*, 477 U.S. 242 (1986); *Celotex v. Catrett*, 477 U.S. 317 (1986).

The Bank alleges in its Motion for Summary Judgment that it seeks summary judgment on each of the counterclaims; but the Memorandum which accompanies the motion only specifically addresses two pleaded causes of action and then appears to attempt to resolve "issues" in the case without relating these "issues" to particular causes of action. "There is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be received in favor of either party." *Anderson*, 477 U.S. at 250. Furthermore, the substantive law will identify which facts are material. *Id.* at 248. Therefore, a failure by the Bank to set out the legal parameters for a cause of action along with undisputed material facts to defeat each element of the cause of action should preclude entry of summary judgment on that claim. *See Celotex*, 477 U.S. at 323 (One of the principal purposes of the summary judgment rule is to dispose of factually unsupported claims or defenses). The Bank's request that the court resolve "six issues relating to Baystate Financial's defenses and counterclaims" should fail.

In the event that the court is inclined to allow specific issues to be resolved they are addressed accordingly in this opposition. But Baystate Financial contends that the only counterclaims properly before the court on summary judgment are Count IV alleging Cyberpiracy and Count V alleging Fraudulent Registration. Regarding the remaining Counterclaims, none of the necessary legal elements are set out for the remaining causes of action, and by default, the moving party has not supported its motion by providing undisputed material facts as to each element of each claim. It is the moving party's responsibility to inform

the court of the basis for its motion and to provide direction to the materials which demonstrate an absence of a dispute of material fact. *Celotex*, 477 U.S. at 323. As a result, in reference to Counts I, II, III, VI, VII, VIII and IX, the Motion should be automatically denied.

In addition, the motion is deficient because the Bank has relied on Affidavits to support its motion for summary judgment which contradict testimony made by its own witnesses during the course of depositions. This "evidence" should not be considered by the court and Bay State Financial Services has filed the appropriate motions to strike concurrent with this opposition. But even if the court fails to allow those motions to strike, the contrary testimonies of Plaintiff's own witnesses along with the facts submitted by Bay State Financial Services creates a dispute of material fact which defeats Plaintiff's Motion for Summary Judgment.

## III.   **ARGUMENT**

### A.   **There Is Ample Evidence Creating a Dispute of Fact as to Whether the Bank Acted Fraudulently in Seeking to Register the Marks at Issue in this Litigation (Count V).**

The Bank claims that because its trademarks have been granted registration that it is now entitled to exclusive use which cannot be challenged by Baystate Financial Services. This is not the case. It is not until 5 years after the mark has been registered that it is "incontestable" by another party and even after that time, a mark may be cancelled if it was obtained by fraud, abandoned, or there is a legitimate prior user. 15 U.S.C. §1115. The Bank's federal registrations were obtained in 2001 and 2002. This lawsuit was filed in 2003 and the counterclaims were filed in 2004, well before any incontestability had been established.[2] The Bank was aware of the existence of Baystate Financial prior to the time it filed its trademark applications. Mulligan

---

[2] Since the United States is a "first to use" jurisdiction and not a "first to file" jurisdiction,  Baystate Financial can defeat the registrations by showing that  it is the first to use its mark in connection with investment and insurance products; *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815 (1st Cir. 1987).

Aff., Ex. F, p. 113. In addition, the Bank alleges it hired an experienced trademark attorney to assist in filing its applications. Clearly the Bank understood the legal framework necessary for establishing exclusive use in its marks and it was in its stretch to establish "first use" in connection with insurance and investment products and "secondary meaning" that it falsified the trademark applications. It is not for the court to determine at this point whether or not the actions actually constituted fraud, but whether Bay State Financial Services has shown a genuine issue of material fact for trial. There is more than ample evidence to maintain an action for a fraud claim.

### 1.    The Bank Made False Representations of Material Facts on its Trademark Applications

The standard for fraud as established by the Trademark Board in connection with the canceling of registrations is "a trademark applicant commits fraud in procuring a registration when it makes a material representation of fact in its declaration which it knows or should know to be false." *McCarthy on Trademarks* (4th Ed. 2006) section 31:61 *citing Medinol Ltd. v. Neuro Vasx, Inc.* 67 U.S.P.Q. 1205 (TTAB 2003) (fraud was found by a misstatement of use of a mark in a Statement of Use); *Torres v. Cantine Torresella*, 808 F.2d 46 (Fed. Cir. 1986) (Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application.)[3]

Misrepresentations on applications to the PTO regarding the "exclusivity of use" or description of services may be grounds for cancellation based on fraud. *See Marshall Fields & Co. v. Mrs. Field's Cookies*. 11 U.S.P.Q.2d 1355, 1357-58 (T.T.A.B. 1989); *General Car and Truck Leasing Systems, Inc. v. General Rent a Car, Inc.* 17 U.S.P.Q.2d 1398, 1401 (S.D. Fla 1990). In *General Car and Truck* the court found that affidavits submitted to the PTO in support

---

[3] The five part test outlined by plaintiff in reliance on *V&V Food Products* does not appear in that case. See case as cited by the Bank, *V & V Food Products, Inc. v. Cacique Cheese Co., Inc*, 683 F. Supp. 662, 666 (N.D. Ill. 1988)

of a trademark registration stating that General Car and Truck Leasing Systems had been involved in the rentals of aircraft and boats, when the party had never been involved in offering these services in connection with their trademark constituted fraud. Since General Car and Truck knew that it had never leased aircraft and boats, the court found this to be a willful and thus fraudulent representation. *Id.* at 1400. If a registrant uses the mark but not on the specific goods listed in the registration, the registration may be canceled for fraud. *Otis Elevator Co. V. Echlin Mfg.*, 187 U.S.P.Q. 310 (T.T.A.B. 1975).

When the Bank initially filed its registrations for the marks "Bay State Savings Bank", "Bay State" and "Bay State Investment Services", (the "Bank Marks") the PTO denied each of the Bank's applications because, among other things, they were deemed to be geographically descriptive. Def. 56.1 Stmt. ¶46.[4] The PTO later agreed to register the Bank Marks only after the Bank submitted Declarations under § 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), stating that the marks had "***become*** distinctive of the services through applicant's **substantially** *exclusive and continuous use* in commerce for at least the five years immediately before the date of this statement." Def. 56.1 Stmt. at ¶¶ 58 and 65.   In connection with the filing of the 2(f) affidavits the Bank amended its description of services on each of the applications. On the Bay State and Bay State Savings Bank mark the bank amended its services recitation to read "financial services, namely financial investment in the field of real estate, stocks, bonds, commercial paper and other securities, financial management and planning and financial guarantee and surety in international class 36." Def. 56.1 Stmt. ¶52. The description of services in connection with the Bay State Investment Services mark was adjusted to read "investment services, namely, mutual fund, brokerage and investment, annuity underwriting, brokerage in the field of stocks, bonds,

---

[4] "Def. 56.1 Stmt." refers to the separate Statement of Facts filed by Baystate Financial in connection with its Motion for Summary Judgment. "Resp. No." refers to Defendant's Response to Plaintiff's Statements of Facts.

life insurance and long-term care insurance and insurance agencies and underwriting in the field of life insurance and long term care insurance in Class 36." Def. 56.1 Stmt. ¶68. All three of the submissions allege that these are the services the Bank was using in "exclusivity" in connection with the marks for the 5 years prior to the submission of the supplemental affidavits in June and October, 2000. But this was not the case. Def. 56.1 Stmt. ¶¶26-44; Mulligan Aff., Ex. F, p. 37.

The original federal trademark applications were filed in 1999 with the supplemental affidavits filed in 2000. For the Bank to claim through an affidavit of Robert Lewis that it offered investment and general insurance services at the time of the trademark applications is completely contrary to his deposition testimony that these services were offered through a third party vendor FISCO from 1994-1998; not offered at all from 1998-2001 and in 2001 reintroduced through a third party vendor called Infinex. *Id.* Banks were prohibited by law from offering non-deposit investment services (i.e. stocks, bonds mutual funds) until 1999 and general insurance products until 1998. *See* discussion on pages 4-10 of Bay State Financial Services Memorandum in Support of Motion for Summary Judgment. The Bank was aware of these statutory prohibitions.

The Lewis affidavit contradicts a resolution of the Board of Directors of the Bank which in October, 2000 adopts for the first time a policy to offer non-deposit insurance and investment services. Mulligan Aff., Ex. A, p. 1603. The fact that the Board of Directors did not approve the offering of non-deposit investment products until October, 2000 creates a dispute of fact with the recitations in the Lewis affidavit and PTO filings which stated that the Bank was offering stocks bonds and mutual funds as of 1895 and at the time that the applications were filed. In addition, the Bank claims in the trademark applications that the investment and insurance products are associated with the name "Bay State", however, the Non-Deposit Investment Policy

states that "a non- deposit investment product will not have a name that is identical to the name of the Bank." Mulligan Aff., Ex. A, p. 1568.

Further, supporting the intent to misrepresent, the Bank never applied for a license to sell insurance until March, 2001 and in that application to the Massachusetts Insurance Division the Bank stated that "the Bank has no present intention of initiating its own insurance sales business within the Bank." Mulligan Aff., Ex. A, p. 1549, 1562, 1606-1607. This raises a dispute of fact as to whether the affidavits filed with the PTO claiming that the Bank had offered stocks, bonds, mutual funds and insurance services since 1895 were truthful and whether in light of the Bank's governing policies were intended to be false statements.

Despite the statement by Lewis that he believed his statements to be true, he was the Bank president at the time that the Non-Deposit Investment Policy was adopted and at the time the application to sell insurance was made in 2001 to the State Division of Insurance. This at least creates a dispute of fact as to whether or not Lewis, as the Bank's leader can feign ignorance of the Bank's own policies and legislation governing the operating provisions of state chartered savings banks.

The Bank does not fare any better relying on the affidavits and representations of its attorney Gerry Blodgett. Mr. Blodgett testified at his deposition that he did not file the application for Bay State Investment Services. Mulligan Aff., Ex. C, p. 114. He further testified that prior to the time he filed the response to the PTO office actions relative to the various marks, he discussed the amended description of use of the marks with Robert Lewis who affirmed that the description was accurate. Mulligan Aff., Ex. C, p. 102. The affidavits submitted by the Bank in connection with the registration of the marks stated that the Bank was offering real estate investments and stock investments. However, Blodgett testified at his deposition that he

did not mean to infer that the Bank was investing in real estate when he drafted the amended description of services, but that the bank would provide loans to borrowers who would then use the money to purchase real estate. Mulligan Aff., Ex. C, p. 90. In regard to the statement in connection with the trademark applications that the Bank offered financial investment in stocks, Blodgett testified that he intended this to mean that customers could borrow money from the bank and use that money to purchase stocks; not that the Bank was providing an opportunity to purchase stocks through the Bank. Mulligan Aff., Ex. C, pp. 91-92. By virtue of the fact that the Bank holds out Mr. Blodgett as an experienced trademark attorney these explanations become suspect and call into question the "intent" of the representations in the filings. The fact that Lewis saw and approved these descriptions before filing calls into question Lewis's intent to file a fraudulent affidavit with the PTO. This issue is central to the infringement action brought by the Bank against Baystate Financial because the Bank is attempting to gain "first user" status by implying that it used the name "Bay State" in connection with investment and insurance services since 1895.

The Bank claims that because its president Robert Lewis and its attorney believe that the affidavits they made to the PTO were true that they did not have the requisite "intent" to file a fraudulent application. However, the facts of this case show otherwise, or at least raise a dispute as to the "intent" of the Bank officers and agents; and a subjective statement without supporting evidence cannot be the basis of a motion for summary judgment. *Polaroid Corp. v. Rollins Environmental Services, Inc.* 416 Mass. 684, 696 (1993) (Bare assertions and conclusions regarding a person's beliefs and assumptions are not enough to support summary judgment).

Plaintiff further claims that the affidavits submitted to the PTO correctly state that the Bay State mark has been used in connection with financial services since 1895 because it is

sufficient to give the date of only one service when all of the services encompassed in the application are within a single class. Relying on 37 C.F.R. §2.88 (c), Plaintiff claims that it makes no difference if some of the services are actually acquired at a later date. This is incorrect.

Any application for trademark registration requires the applicant to file a verified statement that the mark is in use *in connection with the goods or services* listed in the application. If the verification is filed after the initial application then it must allege that the mark was in use "in connection with the goods or services listed in the application as of the application filing date. 37 C.F.R. § 2.34. The section of the C.F.R. that Plaintiff relies on, 37 C.F.R. § 2.88 relates to the filing of an intent to use application. Specifically it states that a statement of use must be filed within 6 months of the issuance of a notice of allowance. Section 2.88(c) states that "the statement of use may be filed only when the applicant has made use of the mark in commerce on or in connection with all of the goods or services, as specified in the notice of allowance, for which applicant will seek registration in that application… If more than one item of goods or services is specified in the statement of use, the dates of use required in paragraph (b)(1) of this section need be for only one of the items specified in each class, *provided the particular item to which the dates apply is designated*."

Therefore, this section does not apply to the applications associated with the "Bay State" and "Bay State Savings Bank" marks; and in reference to the intent to use application filed in reference to Bay State Investment Services the Bank was required to articulate the corresponding services to the date of first use listed on the application.

The Bank also claims that its representation on the trademark applications that the marks have been in use for five years creates a presumption that the marks have become distinctive and

that the 1999 and 2001 surveys introduced through the Affidavit of Kelly Myers are evidence that the Bank's marks had become associated with a broad range of services. First, the Bank cannot claim that the registrations confer distinctiveness when the "fact" of the incontestability of the registrations is in dispute. This issue is fully briefed in Baystate Financial's Memorandum in Support of Motion for Summary Judgment at p. 10. Plaintiff cannot rely on a statement in the trademark affidavit that is at issue in this case to create an undisputed fact.

The 1999 and 2001 surveys are also not dispositive of any issue of distinctiveness regarding the Bay State Marks and Baystate Financial has moved to strike the surveys and Myers' Affidavit. The surveys were not designed to test secondary meaning of any of the Bank's alleged trademarks. Def. 56.1 Stmt. ¶93. Further, Kelly Myers testified at his deposition that the statement in his affidavit upon which the Bank relies which states "the survey shows that the Bay State mark is widely recognized and highly regarded" is not a statement made by him and he does not know what the term "Bay State Mark" means. Def. 56.1 Stmt. ¶96.

Most importantly, the Bay State Investment Services mark – the name under which the Bank claims to offer its investment and insurance products was not even in use at the time the Surveys were performed. (Bank claims mark first used in February, 2002). Therefore, the Surveys cannot provide any evidence of "distinctiveness" of Bay State Investment Services' association with investment and insurance products. In addition, the actual reports do not support the summaries provided by Plaintiff in its brief. *See* details of incorrect statements at Response to Alleged Fact 15. Plaintiff tried to use these surveys to support its claim for secondary meaning in connection with its motion for preliminary injunction and the court declined to find that they provided any evidence of secondary meaning as to Bay State and the offering of investment and insurance products. Def. 56.1 Stmt. at ¶¶ 92-96.

Plaintiff's next attempt to persuade the court that the representations on its trademark applications were not fraudulent by claiming that Baystate Financial's expert admitted that the Bank could properly offer the services listed in the applications. Mr. Hanson's expert report actually states that legislation prohibited Bay State Savings Bank from directly offering investment and insurance products and the only manner in which these products could be offered was through a third party relationship with a vendor. Plaintiff's Ex. 34 at ¶¶ 1-8.

Finally, the Bank alleges that because it offered investment services through the name "Minuteman" Investment Services that the products offered by Minuteman are attributable to the Bank. There are three problems with this representation. First, the bank did not begin offering services through Minuteman Investments until 2001, well after the time the trademark applications had been filed. Def. 56.1 Stmt. ¶¶38-39. Second, the Bank, as discussed above, was not offering the investment and insurance products, Infinex was; and third, this still does not negate the fact that from 1998 to 2001, there were no investment or insurance products offered through a third party or otherwise. Def. 56.1 Stmt. ¶¶26-44.

Each of these issues creates a dispute of fact which should prevent the allowance of the motion for summary judgment as to the fraud claim.

**B.**    **Neither Party Has Brought a Claim for Cancellation Under M.G.L. c. 110B §3 or §8 and Therefore This Section of the Summary Judgment Motion Cannot Be Considered By the Court.**

It was Defendant's understanding from the Rule 7 conference associated with this motion that Plaintiff only intended to move for summary judgment on Defendant's counterclaims, but there is not a counterclaim based on M.G.L. c. 110B §3 or §8. In any event, this section of the brief appears to be seeking affirmative relief actually granting cancellation of Defendant's mark. This too is a mystery as Plaintiff has not pleaded Cancellation under this statutory scheme and

therefore cannot now move for summary judgment on these grounds. A plaintiff may not amend its Complaint through arguments in a brief for summary judgment. *See Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000). In any event, even if this were a proper claim, the facts which plaintiff uses to support such claim are in dispute. *See* Baystate Financial's Response to Statement of Facts at ¶¶ 1, 4, 34,35 51, 52 which creates a dispute of fact on each and every issue presented in the argument of this section.

**C.    The Bank Has Not Established That It Has An Incontestable Mark Which Would Require Baystate Financial To Assert A Limited Area Defense Nor Has Baystate Financial Asserted Such A Counterclaim Upon Which Summary Judgment May Be Brought.**

Baystate Financial has not asserted a counterclaim alleging a "limited area defense" use of its mark. This defense only becomes necessary once a competing mark has reached incontestable status and provides a method for challenging exclusivity of the mark.[5]    Baystate Financial states that there is enough evidence to show that the Bank's mark is *not* incontestable as a matter of law, but at the very least there is a dispute of fact as to this issue. Baystate Financial filed its cancellation counterclaims before the marks became incontestable (Mark registrations allowed in May, 2001 and July, 2002 and October, 2002 and counterclaims filed in January, 2004). Since Baystate Financial Services actually began using the mark in 1983, it is *not* the junior user but the senior user relating to investment and insurance services. Def. 56.1 Stmt. ¶¶16-21; Mulligan Aff., Ex. E, ¶¶9, 14-15. The Bank claims that because it used the name Bay State Savings Bank in reference to banking services that it becomes the first user in connection with all product offerings using any variation of the name "Baystate".    The facts

---

[5] A mark only becomes incontestable when the mark has been registered for five years and an affidavit has been filed with the PTO stating that the mark has been in continuous use for the previous five years in connection with the goods and services listed in the application for registration. 15 U.S.C. §1065. Once this occurs, if a junior user has adopted a mark without knowledge of the registrant's prior use and has been continuously using the mark, it may use the mark in the limited area for which continuous use is proven. See 15 U.S.C § 1115(b)(5); *Thrifty Rent A Car System, Inc. v. Thrift Cars, Inc.*, 639 F. Supp. 750, 755 (1986).

surrounding the validity of the registration and the determination of first use are key issues in this

case and the Bank cannot claim *sua sponte* that it has a valid registration and that therefore the

only defense available to Baystate Financial is a limited use defense. In addition, using the same

evidence currently presented in this motion, this court has already determined in connection with

its preliminary injunction ruling that the first user in the investment and insurance services arena

is Baystate Financial. Def. 56.1 Stmt. ¶25 and Defendant's Memorandum in Support of Motion

for Summary Judgment, pp. 1-2. As a result the court need not look at the other elements of this

claim in denying the motion for summary judgment on this issue.

Even if the court were to look further at the elements of this claim, plaintiffs have

misstated the standard of proof. To prevail on a limited use defense a defendant must show (1)

adoption of the mark without knowledge of registrant's prior use; and (2) an area of continuous

prior use, i.e. the area in which the junior user continuously marketed its services before the

senior user's registration. *Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc.* 639 F. Supp. 750,

755 (1986); 15 U.S.C. 1115(b). There is no requirement that the junior user provide proof of

secondary meaning as alleged by the Bank; and in fact, the Bank cites no supporting authority

for this position.

Since Bay State Savings Bank was not offering non-deposit insurance and investment

products when Baystate Financial adopted its mark in 1983, there was no "use" for which

Baystate needed to be aware. In addition, the fact that Baystate Financial Services obtained a

state registration in 1990 and again in 1997 is evidence of the fact that it was promoting its mark

statewide including western Massachusetts and the city of Worcester. Baystate Financial also

has offices in Maine, New Hampshire and Rhode Island. Mulligan Aff., Ex. D, pp. 53-54.

Although Baystate Financial is headquartered in Boston, its services reach across and outside

Massachusetts through its web-site, radio talk shows, and promotions through trade meetings such as the Boston Life Underwriters Association and CPA Associations.  Mulligan Aff., Ex. D, pp. 58-67; Def. 56.1 Stmt. ¶10.  Baystate Financial has been widely recognized as one of the premier financial services organizations in New England in such publications as Life & Health Advisor, The Boston Globe, Medical Economic and Worth Magazine.

Baystate Financial also used letterhead bearing the name Baystate Financial Services and presented their business under that name in interactions with the public.  Def. 56.1 Stmt. ¶10.  Building a reputable financial services agency is dependent upon personal relationships and these relationships extend throughout the state.  Mulligan Aff., Ex. D, pp. 50-51.  Furthermore, for the first twenty years of operation Baystate Financial Services was the lead producer for New England Financial.  By way of example, in 1986 Baystate Financial produced over $330,000,000 of annual new business credits.   Wilson Affidavit attached as Exhibit 3 to Defendant's Motion for Summary Judgment.  In contrast, Bay State Savings Bank showed only approximately $200,000 worth of revenue related to investment products in 2004 and 2005.   Def. 56.1 Stmt. ¶¶42-44.  There is ample evidence to show that Baystate Financial is a player in all of Massachusetts.  As a result, if Plaintiff is able to prove an incontestable mark and defendant is forced to exercise a limited use defense, sufficient facts exist to allow it to do so. [6]

**D.**    **There is Sufficient Evidence to Create a Dispute of Fact as to the Success of Defendant's Cybersquatting Counterclaim.**

Plaintiff needs to show that there is no dispute of material fact as to whether (1) Baystatefinancial.com is a distinctive mark; (2) that baystateonline.com is identical or confusingly similar to Baystatefinancial.com and that (3) the Bank registered the Bay State Online mark in bad faith.  *Shields v. Zuccarini*, 254 F. 3d 476, 482 (3rd Cir. 2001).

---

[6]  The representations regarding Tom Dupont are addressed in section D of this Brief.

Distinctiveness may be illustrated by showing that the mark has attained secondary meaning. Secondary meaning may be shown by circumstantial evidence which consists of (1) the length and manner of the use of the mark; (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a connection in the mind's eye between a particular product or venture. *Boston Beer Company v. Slesar Bros. Brewing*, 9 F.3d 175, 182 (1st Cir. 1993). As previously discussed, Baystate Financial has used its mark for over twenty years which is much longer than the Bank has used its mark in connection with the insurance and investment services. This length of time is evidence that the mark is distinctive.

Baystate Financial Services has heavily promoted its business and is well know in the public eye. The evidence of this promotion and advertising is discussed in section C above. The bank contends that since Baystate Financial has spent very little money on advertising that there can be no secondary meaning. However, in terms of advertising, "it is not the amount of money spent on advertising that is important, but the results achieved with the money spent." *Bank of Texas*, 741 F.2d at 788. Companies providing investment advice and services to individuals and businesses are built on personal relationships not newspaper advertising and Baystate Financial is not different in that regard. The volume of business alone which is in the hundreds of millions of dollars should be evidence of secondary meaning.

Plaintiff attempts to create a dispute of fact by stating that Baystate Financial's expert Tom Dupont testified that there was no secondary meaning in the Baystate Financial mark. This is a mischaracterization of the testimony. Mr. Dupont did not testify that Baystate Financial Services has not acquired secondary meaning but that *his survey was not designed to test any secondary meaning of the Baystate Financial Services mark* nor did he have any opinion on

whether the Baystate Financial Services mark had achieved secondary meaning. *See* Response to Fact 34 setting out verbatim Dupont's Testimony at Plaintiff's Ex. 27, p. 27.

Finally regarding the intent of bad faith on the part of the Bank we only need show that the Bank was aware of the fact that it was not the superior user of the term "Baystate" in connection with the offering of investment and insurance products. The Bank knew of Baystate Financial Services prior to the time it filed its trademark registrations. Mulligan Aff., Ex. F, p. 113. This knowledge of the existence of Baystate Financial coupled with the evidence of fraudulent intent on the trademark registrations raises enough of a dispute of fact in connection with the domain name registration to cause the court to deny the Bank's motion for summary judgment on this claim.

E.  **There is Sufficient Evidence to Create A Dispute of Fact as to Plaintiff's Allegations that Baystate Cannot Show Continuous Use of the Mark Prior to May 1, 1997.**

Baystate Financial relies for the most part on the argument in its Memorandum in Support of its Motion for Summary Judgment which sets out in detail the factual basis for Baystate Financial's claim of first use in the field of investment and insurance services. See Memorandum at pp. 3-10 filed with court on May 8, 2006. Baystate takes the opportunity here, however to address two specific points raised in this section of the Bank's Memorandum. First, the Bank claims that because the state registration for Baystate Financial Services indicates that it first used the name Baystate Financial on May 1, 1997, it is precluded from relying on the actual factual evidence that shows there was continuous use of the name from 1983 to the present. This is not the case. *See McCarthy* on Trademarks at 20:28 (4th ed. 2006) (Introduction of evidence showing earlier use than stated in application may be submitted in opposition proceeding.). In fact, Baystate Financial has offered evidence to show that May 1, 1997 was not

the date of first use of the mark. David Porter testified that the date on the application was erroneous and that there was continued use by Porter, his predecessor and successor agencies of the mark. Def. 56.1 Stmt. ¶¶3-21; Mulligan Aff., Ex. E, ¶1-10.

The Bank also argues that because the 1990 state registrations filed by Baystate Financial LLC's predecessor agency expired in 2000, that all rights were lost. Again, this argument fails to take into account the common law priority derived from use. There is ample evidence in the record to create a dispute of fact that Baystate Financial and its predecessor companies have in fact been continuously using the mark since 1983.

The Bank's argument that the "Wilson Agency" purported to retroactively assign the expired registration to New England Life in 2003 is also wrong. In 2003, Wilson prepared and signed a confirmatory assignment which outlined the terms of the transfer which had taken place between Wilson and New England Life in 1996. Wilson Aff., Ex. D, filed as Ex. 3 to Defendant's Motion for Summary Judgment. The deposition testimony of David Porter and his Affidavit filed in connection with Baystate Financial's Opposition to Preliminary Injunction state that Porter did receive a transfer of the trademark from New England Financial. Mulligan Aff., Ex. E, ¶¶ 9, 14-15. This, in the very least creates a dispute of fact with the representations made by plaintiff. Therefore, there is sufficient evidence to create a dispute of fact as to the continuing use of the mark.

F.    **The Bank's Assertion that Confusion has Been Established as a Matter of Law is Incorrect and In Any Event the Court Cannot Decide Singular Issues on Summary Judgment; It Must Review Entire Claims.**

Baystate Financial alleges as part of an element of its counterclaims that if Baystate Bank is allowed to associate its marks with the products of investment and insurance services that customers will not be able to distinguish between the Baystate marks associated with Baystate

Financial's long-standing and highly regarded financial services business and the Bank's marks representing the Bank's neophyte financial services offerings. Baystate Financial alleges that the confusion would be to the detriment of Baystate Financial Services, not the Bank. These are allegations in the Complaint not judicial admissions. If the court allows summary judgment on this issue – then it has ruled as a matter of law that there is no confusion between the marks and neither party gets the benefit of determining this issue at trial. But granting summary judgment does not in any way resolve the issue in favor of the Bank. Since this court has already determined that Baystate Financial Services is the first user in the realm of investment and financial services, the analysis needs to be whether Baystate Financial's customers are confused by Baystate Investment Services or Baystate Savings Bank. The Bank has not put forth any evidence to show that there is no dispute of fact as to the confusion of Baystate Financial's customers.

## IV.    CONCLUSION

In light of the above arguments, the disputes of fact cited in this Opposition, Baystate Financial's Response to Plaintiff's Statement of Facts, Baystate Financial's 56.1 Statement of Facts filed with its Motion for Summary Judgment and the Motions to Strike filed herewith; Baystate Financial respectfully requests that the court deny the Bank's motion in its entirety.

The Defendant,
BAYSTATE FINANCIAL SERVICES, LLC.,
By its attorneys,

_____ Maureen Mulligan _____
Christopher P. Litterio (BBO #551098)
Maureen Mulligan (BBO#556482)
RUBERTO, ISRAEL & WEINER, P.C.
100 North Washington Street
Boston, Massachusetts 02114
(617) 742-4200

Dated: June 7, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the attorney of record for plaintiff, James Donnelly, Esquire, Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, Massachusetts, 01608-1477  via mail and/or electronic service on June 7, 2006.

Maureen Mulligan

U:\MSM\Baystate Financial\pleadings\Defendant Opposition to MSJ.doc