UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BAY STATE SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:03-cv-40273-FDS |
| | ) | |
| BAYSTATE FINANCIAL | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SECOND AFFIDAVIT OF MAUREEN MULLIGAN IN SUPPORT OF MOTION TO STRIKE EXPERT AFFIDAVITS OF (1) GERRY BLODGETT, (2) KELLY MYERS AND 1999 AND 2001 IMAGE AND POSITIONING SURVEYS

I, Maureen Mulligan under oath hereby depose and state as follows:

1.    Attached as Exhibit A are true and accurate copies of the following pages from the deposition transcript of Kelly Myers: pages 94, 71-72, 149.

Signed under the pains and penalties of perjury this 7th day of June, 2006.

_____
Maureen Mulligan

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the attorney of record for plaintiff, James Donnelly, Esquire, Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, Massachusetts, 01608-1477 via mail and/or electronic service on June 7, 2006.

_____
Maureen Mulligan

# EXHIBIT A

71

1       A.    I don't believe that I do, but I may if it

2    came as an e-mail attachment.

3       Q.    Do you recall any conversations that you

4    had with anyone at Mirick, O'Connell regarding the

5    drafting of your affidavit?

6       A.    I do not recall specific conversations.  I

7    recall -- I know that I had a couple conversations

8    with Ann Marie.

9       Q.    And is Ann Marie the only person you dealt

10   with at Mirick, O'Connell in connection with the

11   drafting of your affidavit?

12      A.    I believe so.

13      Q.    Sticking with paragraph 7, in the last

14   sentence, in the last sentence of the main paragraph

15   before you get to the subsections, there's a

16   sentence.   "The survey shows that the Bay State mark

17   is widely recognized and highly regarded."

18      A.    Yes.

19      Q.    When you referring refer to the Bay State

20   mark, what exactly are you referring to?

21      A.    The term "Bay State mark" would not have

22   been my language.

23      Q.    Is that language that was provided to you

24   by Mirick, O'Connell?

1   A.   I believe it would be.  I do not believe

2   that was my language.

3   Q.   Do you have any understanding of the

4   definition of a trademark?

5   A.   I have a general understanding of a

6   trademark.

7   Q.   And what is that understanding?

8   A.   My understanding is that a private entity

9   can establish a trademark name that is protected by

10  law from others using it to their advantage or to

11  their interest.

12  Q.   And even though the language "Bay State

13  mark" is not something that you chose, what is your

14  understanding of what "Bay State mark" refers to?

15  A.   My understanding of what "Bay State mark"

16  refers to is either Bay State Savings Bank or the

17  Bay State name.

18  Q.   Where did you get that understanding?

19  A.   That's based on my marketing background.

20  Q.   So this is a conclusion that you came to on

21  your own, not through communications with either the

22  bank or Mirick, O'Connell?

23  A.   That's correct.

24  Q.   Prior to the time that you were contacted

FARMER ARSENAULT BROCK LLC

94

1    responding to a marketing department indicating or

2    trying to communicate to Bay State Savings Bank the

3    need to improve their advertising.

4         Q.   So the use of this survey is for marketing

5    purposes?

6         A.   Absolutely.  The original intended purpose

7    was to understand their marketing opportunities and

8    their competitive position in the marketplace.

9         Q.   Go back to your affidavit, please, which is

10   Exhibit No. 61.

11        A.   Okay.

12        Q.   We're still on that old paragraph 7.

13        A.   Okay.

14        Q.   Look at 7E, please.  Would you just read

15   that to yourself, paragraph 7E.

16        A.   Do you want me to read it out loud?

17        Q.   No.  Just read it to yourself.  I want to

18   ask you a question about it.

19        A.   (Witness reviewing document)  Okay.

20        Q.   This paragraph 7E, does it distinguish

21   where the Bay State customers use the particular

22   services that are referenced in that paragraph?

23        A.   What do you mean, "where"?

24        Q.   Paragraph 7E doesn't assume that Bay State

1       Q.   Do you believe that your 1999 or 2001

2  surveys are informative in any way to the trademark

3  dispute?

4       A.   I am not qualified to speak about trademark

5  issues.  It's just not my area of expertise.  But I

6  think the surveys are a reliable look at what the

7  marketplace was thinking at the time that both of

8  the surveys were taking place.  So I think they're

9  an accurate read about awareness of reputation of

10 Bay State Savings Bank at the time the two surveys

11 were conducted.

12      Q.   I understand that you haven't read

13 Mr. Klein's expert report, but did you have any

14 conversations with anyone regarding his comments on

15 your survey in his report?

16      A.   No, I haven't.

17      Q.   In your expert report, you say that you

18 have provided written and oral testimony on behalf

19 of Comcast.  In what capacity were you providing

20 testimony to Comcast?

21      A.   Comcast, they have to go through a renewal

22 process with every community where they offer cable

23 services.  And the community will give them -- will

24 grant them a license agreement.  So they negotiate a

FARMER ARSENAULT BROCK LLC