UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAY STATE SAVINGS BANK,<br>        Plaintiff<br><br>        V.<br><br>BAYSTATE FINANCIAL SERVICES, LLC,<br>        Defendant | CIVIL ACTION NO. 4:03-CV-40273-NMG |

**BAY STATE SAVINGS BANK'S OPPOSITION TO
MOTION TO STRIKE PORTIONS OF THE ROBERT LEWIS AFFIDAVITS**

Bay State Savings Bank ("Bay State®", or the "Bank") opposes the Motion of Baystate Financial Services, LLC ("Baystate Financial") to Strike portions of the Lewis Affidavit.[1] Contrary to Baystate Financial's assertions, Mr. Lewis is competent to testify to all statements in his Affidavits and made the statements upon personal knowledge of facts that are admissible in a court of law.  Mass. R. Civ. P. 56(e).  The Lewis Affidavits should not be stricken and may be relied upon by the Court.  The following is a paragraph-by-paragraph response to Baystate Financial's position in its motion to strike:

**I.     Affidavit of Robert J. Lewis, March 24, 2004**

Paragraph 5:  This paragraph does not conflict with Mr. Lewis' deposition testimony on the topic of the sale of stocks, bonds and mutual funds beginning in 1994.  As stated in his Affidavit, and the accompanying footnote, Bay State® entered into an arrangement with FISCO to sell stocks, bonds and mutual funds from the bank's premises.  Further, as is more specifically

---

[1] On March 24, 2004, Robert J. Lewis, President and CEO of Bay State® submitted his first Affidavit in support of Bay State®'s motion for Preliminary Injunction.  Baystate Financial did not move to strike Mr. Lewis' Affidavit in 2004 or at any other time until the present Motion for Summary Judgment was filed.  On May 3, 2006, Robert J. Lewis submitted his second Affidavit in this case in support of Bay State®'s Motion for Partial Summary Judgment.  Both Affidavits were signed under the pains and penalties of perjury.

stated in the Second Affidavit of Robert J. Lewis, paragraphs 10 and 11, the relationship between Bay State® and FISCO lasted from 1994 until late 1998. When that arrangement terminated in 1998, Bay State® undertook due diligence to find an appropriate replacement. The Bank entered into a new relationship with a different broker/dealer named INFINEX in January, 2000. During the interim between FISCO and INFINEX, the Bank continued to sell a range of other financial products and services including savings bonds, insurance, retirement and educational savings plans, and financial planning services. The only service not available in the interim from late 1998 to January 2001 was the sale of stocks and bonds. The deposition testimony cited by Baystate Financial in no way contradicts Mr. Lewis' Affidavits and in fact, supports it.

<u>Paragraphs 12, 13 and 14:</u>  These paragraphs describe surveys that the Bank commissioned in 1999 and 2001. The surveys were conducted and reports drafted by The Marketing Mix, Inc. and/or RKM Research and Communications, Inc., which specialize in custom-designed quantitative and qualitative consumer research services. The surveys were intended to guide the Bank's marketing efforts, and were used and relied on to improve marketing and service to customers. Bay State® obtained and kept the survey reports in the course of a regularly conducted business activity. The written reports are included in the record. They are admissible as business records because they were produced and maintained in the ordinary course of business. Fed. R. Evid. Rule 801(6); Third Affidavit of Robert J. Lewis, ¶¶ 3-7. The surveys meet the appropriate scientific standards and are attested to by Bay State®'s experts, Kelly Meyers and Robert Klein. The statistics referenced in the surveys are probative of the issues in this case. Mr. Lewis merely summarizes the statistical information contained in the surveys. His understanding of the surveys is relevant to his state of mind during the trademark application process.

Paragraph 17:  This paragraph is not conclusory.  Mr. Lewis hired Gerry A. Blodgett to prosecute trademark registrations on Bay State®'s behalf.  Mr. Lewis has personal knowledge that Mr. Blodgett specializes in intellectual property law, including trademarks, and is licensed to practice before the PTO.  The chart depicted in paragraph 17 illustrates the individual trademarks, dates of first use, federal registrations, state registrations and descriptions of services listed in each registration.  The relevant documents, including the PTO "file wrapper" for each registration, are included in the exhibits, which are cited in the Affidavit.  These facts were personally known by Mr. Lewis or based on business records that the Bank has kept in the ordinary course of business, and were properly included in his Affidavit.

Paragraph 22:  The information contained in paragraph 22 is made upon the personal knowledge of Mr. Lewis.  First, Mr. Lewis has personal knowledge of Baystate Financial's state Registration dated May 2, 1997, where Baystate Financial states under oath to the Secretary of State that it first used the Mark on May 1, 1997.  Second, Mr. Lewis has personal knowledge of the 1990 registration from Baystate Financial's alleged predecessor-in-interest.  The exhibits concerning that registration, including a letter to Baystate Financial's alleged predecessor from the attorney who obtained the registration, show that the mark would expire unless it was renewed within ten years of the date it issued.  Third Affidavit of Robert J. Lewis, ¶ 7.  In any event, the information in paragraph 22 is corroborated in exhibits whose authenticity is not disputed.

Paragraph 25:  This paragraph describes Baystate Financial's advertising including of a radio show, direct mail, the internet and advertising through affiliate banks.  Mr. Lewis has personal knowledge of all of these advertising outlets because he has seen or heard them.  At

least one of the direct mail solicitations was personally addressed to Mr. Lewis.  The radio show is broadcast daily, and is a matter of public record.  So is the internet information.

Paragraph 28:  This paragraph is not argumentative.  It describes an uncontested fact.  Mr. Lewis has read Baystate Financial's Answer and Counterclaim (which constitutes a judicial admission) and accurately quotes the pleading in his Affidavit.

Paragraph 29:  This paragraph summarizes evidence that Mr. Lewis draws to the Court's attention.  It is supported with citations to other portions of the record.  There is no reason to strike it, especially considering that each fact is appropriately supported with a citation to the evidence.

**II.     Second Affidavit of Robert J. Lewis**

Paragraph 3:  This paragraph describes Mr. Lewis' own state of mind.  It is relevant to Baystate Financial's counterclaim for fraud on the PTO.  Mr. Lewis' testimony on this point is admissible to show that his declarations in support of the Bank's trademark Applications were made in good faith and were true to the best of his knowledge.

Paragraph 4:  This paragraph describes Mr. Lewis's own state of mind, which is relevant and plainly admissible under the circumstances.

Paragraph 5:  This paragraph describes Mr. Lewis' own state of mind, which is relevant and plainly admissible under the circumstances.

Paragraph 9:  This paragraph describes Mr. Lewis' own state of mind, which is relevant and plainly admissible under the circumstances.

Paragraph 19:  The first statement that Baystate Financial seeks to strike, "the domain names were registered in good faith to identify a source of services," expresses subjective good faith.  Mr. Lewis' state of mind is relevant to an analysis of the issues.  He has personal knowledge, and the statement should not be stricken.  The second statement that Baystate

Financial seeks to strike, "the bank has received no inappropriate economic benefit at the expense of Baystate Financial from its domain name registrations, and had no improper intent" is also appropriate. It expresses Mr. Lewis' state of mind at the time of registration and is relevant to Baystate Financial's allegation of fraud. It attests that, to the best of its knowledge, the Bank has *not* received a profit at Baystate Financial's expense. It is sufficient under Fed. R. Civ. P. 56 to shift the burden to Baystate Financial to show that the Bank had improper motives and intended to (or did in fact) receive some improper benefit from the domain name registration. Baystate Financial has failed to offer any such evidence.

BAY STATE SAVINGS BANK

By its attorneys,

/s/ John T. McInnes
James C. Donnelly, Jr., Esq.
BBO #129700
John T. McInnes, Esq.
BBO # 657488
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: June 21, 2006

## CERTIFICATE OF SERVICE

I, John T. McInnes, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on Christopher P. Litterio, Esq., Ruberto Israel & Weiner, PC, 100 North Washington Street, Boston, MA 02114.

/s/ John T. McInnes
John T. McInnes, Esq.

Dated: June 21, 2006