UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

BAY STATE SAVINGS BANK,
    Plaintiff

    V.

BAYSTATE FINANCIAL SERVICES, LLC,
    Defendant

CIVIL ACTION NO. 4:03-CV-40273-NMG

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION TO STRIKE EXPERT REPORT OF ROBERT L. KLEIN

Bay State Savings Bank ("Bay State®", or the "Bank") opposes the Motion of Baystate

Financial Services, LLC ("Baystate Financial") to Strike Expert Report of Robert L. Klein dated

January 9, 2006 (the "Report").  The Report has been properly authenticated and comports with

the procedural and evidentiary standards set by Federal Rule of Evidence 702 and Daubert vs.

Merrill Dow Pharmaceuticals, Inc., 113 S. Ct. 278 (1993).

A.    The Report Is Properly Before the Court.

Baystate Financial erroneously claims that expert testimony may only be introduced into the

summary judgment record through an affidavit, and if no such affidavit is submitted, the

testimony should be stricken.  Fed R. Civ. P. 56(e) does not state that an affidavit is the *only*

method of admitting expert testimony.   Sworn deposition testimony can serve the same purpose.

Baystate Financial cites Duplantis v. Shell Offshore, Inc., 948 F.2$^d$ 187, 191 (5th cir. 1991) to

support its position; however, Duplantis favors Bay State®.   Duplantis refused to consider a

letter drafted by the plaintiff's expert witness because it was attached to the summary judgment opposition without first being sworn, and offered no indication as to the drafter's expertise. Id. However, the court also noted that if the plaintiff's expert letter had been disclosed prior to filing its summary judgment motion, and if its contents satisfied the requirements for expert testimony, the court would have considered the opinion. Id.

In contrast to Duplantis, Bay State® produced the Report on the date specified in the scheduling order. Baystate Financial marked the report at Mr. Klein's deposition. He testified that he prepared it, and that it accurately described his work and opinions. Counsel for Baystate Financial conducted several hours of cross-examination, mainly concerning the contents of the report. Excerpts from the deposition of Robert L. Klein attached hereto as **Exhibit A**. Mr. Klein also authenticates his Report in his Affidavit attached hereto as **Exhibit B**. It complies with Rule 56 and is properly before the Court.

B.    Klein's Secondary Meaning Survey Applies Reliable Principles
      and Methods to the Facts of the Case.

Baystate Financial challenges Mr. Klein's secondary meaning survey based on the assertion that respondents who identified "Bay State Bank" with the Bay State® marks might have been referring to Bay State Federal Savings Bank ("Bay State Federal") – an institution that was formerly located in Brookline and which ceased to use the "Bay State" name several years ago. It is not a viable argument. Bay State Federal only conducted business in the Brookline area, and never promoted itself in Central Massachusetts. Brookline is over 40 miles away from any Bay State® branch. In an affidavit submitted to this Court several years ago, it denied that it had any meaningful presence or name recognition in the greater Worcester area. See Ex. 59.

Mr. Klein's secondary meaning survey selected respondents who live or work within approximately 10 miles of Worcester. There is no evidence that survey respondents in that area were ever exposed to Bay State Federal. Moreover, Bay State Federal stopped using the Bay State name several years prior to the survey. Baystate Financial conducted its own survey, through Thomas Dupont. It has failed to offer even a shred of evidence that any consumers in the survey area confused the Bank with Bay State Federal.

Baystate Financial also argues that, in the interpretation of survey responses, "Bay State Bank" should not be attributed to Bay State® because the Bank did not refer to itself as "Bay State Bank." This argument has no merit. Simply because Bay State® did not refer to itself as "Bay State Bank" does not mean that its customers and potential customers do not commonly refer to it as "Bay State Bank." According to CALLMANN ON UNFAIR COMPETITION, §20.29 at fn. 77-82 (4th Ed., current through Spring 2006 supplement)(citations omitted):

> If the public calls for a product by some term other than its formal name or trademark, and the resulting "nickname" is sufficiently distinctive, it may spontaneously become a trade identity symbol entitled to protection.
>
> … It may be asked what minimum use the owner of the trademark must make of the popular nickname before he can protest its use by rivals. The answer is "none;" the public's use is a sufficient substitute for the trademark owner's use.

Bay State®'s president and CEO, Robert Lewis, testified that Bay State Savings Bank is often referred to as "Bay State Bank." His testimony is corroborated by various exhibits that illustrate the public's use of "Bay State Bank" to refer to Bay State®. Lewis Affidavit ¶11, Exhibit 8[1]. Baystate Financial offers no evidence at all to dispute Mr. Lewis' testimony.

---

[1]     Referred exhibits are in support of Bay State®'s Motion for Partial Summary Judgment.

Finally, Baystate Financial argues that the Report does not specifically measure secondary meaning with regard to the Bay State Financial Services® mark. This overlooks the fact that Bay State® did not begin to use the Baystate Financial Services® mark until the PTO issued a federal registration in 2002, at which point it began to market and sell its financial services under that mark. See Ex. 11. But the issues of seniority and secondary meaning do not depend solely on use or public recognition of Bay State Financial Services® in isolation from other Bay State® marks. Bay State® had been marketing and selling financial services and products under the Bay State® and Bay State Savings Bank® marks since 1895. It had already registered Bay State® and Bay State Savings Bank® for a broad range of banking and financial services in International Class 36. The survey measures secondary meaning in the context of all the Bay State® marks, which is the issue at hand for summary judgment. In fact, Mr. Dupont's testimony and report show that the Bay State® marks have attained 75% of the name recognition of Merrill Lynch, a company that Mr. Dupont considers the most famous of all financial service providers. See Bay State®'s Opposition to Summary Judgment, p. 9. The entire Report is relevant and admissible.

CONCLUSION

For the foregoing reasons, the Court should deny Baystate Financial's Motion to Strike

the Expert Report of Robert L. Klein.

BAY STATE SAVINGS BANK

By its attorneys,


/s/ John T. McInnes
_____
James C. Donnelly, Jr., Esq.
BBO #129700
John T. McInnes, Esq.
BBO # 657488
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: June 30, 2006

CERTIFICATE OF SERVICE

I, John T. McInnes, hereby certify that this document(s), filed through the ECF system
will be sent electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on
Christopher P. Litterio, Esq., Ruberto Israel & Weiner, PC, 100 North Washington Street,
Boston, MA 02114.

/s/ John T. McInnes
_____
John T. McInnes, Esq.

Dated:  June 30, 2006