Volume 1, Pages 1-106

Exhibits: 55-59

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

BAY STATE SAVINGS BANK,

    Plaintiff

v.              Docket No. 4:03-cv-40273-FDS

BAYSTATE FINANCIAL SERVICES, LLC,

    Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF ROBERT L. KLEIN

Tuesday, February 7, 2006, 10:08 a.m.

Ruberto, Israel & Weiner, P.C.

100 North Washington Street

Boston, Massachusetts

----Reporter: Kathleen Mullen Silva, RPR, CRR----

ksilva@fabreporters.com   www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   fax 617.728.4403

Robert L. Klein
Volume 1 - February 7, 2006

APPEARANCES:
  Mirick, O'Connell, DeMallie & Lougee, LLP
  James C. Donnelly, Jr., Esq.
  100 Front Street
  Worcester, Massachusetts 01608-1477
  508.791.8500  Fax: 508.791.8502
  jcdonnelly@modl.com
  for Plaintiff

  Ruberto, Israel & Weiner, P.C.

  Maureen Mulligan, Esq.

  100 North Washington Street

  Boston, Massachusetts 02114-2128

  617.742.4200  Fax: 617.742.2355

  msm@riw.com

  for Defendant

PROCEEDINGS
    MR. DONNELLY: Usual stipulations?
    MS. MULLIGAN: Read and sign, we'll waive the notary.
        ROBERT L. KLEIN, sworn
        EXAMINATION
BY MS. MULLIGAN:
  Q. Good morning, Mr. Klein.
  A. Good morning.
  Q. I'm Maureen Mulligan, and I'm going to be asking you some questions regarding the expert report that you've submitted in this case. Let's just get started with some housekeeping matters. Can you give your full name for the record, please.
  A. Yes. Robert L. Klein, K-l-e-i-n.
  Q. Where are you currently employed?
  A. At Applied Marketing Science in Waltham, Massachusetts.
        MS. MULLIGAN: Let's mark your report as an exhibit, so we know that we're talking about the same document.
        (Marked, Exhibit 55, expert report.)
        MS. MULLIGAN: So we've marked as Exhibit No. 55 the report of Robert Klein that's

1  been submitted in this matter.
2    Q. Is Exhibit No. 55, Mr. Klein, a copy of the
3  report that you submitted in this case?
4    A. It appears to be. It's really a copy of a
5  faxed version of it, but it appears to be a complete
6  copy, yes.
7    Q. Do you have any reason to believe -- is
8  there anything missing?
9    A. No, but I -- you know, it doesn't have the
10 tabs and stuff like that, so I'll accept your
11 assurance that it's complete.
12   Q. I don't think I got a copy with the tabs,
13 but that's what I received from Mr. Donnelly.
14     Who contacted you to engage you to
15 prepare this report?
16   A. Mr. Donnelly.
17   Q. And what was the date that he retained you?
18   A. I believe it was in October of 2004.
19   Q. What were you retained to do?
20   A. I was asked to prepare a survey and conduct
21 and analyze a survey that would measure the extent
22 to which there would be confusion between the Bay
23 State Savings Bank and BayState Financial
24 Corporation.

1    Q. Were you given any further instructions,
2  other than that brief overview?
3    A. I was given some background on the case and
4  the dispute, but I'm not sure what you mean by
5  "instructions."
6    Q. Other than asking you to survey and measure
7  the extent to which there was confusion between Bay
8  State Savings Bank and BayState Financial Services,
9  were you given any other instructions regarding
10 design of the survey?
11   A. Not of that survey, no.
12   Q. And the survey we're talking about here,
13 when you say "not of that survey," you mean the
14 likelihood of confusion survey?
15   A. That's correct.
16   Q. So sticking with the likelihood of
17 confusion survey, in connection with the design of
18 that survey, did you review any documents?
19   A. Yes, I did.
20   Q. And what documents did you review?
21   A. I reviewed various pleadings in the case,
22 examples of BayState Financial's advertising. I
23 reviewed the awareness and positioning studies that
24 had been conducted for Bay State Savings Bank in

Robert L. Klein
Volume 1 - February 7, 2006

**Page 62**

1  situation. So I guess I'm --
2  Q. So based on that, does the identification
3  of one party or another as a senior or junior user
4  impact at all on the methodology used for designing
5  your survey?
6  A. No. And I think as I said, the extent to
7  which the words "Bay State" are associated with Bay
8  State Savings Bank is properly measured among the
9  potential customers and the segments served by Bay
10 State Savings Bank, and whether they're the junior
11 or senior user, you know, isn't, I think, the issue
12 here.
13 Q. In the secondary meaning survey?
14 A. Yes.
15 Q. Was there a pretest done in the secondary
16 meaning survey like there was in the likelihood of
17 confusion survey?
18 A. Yes.
19 Q. And were the questions ultimately asked to
20 respondents changed in any way based on the
21 information you received in the pretest?
22 A. I believe that we did some, you know, minor
23 word changes because there were concerns that people
24 weren't kind of sort of understanding the question,

**Page 63**

1  and so I think -- so we added this phrase "when you
2  hear the words Bay State" as opposed to something
3  about just "Bay State," as opposed to the words "Bay
4  State." But I don't think there were any other
5  substantive changes.
6  Q. Are the pretest questions attached to your
7  report that we've marked as an exhibit?
8  A. No.
9  Q. Have those been provided to Mr. Donnelly?
10 A. Probably not. I mean, they didn't exist as
11 a -- you know, as you know, this was a telephone
12 survey, so there wasn't any paper documents
13 involved. These were programmed into a computer,
14 and the computer then kind of put on the screen what
15 questions the respondents would answer.
16 Q. Do you have in your office, either
17 electronically or otherwise, information that shows
18 what your pretest questions were?
19 A. I'm not sure.
20 Q. Is it your practice to normally destroy the
21 pretest documents once you've completed a pretest?
22 A. No, but as I said, there weren't, you know,
23 documents in that case. I mean, there's sort of a
24 draft of a questionnaire and, you know, as we would

**Page 64**

1  make changes to the questionnaire, we would
2  overwrite the earlier version.
3      MS. MULLIGAN: Jim, I am going to ask
4  you to see if Mr. Klein has any versions of the
5  pretest questions, and I'd like to see them.
6      MR. DONNELLY: Sure. Yes.
7  Q. Since you produced this report on January
8  9, 2006, have you done any further analysis on the
9  secondary meaning issue?
10 A. No.
11 Q. Does the report that you issued on January
12 9, 2006 reflect the complete analysis of your
13 opinion regarding secondary meaning?
14 A. Yes.
15 Q. Have you revised the analysis at all
16 regarding secondary meaning since the production of
17 this report?
18 A. I think I answered that already, but no.
19 Q. In connection with your development of the
20 survey on secondary meaning, was there any line of
21 analysis that you were asked not to pursue?
22 A. No.
23 Q. Are there any industry publications or
24 treatises that support the manner in which you've

**Page 65**

1  designed your secondary meaning survey?
2  A. I believe so, yes.
3  Q. And what would those be?
4  A. Various articles by Paladino in Trademark
5  Reporter on surveying secondary meaning, and I think
6  also the McCarthy.
7  Q. And Paladino is P-a-l-a-d-i-n-o?
8  A. I believe so. Maybe two Ls.
9  Q. Does your report that was issued on January
10 9, 2006 contain a complete statement of all the
11 bases and reasons for your opinion?
12 A. I believe so, yes.
13 Q. And sitting here today, is there anything
14 in your opinion on secondary meaning that you would
15 like to revise?
16 A. No.
17 Q. Now, let's turn to the section on
18 likelihood of confusion in your report. Could you
19 turn to page 3 of the report, please?
20 A. Mm-hmm.
21 Q. I'm focusing on the section of confusion
22 survey design. You state that the proper population
23 for assessing confusion is the potential customer
24 base of BayState Financial within Bay State Savings