UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BAY STATE SAVINGS BANK, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim-Defendant, | ) | Civil Action No. |
| | ) | 03-40273-FDS |
| v. | ) | |
| | ) | |
| BAYSTATE FINANCIAL SERVICES, LLC, | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim-Plaintiff. | ) | |

## MEMORANDUM AND ORDER ON MOTIONS TO STRIKE

**SAYLOR, J.**

This is a trademark infringement case concerning the use of the mark "Bay State" for banking and insurance and investment services. Plaintiff Bay State Savings Bank filed a complaint against defendant Baystate Financial Services, LLC alleging multiple violations of federal trademark law, state trademark law, and Mass. Gen. Laws ch. 93A, § 11. Defendant has counterclaimed on similar legal theories, with the addition of a claim for common-law unfair competition and claims alleging that plaintiff procured its registrations by fraud.

Both parties have moved for summary judgment. In addition, they have filed multiple motions to strike affidavits and survey reports submitted in connection with the summary judgment motions. This memorandum will address the parties' motions to strike. Defendant's motion for summary judgment and plaintiff's motion for partial summary judgment will be addressed in a separate opinion.[1]

---

[1] For a discussion of the facts of this case, see the Memorandum and Order on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment filed herewith.

I.  **Introduction**

As a general matter, only evidence that would be admissible at trial may be considered by the court on summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990). Under Rule 56(e), affidavits—although not themselves admissible at trial—may be offered in support of, or opposition to, summary judgment if they set forth facts that would be admissible under the Federal Rules of Evidence. *See id.* A motion to strike is the proper vehicle for challenging the admissibility of evidence offered at summary judgment. *See Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994). The moving party must specify the objectionable portions of the opposing party's summary judgment materials along with the grounds for objection. *Id.* The court should disregard only those facts that are inadmissible and consider the rest of the parties' evidence. *Id.*

II. **Defendant's Motions to Strike**

Defendant has filed motions to strike, in part or in whole, the affidavits of three individuals: Kelly Myers, Gerry Blodgett, and Robert Lewis. Defendant has also moved to strike image and positioning surveys conducted by Myers as well as expert reports prepared by Robert Klein.[2] The court will consider each issue in turn.

    A.    **Affidavit of Kelly Myers and His Image and Positioning Surveys**

First, defendant moves to strike the affidavit of Kelly Myers, the principal of a marketing

---

[2] Plaintiff submitted the two surveys and the affidavits of Myers, Blodgett, and Lewis in support of both its Opposition to Defendant's Motion for Summary Judgment and its own Motion for Partial Summary Judgment. Defendant moved to strike the surveys and affidavits both times that they were submitted and plaintiff opposed defendant's motions both times. The Court notes that an affidavit submitted to support one motion may be taken into account on another summary judgment motion. Therefore, filing the affidavits more than once was unnecessary. *See Chan Wing Cheung v. Hamilton,* 298 F.2d 459 (1st Cir. 1962). The Court will consider the duplicative motions and oppositions at the same time.

and communications research firm, and two "Image and Positioning Surveys" he conducted for plaintiff in 1999 and 2001. According to the affidavit, "[t]he purpose of the surveys was to determine how the bank was perceived by customers, and by members of the general public who were not customers of the bank" and the surveys "were not related to this lawsuit." Myers describes how the surveys were conducted and what their results were; he then opines that "the Bay State mark is widely recognized and highly regarded."

Defendant seeks to strike Myers's affidavit because he is "not qualified to testify about trademark issues." Defendant further seeks to strike the actual surveys, contending that the surveys "have no plausible relationship to the analysis of secondary meaning in this case."

Consumer surveys are plainly relevant in trademark disputes such as this. *See, e.g., Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 182 (1st Cir. 1993). The basic question with regard to Myers' affidavit is not whether he is qualified to provide an opinion on the merits of the parties' trademark claims, but whether he is qualified to conduct public opinion surveys. Myers's background suggests that he is competent to conduct such surveys and that he has personal knowledge of the surveys at issue. Myers does not purport to make conclusions about the parties' trademark claims and the Court can accept or reject the conclusions he makes about the survey data as it sees fit. Likewise, the Court can accept the survey data insofar as it has bearing on the matters at issue in this case.

For these reasons, defendant's motions to strike Myers's affidavit and the image and positioning surveys will be denied.

### B. Affidavit of Gerry Blodgett

Second, defendant moves to strike the affidavit of Gerry Blodgett. Blodgett is an attorney

who provided plaintiff with advice on trademark issues, prepared trademark applications and other supporting documents for plaintiff, and represented plaintiff in proceedings with the Massachusetts Secretary of State and the United States Patent and Trademark Office. Blodgett's affidavit first outlines the trademark registrations that he helped obtain for plaintiff. He then opines on various legal subjects, including opinions that plaintiff is the common-law owner of the "Bay State" marks; that defendant is a subsequent user and not the owner of the marks; that plaintiff's registrations are valid and were not procured by fraud; and that defendant's registration is invalid and subject to cancellation. Defendant seeks to strike Blodgett's affidavit, describing it as a "thinly disguised attempt" to submit an expert legal opinion on the ultimate issues before the Court.

To the extent that Blodgett's affidavit discusses factual issues, such as how and when plaintiff obtained its trademark registrations, it will not be struck. However, Blodgett "cannot give [his] opinion on the legal standards applicable to this case or the results of [his] legal research as they apply to the ultimate issue of trademark infringement." *Sam's Wine & Liquors, Inc. v. Wal-Mart Stores, Inc.*, 1994 WL 529331, *9 (N.D. Ill. 1994). *See also Ideal World Marketing, Inc. v. Duracell, Inc.*, 15 F. Supp. 2d 239, 244 n.2 (E.D.N.Y. 1998) (concluding that trademark expert's legal conclusion on the facts before the Court "impinges upon the Court's role, would be inadmissible at trial, and is of no probative value on this motion"); *Larsen v. Ortega*, 816 F. Supp. 97, 105 n. 11 (D. Conn. 1992). Accordingly, to the extent defendant's motion seeks to strike the Blodgett affidavit, it will be granted in part and denied in part.

### C.  Affidavit of Robert Lewis

Third, defendant moves to strike portions of two affidavits submitted by Robert Lewis, the president and chief executive officer of the bank. In the affidavits, Lewis describes the history of the bank, its current business, its advertising strategy, its trademark registration, and the use by defendant of the "Bay State" mark. Defendant contends that Lewis' affidavits are "fraught with conclusions, assertions, statements of belief and opinions" and requests that large portions of the affidavits be struck.

#### 1.  Paragraph 2 of Lewis's First Affidavit

Defendant objects to that portion of paragraph 2 of the first Lewis affidavit in which he states that Savings Bank is "popularly known as Bay State." Defendant contends that it is an inadmissible lay opinion. Although the opinion is of marginal usefulness—if any at all—it appears to be based on Lewis's personal perceptions as president and CEO of the bank, and will not be struck.

#### 2.  Paragraph 5 of Lewis's First Affidavit

Defendant objects to that portion of paragraph 5 of the first Lewis affidavit in which he states that plaintiff offered its customers "sales of stocks, bonds, and mutual funds beginning in 1994." Defendant contends that this suggests that plaintiff sold the products directly, and therefore the statement improperly contradicts Lewis's deposition testimony. The Court rejects defendant's interpretation of the paragraph, as a footnote in the affidavit clearly explains that these services were offered through an arrangement with the FIS Company (FISCO). Accordingly, the Court will not strike any portion of the paragraph.

### 3. Paragraph 6 of Lewis's First Affidavit

Defendant objects to those portions of paragraph 6 of the first Lewis affidavit that quote from advertisements for Minuteman Investment Services. Defendant contends that the statements are hearsay. However, Lewis is not quoting the advertisements to show that the statements contained in them are true (e.g., that plaintiff's customers will receive personal, one-on-one investment advice and will meet with an investment executive on a regular basis), but to show how "Minuteman Investment Services" were marketed to the public. Furthermore, the advertisements themselves are part of the record. Accordingly, the Court will not strike any portion of paragraph 6.

### 4. Paragraph 7 of Lewis's First Affidavit

Defendant objects to those portions of paragraph 7 of the first Lewis affidavit that state that plaintiff published advertisements in regional and statewide newspapers. Defendant contends that the statements are hearsay and that the newspapers have not been authenticated. Because Lewis does not quote from the newspapers, but simply states that plaintiff's advertisements appeared in them, the statements are not hearsay. Furthermore, the advertisements themselves are part of the record; they are not offered for the truth of any statements contained therein; and newspapers are self-authenticating under Fed. R. Evid. 902(6). Accordingly, the Court will not strike any portion of paragraph 7.

### 5. Paragraph 11 of Lewis's First Affidavit

Defendant objects to the statement in paragraph 11 of the first Lewis affidavit that "[t]he public commonly refers to the bank as 'Bay State.'" Again, the statement is a lay opinion of dubious weight, but appears to be based on Lewis's personal perceptions and will not be struck.

Defendant also objects to those portions of paragraph 11 that cite examples of third parties using the term "Bay State" to describe the bank. The third parties' statements are attached as exhibits to Klein's affidavit. Because the statements in the exhibits are not being offered by Klein for their truth, but rather to show how consumers refer to the bank, Klein's references to third party statements are not hearsay and will not be struck.

### 6. Paragraphs 12, 13, and 14 of Lewis's First Affidavit

Defendant objects to paragraphs 12, 13, and 14 of the first Lewis affidavit, which refer to and summarize the 1999 and 2001 surveys conducted by Myers. Defendant contends that the statements are hearsay and inadmissible opinions and reasserts its contention that the surveys themselves should be struck. To the extent that these paragraphs simply purport to repeat or summarize the surveys, they will be struck.

### 7. Paragraph 17 of Lewis's First Affidavit

Defendant objects to paragraph 17 of the first Lewis affidavit, which states that plaintiff used "no misrepresentation or fraud" in obtaining its registration and provides a chart of registrations resulting from plaintiff and Blodgett's efforts. To the extent the paragraph describes factual matters, such as the registrations obtained through the efforts of plaintiff and Blodgett, it will be considered. However, Lewis's legal conclusions and his opinion about Blodgett's reputation are not admissible and will be struck.

### 8. Paragraph 20 of Lewis's First Affidavit

Defendant objects to paragraph 20 of the first Lewis affidavit, in which Lewis asserts that defendant "uses the [Bay State] mark to promote products and services that are generally quite similar to those of [Savings Bank]" and provides a chart purporting to compare the services

offered by the parties. To the extent this paragraph summarizes data from multiple sources that are already in evidence, it may be considered. *See* Fed. R. Evid. 1006. To the extent the paragraph contains an opinion commenting on the evidence, it will be struck.

### 9.   Paragraph 21 of Lewis's First Affidavit

Defendant objects to paragraph 21 of the first Lewis affidavit, which discusses how defendant uses the Bay State mark in "similar channels of trade." Again, to the extent this paragraph simply summarizes data from multiple sources that are already in evidence, it may be considered. *See* Fed. R. Evid. 1006. To the extent the paragraph contains an opinion commenting on the evidence, it will be struck.

### 10.   Paragraph 22 of Lewis's First Affidavit

Defendant objects to the statement in paragraph 22 of the first Lewis affidavit that "[u]pon information and belief based on inquiries to the Secretary of State, a 1990 state registration by an apparently unrelated party expired because the owner did not renew it." Because Rule 56(e) requires affidavits to be "made on personal knowledge," the statement will be struck.

### 11.   Paragraph 25 of Lewis's First Affidavit

Defendant objects to two statements in paragraph 25 of the first Lewis affidavit: ". . . [defendant] does promote itself by other means that threaten dilution and confusion" and "some newspapers refer to it as [Bay State], suggesting that it is still a very weak mark when applied to [defendant]." Because these statements set forth legal conclusions, they will be struck.

### 12.   Paragraph 27 of Lewis's First Affidavit

Defendant objects to paragraph 27 of the first Lewis affidavit, which quotes a Boston Business Journal article quoting defendant's CEO David Porter and discusses defendant's attempt

to expand its geographical reach.  To the extent the article quotes Porter, it is a statement of a party-opponent and therefore not hearsay.  Otherwise, to the extent Lewis is quoting the article for its truth, it is hearsay and will be struck.

### 13. Paragraph 28 of Lewis's First Affidavit

Defendant objects to paragraph 28 of the first Lewis affidavit, which quotes defendant's counterclaim and asserts that it constitutes an admission that defendant's use of the "Bay State" mark will cause dilution and confusion.  To the extent the paragraph contains a legal conclusion, it will be struck.

### 14. Paragraph 29 of Lewis's First Affidavit

Defendant objects to paragraph 29 of the first Lewis affidavit, in which Lewis (1) asserts that defendant's allegations of fraud are "incorrect," (2) purports to provide the "true facts," (3) cites the affidavits of Blodgett and Myers, and (4) makes conclusions about the legality of plaintiff's registrations.  Because the paragraph sets forth argument, conclusory statements, and inadmissible opinions, it will be struck.

### 15. Paragraph 3 of Lewis's Second Affidavit

Defendant objects to the following statement in paragraph 3 of the second Lewis affidavit: "I believed at the time I signed the [PTO] declarations in support of each of the applications that the declarations were accurate and warranted and I continue to believe it today."  To the extent that this statement reflects Lewis's state of mind at the time he signed the declarations—and to the extent that his state of mind is relevant—the statements may be considered for that purpose and will not be struck.

### 16. Paragraphs 4, 5, and 9 of Lewis's Second Affidavit

9

Defendant objects to paragraphs 4, 5, and 9 of the second Lewis affidavit, which set forth Lewis's beliefs both now and at the time that plaintiff applied for trademark registrations. To the extent that these statements reflect Lewis's state of mind—and to the extent that his state of mind is relevant—the statements may be considered for that purpose and will not be struck.

### 17.     Paragraph 19 of Lewis's Second Affidavit

Defendant objects to two statements in paragraph 19 of the second Lewis affidavit: "[t]he domain names were registered in good faith to identify the source of services" and "[t]he Bank has received no inappropriate economic benefit at the expense of [Financial Services] from its domain name registrations, and had no improper intent." Because these two statements offer legal conclusions, they will be struck.

### D.     Reports of Robert Klein

Plaintiff has submitted two reports from Robert Klein, the president of a market research and consulting firm that conducted surveys for plaintiff. The first report, dated January 9, 2006, contains results from surveys concerning confusion and secondary meaning. The report summarizes the surveys' methodology, opines that confusion will likely occur if defendant continues using its name, and concludes that "a substantial proportion of the relevant market associates the words 'Bay State' with Bay State Savings Bank." The second report, dated June 7, 2006, is offered to rebut an expert report submitted by defendant.

Defendant has moved to strike the January 9 report as untimely and because it fails to meet the requirements for an expert opinion under Fed. R. Evid. 702. Defendant has also moved to exclude the June 7 report as untimely and, in the alternative, moves to strike portions of the report.

### 1.     January 9, 2006 Report

Defendant contends that Klein's January 9 report must be struck because an affidavit was not submitted to authenticate the report. Plaintiff argues that an affidavit was not required under Rule 56(e), but nevertheless submitted a June 30, 2006 affidavit in which Klein attests to the truthfulness and accuracy of his January 9 report. Although plaintiff's filing of Klein's affidavit was untimely, the Court will accept it and consider the January 9 report. Defendant had the opportunity to question Klein at length about the report during his deposition and suffered no prejudice by the untimely filing of the authenticating affidavit.

Defendant also objects to the January 9 report under Fed. R. Evid. 702. Rule 702 permits an expert to testify, in the form of an opinion or otherwise, if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Defendant contends that Klein's survey does not meet the third requirement of the rule. Specifically, defendant objects to Klein's characterization of the survey results.[3]

The survey asked respondents the following question:

"Thinking about the Worcester area and the different types of financial institutions, when you hear the words 'Bay State' do you or do you not think of any particular financial institution or institutions in the Worcester area? That is, do you or do you not associate the words 'Bay State' with any particular financial institution or institutions in the Worcester area?"

Klein treated responses of either "Bay State Savings Bank" or "Bay State Bank" the same. According to Klein, he decided to combine the results because, in his experience, "people tend to

---

[3] Defendant also contends that the expert report is not scientifically valid, but reserves the right to file a motion in liminie on that point at a later date.

shorten names and don't give full names and full legal names in response to questions." Klein then concluded that the measured association between the words "Bay State" and "Bay State Savings Bank" was 38.6% and that this showed that the words "Bay State" acquired secondary meaning.

Defendant criticizes Klein's assumption that people shorten names when responding to questions, contending that it is not based on any scientific principle and is particularly inappropriate here, as a former Massachusetts bank called "Bay State Federal Savings Bank" marketed itself as "Bay State Bank" while plaintiff did not. Defendant also contends that the survey's questions were incomplete because they did not specifically measure secondary meaning with regard to the "Baystate Financial Services" mark. Under the circumstances, the criticisms go to the survey's probative value, not whether Klein reliably applied the survey results to the facts in this case. Furthermore, and in any event, even a finding that 38.6% of the population associates a descriptive name with a particular company's products is not ordinarily sufficient to show secondary meaning. *See, e.g., Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 394 (7th Cir. 1992). Accordingly, the Court will not strike Klein's January 9, 2006 report.

### 2. June 7, 2006 Report

Klein's June 7 report was submitted in rebuttal to the report of Thomas Dupont, defendant's expert. Dupont's report was provided to plaintiff on March 7, 2006. Under Fed. R. Civ. P. 26(a)(2)(C), plaintiff was required to disclose any rebuttal testimony to defendant within thirty days of Dupont's report. Because plaintiff did not disclose the rebuttal until June 7, plaintiff's disclosure was clearly untimely.

Rule 37(c)(1) provides that: "[a] party that without substantial justification fails to disclose

information required by 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion, any witness or information not so disclosed." Rule 37(c)(1) contemplates strict adherence to the discovery requirements; furthermore, "the required sanction in the ordinary case is mandatory preclusion" of the untimely disclosed information. *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998). However, Rule 37(c)(1) contains a "narrow escape hatch" that allows courts to admit untimely evidence if the proponent's failure to reveal it was either substantially justified or harmless. *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001). Plaintiff carries the burden of proving substantial justification or harmlessness. *Alves v. Mazda Motor of America, Inc.*, 448 F. Supp. 2d 285, 293 (D. Mass. 2006).

Plaintiff has provided no justification for its untimely disclosure of Klein's rebuttal report, much less a "substantial" justification. Instead, plaintiff simply asserts that defendant had "ample time" to respond, and adds that if defendant had asked for additional time to reply to the rebuttal, it "would have assented." A party is not justified in ignoring its obligations under the rules simply because it is willing to allow an opposing party to do the same, or because it hopes no harm will result.

As to the issue of harmlessness, plaintiff contends that the rebuttal presents no new information and defendant does not rely upon Dupont's report in its summary judgment motions. Both arguments are without merit. First, although the rebuttal does not present additional research, it does contain information not previously in the record. The report closely analyzes Dupont's expert report and criticizes his methodology. While Klein discussed the appropriate design for a secondary meaning test in his January 2006 survey report (and in his deposition), he

13

had not previously attacked Dupont's study. Second, contrary to plaintiff's contention, defendant submitted Dupont's study as an exhibit in support of its motion for summary judgment and referred to it multiple times in its Rule 56.1 Statement of Undisputed Material Facts.[4]

In determining whether plaintiff's submission of the rebuttal report was harmless, the Court must balance "a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects." *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191 (1st Cir. 2006). The element of surprise should also be considered. *Id.*

First, as to the history of the litigation, the scheduling order originally required that expert disclosure and depositions be completed by January 1, 2006, later extended to April 7. Plaintiff received Dupont's expert report on March 7. However, without explanation or requesting an extension, plaintiff did not submit the report by the April 7 deadline set by the Court and required under Rule 26(a). Plaintiff did not even submit the rebuttal in connection with its Motion for Partial Summary Judgment, filed on May 8. Instead, plaintiff waited a full three months to disclose the rebuttal report, submitting it in connection with its opposition to defendant's summary judgment motion.

Second, plaintiff's need for the challenged evidence is doubtful at best. Klein's own expert survey report and portions of his deposition were already submitted by the parties. Therefore, to the extent that the rebuttal report contains opinions about the appropriate design for a secondary meaning survey, those recommendations are already before the Court.

---

[4] The Court notes that plaintiff correctly quotes defendant's reply brief which states that defendant does not "rely on Mr. Dupont's report" for purposes of summary judgment. It is unclear why defendant submitted the report in support of its motion and then denied relying upon it in its reply brief.

Third, and as the Court has already discussed, plaintiff has provided no explanation or justification for the late disclosure.

Fourth, defendant's ability to overcome the adverse effects of the rebuttal report weighs in favor of striking the report. Although the disclosure did not come on the eve of trial, defendant did not receive the report until after discovery had been completed and it had filed for summary judgment. Presumably, the filing of the rebuttal was also a complete surprise to defendant.

For the foregoing reasons, plaintiff has not sustained its burden of proving that the late disclosure was either substantially justified or harmless. Accordingly, Klein's June 7 report will be struck.

### E. Defendant's Motion for Sanctions

Defendant titled its motion a "Motion for Sanctions and To Strike Portions of Affidavits," but failed to describe the specific type of sanctions sought. Instead, defendant simply stated that the grounds for its motion were set forth in the memorandum it had previously filed in connection with the parties' summary judgment motions, as well as "all papers on record with the Court and representations made during oral argument presented to the Court." To the extent that defendant intended the appropriate sanction to be striking portions of the objected-to documents, these sanctions have been granted in part and denied in part as described above. To the extent that defendant intended the appropriate sanction to be something else, the motion is denied.

## III. Plaintiff's Motion to Strike

Plaintiff has cross-moved to strike the affidavit of Brian Breneman, the Vice President of New England Life Insurance Company ("NELICO"). In his affidavit, Breneman described

NELICO's purchase of assets from The Richard Wilson Insurance Agency d/b/a/ Baystate Financial Services, including the purchase of the right, title, and interest in various service marks. Breneman also described the subsequent transfer of rights in these marks to David Porter, defendant's CEO. However, Breneman couched each of his statements with the phrase "[u]pon information and belief." In addition, with regard to the transfer of rights to Porter, Breneman says that "at the very least [NELICO] granted David C. Porter the right to use of the Baystate Financial Marks." Attached to Breneman's affidavit is an assignment—executed on December 8, 2006—transferring and assigning whatever rights NELICO retained in the service marks to Porter. Breneman explains that the assignment was done "[t]o remove any doubt" that Porter possesses the rights to the service marks.

Plaintiff contends that Breneman's affidavit is not based on personal knowledge and is therefore improper. Defendant insists that although his affidavit is based on "information and belief," Breneman is authorized to provide "corporate testimony" in order to establish facts based on "his review of corporate information." Defendant provides no First Circuit precedent in support of this contention and the cases it relies upon from other circuits are inapposite. *See Dalton v. Federal Deposit Ins. Corp.*, 987 F.2d 1216, 1223 (5th Cir. 1993) (admitting affidavit of FDIC account officer where officer did not have personal knowledge when given transaction occurred, but learned of it later; court noted that all relevant documents forming the basis of the account officer's testimony were attached to the affidavit); *Federal Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 702 (5th Cir. 1991) (admitting affidavit of senior bank attorney where his affidavit demonstrated "personal knowledge to testify as a custodian of documents," where he had personal knowledge about some of the statements, and where all hearsay statements came within

16

the business records exceptions and were supported by business records attached to the affidavit); *United States v. Birchem*, 883 F. Supp. 1334, 1342 (D.S.D. 1995) (accepting affidavit of supervisor that was made upon "knowledge and belief" where affidavit was "based entirely upon submitted documents or public records and, as such, [was] also admissible hearsay").  Although the affiants in the cases defendant cites were not present when the relevant events occurred, they later learned what had happened and explained the basis for their knowledge.  Furthermore, all documents forming the basis of their testimony were attached to their affidavits.  Here, it is not clear whether Breneman learned about the assignment of the service marks or whether he is providing an opinion about what he thinks may have happened.  Furthermore, he has submitted no documents showing the basis for his beliefs, other than the December 8, 2006 assignment to Porter.  Because Breneman has personal knowledge of the December 8 assignment, that portion of the affidavit, as well as the assignment itself, may be considered by the Court.  However, the remaining portions of Breneman's affidavit will be struck.

### IV.    Conclusion

For the reasons stated in the foregoing memorandum:

(1)   Defendant's motion to strike Robert Lewis's affidavits is DENIED in part and GRANTED in part;

(2)   Defendant's motion to strike the expert affidavits of Gerry Blodgett, Kelly Myers, and the 1999 and 2001 image and positioning surveys is DENIED in part and GRANTED in part;

(3)   Defendant's motion for sanctions and to strike portions of affidavits is DENIED in part and GRANTED in part;

(4)     Plaintiff's motion to strike the affidavit of Brian Breneman is DENIED in part and GRANTED in part.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 23, 2007